**[Exhibit C Supplied With Plaintiffs Brief]**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

CATHY D. BROOKS-MCCOLLUM

Civil Action No. 147-N

Plaintiffs Below,
        Plaintiffs,
    v.

EMERALD RIDGE
SERVICE CORPORATION
BOARD OF DIRECTORS,
KENNETH SHAREEF,
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
        Defendants,

Court Below-Court Of Chancery
of the State of Delaware,
in and for New Castle County
C.A. No. 147-N

In Chambers
New Castle County Courthouse
Wilmington, Delaware
Monday, March 29, 2004
4:00 p.m.
BEFORE: HON. DONALD F. PARSONS, JR., Vice Chancellor
TELEPHONE CONFERENCE FOR SCHEDULING

CHANCERY COURT REPORTERS
500 North King Street – Suite 11400
Wilmington, Delaware 19801-3759
(302) 255-0525
APPEARANCES:

Cathy D. BROOKS-MCCOLLUM Pro se
EDWARD F. KAFADER, ESQ.
Ferry Joseph & Pearce, P.A. for Defendants

CERTIFICATE

I, WILLIAM J. DAWSON, Official Reporter for the Court of Chancery of the State of Delaware, do hereby certify that the foregoing pages numbered 3 through 26 contain a true and correct transcription of the proceedings as stenographically reported by me at the hearing in the above cause before the Vice Chancellor of the State of Delaware of the date therein indicated.

IN WITHNESS WHEREOF I have hereunto set my hand at Wilmington, this 11th day of, 2004.

/s//William J. Dawson
Official Reporter for the Court of Chancery of the State Of
Delaware

Certification Number : 197-PS
Expiration : Permanent

that's about.

The main -- the facts that I have at this point -- and I've read your papers and I read the papers from the other side -- show me that there's a dispute, and you disagree about how things have been done. And we'll have to go through and see whether each person was properly elected and those kinds of actions were taken. You have an argument that they weren't.

But I think there's also an argument that all those actions were okay under the Delaware corporation law. We'll have to sort them out one after the other. But as of right now, I don't think that it's more likely that your side's going to win on that than the other side. So, I am not entering any kind of status quo order.

You say that the persons are not authorized to hold an election of new officers, especially themselves; they're not authorized to collect corporate funds. Until I rule on the status of the corporation, that's not correct. The corporation is out there. It is operating. These are the persons who are in charge of it. And it will continue to operate that way until some court -- if it ever does, and that may very well be this Court says that that was wrong: Most likely it's not

going -- I've spoken to Judge Johnston. The kind of actions that m'-ht go forward before Plaintiffs are for actions.) Like for liability or things like that, deciding who's in charge of a corporation, that's going to get decided in this Court. And then if you disagree with it -- whatever the decision is – then you can take that to the Delaware Supreme Court. But the Superior Court would not .-- they won't decide 1.1 that kind of an issue.

MS. BROOKS-McCOLLUM: That's all I was asking in Superior Court is for the damages that they caused me and my family for living in there.

THE COURT: I understand that Judge Johnston has said that she'll sort of put that on

hold until this Court makes its ruling and then you can go back and pursue those -- the tort claims. I think she realizes that you have tort claims that you can go after in that court.

So at this point, as far as the meeting going forward, the Court -- there is no status quo order in place. There hasn't been any evidence presented at this stage that's sufficient to cause the Court to believe that there's a reasonable likelihood of success that the Plaintiffs is going to be able to show that the current board is not authorized to hold an election as it has noticed; and likewise, there has been no showing that the current board of directors were invalidly elected or appointed, or in the same position the Plaintiffs has asserted that they are not properly elected, and the Court will have to hear both sides of that case in a trial at some point. But as of right now, it's not clear that the Plaintiffs would prevail on that argument, and therefore there is no reason to stop the meeting.

In terms of the elected directors. The Court will note that there was – it seems conceded by the Defendants that former director and Defendant Ken Shareef was not a valid director.

Is that right, Mr. Kafader?

MR. KAFADER: That's correct, Your Honor.

THE COURT: However, he resigned from his position as a director on June – January 15th of 2004.

There also is no evidence to show that the remaining directors -- at least at this stage, Or that the remaining directors are invalid. The remaining board members were all appointed. The initial appointment was of the Defendant director Mandy Melville. That was made by the Plaintiffs and Defendant Shareef. The bylaws permit the board, by a majority vote, to appoint a director if a position on the board is available due to the resignation of a prior director. The provision does not require a quorum to be present.

MS. BROOKS-McCOLLUM: Can I respond to that?

THE COURT: Yes.

MS. BROOKS-McCOLLUM: The

appointment -- Ken Shareef was the only person that was on the board and myself, not Mandy Melville. At that particular time, Ken Shareef wanted to put some other people on the board. He appointed Renford Brevett and Mandy Melville to the board. So Ken Shareef made those appointments. Mandy Melville was not a part of the appointments made.

THE COURT: You were a member of the board at that time?

MS. BROOKS-MCCOLLUM: Ken Shareef and

this point I won't know who else -- when you say you're suing the Emerald Ridge Service Corporation Board of Directors, if it's not the company -- and I understand you don't mean it to be a company – I don't know who else it is. I'm just going to go forward from today, assuming it isn't anybody else beyond the four people. And if it's only three - the four people you've named are Defendants. No question. If you want any other individuals to be Defendants, then it's important to let the Court know who they are. You don't have to do it this minute. But that's kind of what's going on.

It sounds then like Mr. Kafader is - I mean, his clients -- the four named individual Defendants and Emerald Ridge Service Corporation, and there I'm talking about the people who are controlling it today -- they sort of think they're all on the same side. And I know you disagree. But that's what they thinks So, they don't really have a conflict of interest between them and Mr. Kafader. Consistent with our rules of professional conduct, he can represent the company and these individual Defendants until such time as a conflict of interest arises.

MS. BROOKS-McCOLLUM:  The members of the stockholders are members of the corporation. I don't feel Mr. Kafader is working in my best interest as a stockholder.

THE COURT: <u>Right. But as a legal matter, your understanding is incorrect. You are a shareholder. You have certain rights, important rights as a shareholder of a company, one of which is to file a derivative action, which is something that you've done. But the company itself is separate from the shareholders. And when you sue somebody, that's you personally as a shareholder suing. It's not the company.</u>

<u>*At this point the company essentially is siding with -- the people who control the company today are siding with the named individual Defendants, Shareef and so on. And so it's okay under our Delaware laws -- the Delaware rules of professional conduct.*</u>

MS. BROOKS-McCOLLUM: Did you explain that? I'm not understanding that part. If you're saying that those Defendants are the corporation, how are persons that -- Shareef is no longer on the board. Valerie Longhurst was never on the board. There is a conflict with those two at least. They were not board members.

Then overall, in all -- are you saying that no matter who you elect to the board that they now become the corporation, and the other 140 something people in the corporation have no say? Mr. Kafader can go to this meeting, that is curtailing my case -- now it's like get them on my side. They already lied to members of the corporation. They sat there and lied. So, I might as well just go ahead and throw in the towel the way that this is. I may as well let them put dolls on my car.

I feel I'm being raped in this Court. Here I am. Mr. Kafader is advising them to do legal stuff over and over and over. All I'm doing is getting more upset than I was over the weekend for having a doll with the head cut off. I may as well be in Kuwait the way I feel.

THE COURT: Let's talk about the doll with the head cut off, which is a terrible situation. It's a different issue from what we were talking about, but it's front and center and we need to talk about it now. It's a horrible situation that has occurred. And I assume that you reported it to the police and have taken whatever other action you can with respect to that. But for this Court -- for me to be able to do something, I need somethingI need evidence that links one of these four Defendants -- Shareef, Melville, Brevett, Longhurst -- one of those people to doing that, or what you're saying a moment ago <u>that Mr. Kafader is involved in any way in that. I know you may think that,,.- Mr. Kafader is a respected member of the bar.</u>

It's completely out of character that he would ever be anywhere near anything like that, and the Court doesn't suspect that.

MS. BROOKS-McCOLLUM: Because he's a respected member of the bar you respect that. Because I'm a respected citizen, you don't respect

copy of the fax of all the information I was asking him to remove, and they said no.

THE COURT: All right.

Now, what I'm telling you is that what you should be doing at this point is, you should go ahead and get your own attorney.

I can't I'm not guaranteeing that at the end of the day there is going to be indemnification. Your attorney can look at that and then this Court, within the not too distant future, will come out with some little written opinion that will say, based on what I know so far, whether any of your claims look like they might qualify for indemnification. But what usually happens is that we really don't know for sure until we get all the way through to the end of the case.

MS. BROOKS-McCOLLUM: Just to have that. That's all the attorney asks for, something from the Court to basically say that -- basically feel that you basically are entitled to

indemnification, to basically take the case where it's only on a certain contingency, which then I have no problem giving the lawyer the contingency to take over these claims. That's why I asked Your Honor to basically decide on indemnification first. You did

say after that the attorney could come in and do an amended complaint to outline each and every issue

THE COURT: All right. Okay. so, I think now I understand better.

<u>I thought the focus was more on the advancement. I understand w at you're saying. That makes sense. So, it's important that we move ahead to the indemnification issue itself and make sure we rule on that.</u>

So, I think what all this boils down to is that, for the cease and desist order that has been requested at this point in the papers that you submitted on the record that's presently before me, I'm denying the cease and desist order. And of course, at some point later in the proceeding you have more concrete evidence, and it looks like that kind of an order is important, then you can bring that.

MS. BROOKS--McCOLLUM: Evidence like my family being threatened again, but without showing who did it?

THE COURT: No. Evidence that links it to one of these parties who's before me. MS. BROOKS-McCOLLUM: I can get threatened every week, but because we don't catch the person we'll have to move.

THE COURT: I am encouraging

Mr. Kafader and his clients to at least do everything that they can not to add to the problem by stirring things up. The difficulty is that undoubtedly you're making a lot of allegations here. You feel very strongly about it. But the more you're accusing people of doing things that would be illegal, that they think are crazy allegations against them, their back is going to get up. It just makes for a very tense situation for everybody involved. That doesn't justify anybody acting outside the law.

And I don't -- I'm saying right here, I don't have any evidence that these individuals did. But in that kind of a context, then it spills over to other people and who knows who hears. what and takes some kind of crazy action.

MS. BROOKS-McCOLLUM: I have one more question on the sections that apply in Chancery Court because you basically said you can issue a cease and desist order. The crimes under there call for felony charges. They basically have different levels of felony charges. That is what I want. I want the

THE COURT: Okay.

But, see, this Court doesn't do any criminal – you can't bring a criminal case into this Court. What you need there is for the attorney --- the police and then the Attorney General's Office to believe that there's sufficient – that there is a crime here, and they either – they institute the criminal proceedings, which are in the Superior Court. The only kind of thing I'm talking about is if there's some sort of a – you need an injunction to tell somebody to stop, you know, putting graffiti on your wall or something like that.

MS. BROOKS-MCCOLLUM: From the Internet violations. The Internet violations, since it falls under Chancery Court, and that they – each one assesses different felony charges if they're convicted of having done those. If you're saying that once Chancery Court rules on if these persons did this, then I go back to the Attorney General's Office on those specific items and say these persons did post this stuff on the website?

THE COURT: What section of the code?

MR. KAFADER: Your Honor, she's

**[Exhibit G Supplied With Plaintiffs Brief]**

January 23, 2004

Kenneth N. Shareef
Emerald Ridge
1 Winchester Court
Bear, DE  19701

Dear Mr. Shareef:
RE:    Emerald Ridge Service Corp-Account#3049-8073
While we have reviewed documentation submitted by both Ms. Brooks-McCollum and Mr. Shareef, we are not in a position to determine who is authorized to act on the Emerald Ridge Service Corporation's account with Wachovia Securities, nor do we wish to act as a judge or arbitrator in this matter.  We understand that Ms. Brooks-McCollum has filed a civil action in chancery court of New Castle County to have the court determine how the affairs of the corporation should be handled.  We will continue to hold the assets in the account until resolution by the court providing us guidance on who is authorized to act on our account.  If this lawsuit is dismissed without such resolution and the disputing parties can settle their differences, we will need a written opinion of independent counsel for the company advising us what individuals are properly authorized to act prior to accepting any further instructions on the account.  We hope that the interested parties can resolve the issue, either with or without court intervention.  In the meantime, we ask that you not continue to call us or send us further documentation in support of your differing views as we are not willing to substitute our judgment for that of the court.
Sincerely,

/s/Gary L Gittings, CFP
Branch Manager
Managing Director
Private Client Groucc:  Cathy D. Brooks-McCollum

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CATHY D. BROOKS-MCCOLLUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE OF DELAWARE, | ) | C.A. No. 04-1419 |
| DELAWARE CHANCERY COURT, and | ) | |
| DONALD PARSONS, Vice Chancellor, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

GREGG E. WILSON, I.D. #85
STEPHANI J. BALLARD, I.D. #3481
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants

DATED: January 7, 2005

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS..........................................................................iii

NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

      1.   The Court of Chancery Litigation................................................1

      2.   Plaintiff's Proceedings before the Delaware Supreme Court.................2

      3.   Plaintiff's attempted "Removal" of Chancery action to U.S. District Court and other actions filed by Plaintiff in U.S. District Court and Delaware Superior Court.....................................................................................3

      4.   The Instant Case against the Delaware Court of Chancery and Vice Chancellor Parsons..................................................................................4

STATEMENT OF FACTS ........................................................................6

ARGUMENT .......................................................................................7

  STANDARD OF REVIEW ......................................................................7

I.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY................................................7

      a.  There is no dispute that the Court of Chancery had jurisdiction in the State Court matter .................................................................................10

      b.  Vice Chancellor Parsons was, at all times, acting in his Judicial Capacity .................................................................................11

II.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C.A §1983................................................................................14

III.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE JUDICIAL DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY................................................15

i

46a

IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE,
       THE ANTI-INJUNCTION ACT AND THE YOUNGER
       ABSTENTION DOCTRINE...............................................................16

            a. The Rooker-Feldman doctrine bars Plaintiff's claims.....................16

            b. The Anti-Injunction Act, 28 U.S.C.A.§2283, bars Plaintiffs' claims....17

            c. The Younger Abstention Doctrine bars Plaintiff's claims...............17

V.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED, PURSUANT TO FRCP 12(b)(6)
       AS IT OTHERWISE FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN
       BE GRANTED...................................................................................18

CONCLUSION.............................................................................................21

47a

## TABLE OF CITATIONS

**Case Name**                                                                                                            **Page**

Banks v. District of Columbia et al, 1989 WL 38956, (Dist. D.C 1989)............................... 17

Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2708-09 (1972)............................ 19

Bradley v. Fisher, 80 U.S. 335, 347 (1872) ..................................................... 7-10

Cruz v. Beto, 405 U.S. 319, 322 (1972)...........................................................7

Dale v. Town of Elsmere, 702 A.2d 1219,1224 (Del. Supr. 1997)..............................19

D'Alessandro v. Robinson, 210 F.Supp.2d 526 (D.Del. 2002)....................................13

Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986)......................................….19

DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592 (3d Cir. 1995),
       cert. denied, 516 U.S. 937 (1995)...........................................................19

District of Columbia v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983).................16

Doe v. Cates, 499 A.2d 1175, 1881 (Del. Supr. 1985)...........................................16

Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347 (1974)................................15

Forrester v. White, 484 U.S. 219, 227-29, 108 S.Ct. 538, 544 (1988)....................8-9, 12

Halling v. McElroy, 278 F.2d 252 (D.C. Cir. 1960),
       cert. denied, 364 U.S. 835 (1960)........................................................... 7

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)........................8

Hicks v. Miranda, 422 U.S. 332, 350 (1975).....................................................18

Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968),
       cert. denied, 395 U.S. 961 (1969)........................................................... 7

Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 537 (1991)..................................... 8

John v. Barron, 897 F.2d 1387, 1391 (7th Cir. 1990), cert. denied, 111 S.Ct. 69 (1990) .. 9, 13

48a

Keene Corp. v. Cass, 908 F.2d 293, 297 (8th Cir. 1986)………………………………….………17

Kimel v. Florida Bd. of Regents, 528 U.S. 62, 80, 120 S.Ct. 631 (2004)………………………15

Middlesex County Ethics Committee v. Garden State Bar Association, et al.,
     457 U.S. 423, 102 S.Ct. 2515 (1982)………………………………………………………18

Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)………………………….8

Neeley v. Samis, 183 F. Supp. 2d 672, 678 (D. Del. 2002)……………………………….15-16

Pagano v. Hadley, 535 F.Supp. 92 (D.Del. 1982)…………………………………………….16

Parratt v. Taylor, 451 U.S. 527, 535 (1981)………………………………………………...19

Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98-100,
     104 S.Ct. 900 (1984)………………………………………………………………….16

Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 44 S.Ct. 149 (1923)……………………16-17

Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S. Ct. 1114 (1996)…………………15

Signore v. City of McKeesport, 680 F.Supp. 200, 203 (W.D. Pa. 1988),
     *aff'd*, 877 F.2d 54 (3d Cir. 1989)…………………………………………………………7

Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978)………………………………….8-11

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)………………………………….14

Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971)………………………………………...18

## Statutes, Rules and Other Authorities

U.S. Constitution, Eleventh Amendment……………………………………………………. 14-16

U.S. Constitution, Fourteenth Amendment…………………………………………………...16, 19

28 U.S.C.A. §1441(a) ………………………………………………………………………….3

28 U.S.C.A. §2283 …………………………………………………………………………...17

42 U.S.C.A. §1983 ……………………………………………………………. 5, 8, 14, 16, 19-20

iv

49a

Federal Rule of Civil Procedure 8(a) ............................................................5

Federal Rule of Civil Procedure 12(b)(6) ....................................7, 13, 18

Del. Const., Art. IV, §10 ............................................................................14

8 <u>Del. C</u>. §225 ..............................................................................................10

10 <u>Del. C</u>. §341 ............................................................................................10

10 <u>Del. C</u>. §4001 ..........................................................................................16

Del. Supr. Ct. R. 29(b) ................................................................................2

Del. Supr. Ct. R. 41 ....................................................................................3

Del. Supr. Ct. R. 42 ................................................................................ 2-3

17 C. Wright & A. Miller, Federal Practice and Procedure, §4222 (1988) ........................... 17

500

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff has been involved in proceedings against a corporation and several individual defendants in several courts, which litigation has led to the case at bar. The numerous actions filed by Plaintiff merit some detailed discussion here to assist the Court in understanding the background of this matter and the impetus for this litigation.

### 1. The Court of Chancery Litigation.

Plaintiff is and has been a litigant in a matter pending before the Delaware Court of Chancery, Cathy D. Brooks-McCollum v. Kenneth Shareef, et. al., Del. Ch. No. 147-N, assigned to Vice Chancellor Donald Parsons. (*See* Docket Sheet, A-1-6)[1]. Plaintiff filed her complaint in that case on January 2, 2004. Briefly, this case involved allegations by Plaintiff that the named defendants had violated certain provisions of the Delaware Corporation Law and the bylaws of the Emerald Ridge Service Corporation (a corporation governing certain real property in the State of Delaware), of which Plaintiff alleges she is or was an officer. In connection with this litigation, Plaintiff filed a "Motion to Compel Indemnification" with the Court of Chancery, seeking advancement of litigation costs and attorney fees and a declaration that Emerald Ridge Service Corporation should indemnify her. *See* A-1-6 and Brooks-McCollum v. Emerald Ridge Service Corp, 2004 WL 1752852 (Del.Ch. July 29, 2004) (A-7-11) for procedural background.

Vice Chancellor Parsons promptly considered Plaintiff's motion for advancement and indemnification, held a hearing on the motion on June 24, 2004, and issued an interlocutory opinion on July 29, 2004. That opinion, which ultimately precipitated this litigation, held, citing the legal authorities upon which the Court relied, that Plaintiff was not entitled to advancement of costs in the

Court of Chancery litigation. The Court further held that Plaintiff's motion for a declaration that she was entitled to indemnification by the corporation was premature, as that analysis could only be made upon a resolution of the merits of the underlying dispute. The Court further opined that since, at that point, the pleadings themselves were incomplete and no discovery had occurred, any decision on the indemnification issue would constitute an impermissible advisory opinion. *See* Brooks-McCollum v. Emerald Ridge Service Corp, 2004 WL 1752852 (Del.Ch. July 29, 2004) (A-7-11). The Court specifically noted that its decision would not preclude Plaintiff from filing a proper action for indemnification at the conclusion of her case. Id at fn. 3.

### 2. Plaintiff's Proceedings before the Delaware Supreme Court.

Plaintiff, dissatisfied with the outcome of her Motion for advancement and indemnification, filed a "notice of appeal" with the Delaware Supreme Court on July 13, 2004.[2] The Supreme Court issued a rule for Plaintiff to show cause, pursuant to Del. Supr. Ct. R. 29(b), why her appeal should not be dismissed as interlocutory and not filed in compliance with Del. Supr. Ct. R. 42. The Delaware Supreme Court, by Order dated September 30, 2004, held that no final judgment had been rendered in the Court of Chancery action (No. 147-N) and Plaintiff's appeal must therefore be dismissed as interlocutory. Brooks-McCollum v. Shareef, *et.al.*, 2004 WL 2521161 (Del. Sept. 30, 2004) (A-12-13).

It appears that, at some point between the rule to show cause and the Delaware Supreme Court's first September 30, 2004 Order, Plaintiff filed an application for certification to take an

---

1 References are to the Appendix of Plaintiff's Related Judicial Proceedings, filed with this Brief.
2 Vice Chancellor Parsons had issued a bench ruling denying advancement of expenses following the motion hearing on June 24, 2004, but did not issue the written opinion addressing the request for indemnification until July 29, 2004.

interlocutory appeal, attempting to comply with Del. Supr. Ct. R. 42. The Delaware Supreme Court refused this appeal in a second Order, also dated September 30, 2004, in which it held that Plaintiff's application for interlocutory appeal was untimely filed and otherwise "fail[ed] on its face to satisfy the procedural or substantive requirements of Supreme Court Rule 42(b)." <u>Brooks-McCollum v. Shareef, et.al.,</u> 2004 WL 2239713 (Del. Sept. 30, 2004) ("Brooks II", A-14-15).

In "<u>Brooks II</u>", the Delaware Supreme Court also noted that Plaintiff had "simultaneously" filed an application to the Court for "certification of questions of law" pursuant to Delaware Supreme Court Rule 41. The Court held that such applications for certification could only be accepted from the courts specified in Rule 41, and not from individuals. Accordingly, the Court ordered that Plaintiff's application for certification be stricken as a nonconforming document. <u>Brooks II</u>, A-14.

### 3. Plaintiff's attempted "Removal" of Chancery action to U.S. District Court and other actions filed by Plaintiff in U.S. District Court and Delaware Superior Court.

On or about August 2, 2004, Plaintiff filed with the Court of Chancery a "Notice of Motion of Removal" of her Court of Chancery action No. 147-N, attempting to "remove" the case to the U.S. District Court for the District of Delaware.[3] (A-16). Plaintiff also filed a new Complaint in the Delaware District Court, on or about June 29, 2004 (a few days after Vice Chancellor Parsons' hearing on the indemnification motion) against the same parties as in the Court of Chancery matter. <u>Brooks-McCollum v. Emerald Ridge Service Corp.</u>, D. Del., C.A. No. 04-CV-703. (A-18-24). The Court of Chancery docket for the original case, No. 147-N, shows that the case is still an active

---

3  Of course, under Federal law, a Plaintiff has no standing to "remove" her own State Court action to District Court. 28 U.S.C.A. §1441(a) provides "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, *may be removed by the defendant or the defendants*, to the district court of the United States . . . ." (emphasis added).

53a

matter in that court, as is No. 04-CV-703 in this Court, although defendants have filed a Motion to Dismiss.

Plaintiff filed, on June 22, 2004, still another complaint in District Court against State Farm Insurance Co. (apparently an insurer for Emerald Ridge), captioned Brooks-McCollum v. State Farm Ins. Co., D. Del., C.A. No. 04-CV-0419. (A-25-27).

Finally, in this seemingly ceaseless proliferation of litigation, Plaintiff has initiated two separate actions in the Superior Court of Delaware: (1) a "debt/breach of contract" action captioned Brooks-McCollum v. State Farm Ins. Co., Del. Super., C.A. No. 04C-03-075 (filed March 5, 2004) (A-28-29) and (2) a "libel" action captioned Brooks-McCollum v. Emerald Ridge Service Corp., Del. Super., C.A. No. 04C-03-074 (also filed March 5, 2004) (A-30-32). Plaintiff attempted to "remove" the libel action (Case No. 04C-03-074) to the U.S. District Court for the District of Delaware in the same August 2, 2004 motion she filed in the Court of Chancery. (A-16).

## 4. **The Instant Case against the Delaware Court of Chancery and Vice Chancellor Parsons.**

Now, after filing at least eight actions (five of which are still pending) in four different Delaware State and Federal courts on the "merits" of her underlying grievance against the corporate defendants, Plaintiff has taken a new route. Citing her dissatisfaction with the outcome of the motion for advancement of costs and indemnification in the original Chancery matter, No. 147-N (A-7-11), Plaintiff has resorted to suing the Court of Chancery itself as well as the presiding Vice Chancellor in this federal District Court action.[4]

---

4  In addition to "Delaware Chancery Court" and "Donald Parsons, Vice Chancellor", Plaintiff has also named as a defendant the "State of Delaware." However, a review of Plaintiff's lengthy complaint shows that nowhere does she allege any wrongdoing by, or even make reference to, any other actor, arm or agency of the State of Delaware

54 a

Plaintiff filed the instant Complaint with this Court on or about November 4, 2004. The bulk of the Complaint reiterates Plaintiff's grievances against the private corporate and individual defendants, along with alleging violations of Plaintiff's "Civil Rights and Constitutional Rights" on the part of "Chancery Court" and the presiding Vice Chancellor.[5] *See e.g.* Complaint at p. 13, 16. By way of Service, Plaintiff submitted Waiver of Service forms to the Delaware Attorney General's office dated November 10, 2004. Counsel for Defendants signed and returned the waivers as to all Defendants on December 1, 2004. Accordingly, Defendants' Answer or Motion to Dismiss is due to the Court on or before January 10, 2005.

This is Defendants' Opening Brief in Support of their Motion to Dismiss Complaint, which is filed simultaneously herewith.

---

beyond the Court of Chancery. Thus, the "State of Delaware" can only be considered a party in the sense that it is the Sovereign under which the judicial defendants operate.

5 Plaintiff is *pro se*, notwithstanding her citations to myriad cases and legal references. Counsel for Defendants has attempted to extract the essence Plaintiff's legal claims (which seem to be grounded in 42 U.S.C.A. §1983) from her rambling 32 page complaint (and 47 page "appendix"), which does not contain numbered paragraphs or any plain statement of her case, in contravention of FRCP 8(a).

5

## STATEMENT OF FACTS

For purposes of this Motion to Dismiss, which is based on legal defenses such as absolute judicial immunity, it is not necessary to recite the factual history of the State court cases at length. Plaintiff's views of those facts are irrelevant to the defense of absolute judicial immunity. The pertinent procedural facts have been set forth in detail at "Nature and Stage of the Proceedings," *supra*. For additional facts relating to the underlying Court of Chancery litigation, as established by the court, please refer to Brooks-McCollum v. Emerald Ridge Service Corp, 2004 WL 1752852 (Del.Ch. July 29, 2004) (A-7-11).

56a

## ARGUMENT

### STANDARD OF REVIEW.

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972) (*per curiam*). However, in a case such as this one, Plaintiff's factual allegations of improper conduct are of little significance since a judge is entitled to absolute immunity "however erroneous the [judge's] act may have been, and however injurious in its consequences it may have proved to the plaintiff." Bradley v. Fisher, 80 U.S. 335, 347 (1872). Moreover, the Court does not have to accept legal conclusions, unsupported conclusions, or sweeping legal conclusions cast in the form of factual allegations. Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969); Halling v. McElroy, 278 F.2d 252 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 835 (1960).

Mere allegations, unsupported by facts, do not preclude dismissal and do not constitute a cause of action. Signore v. City of McKeesport, 680 F.Supp. 200, 203 (W.D. Pa. 1988), *aff'd*, 877 F.2d 54 (3d Cir. 1989). Under this standard, the Plaintiff's complaint must be dismissed because, pursuant to absolute judicial immunity and the other defenses set forth herein, none of Plaintiff's allegations would entitle her to maintain this action or obtain relief in this Court.

### I. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY.

All of Plaintiff's allegations against the Court of Chancery and Vice Chancellor Parsons are barred by the doctrine of absolute judicial immunity, and her complaint must therefore be dismissed. Absolute immunity is more than a simple insulation against damages; it is, in fact, *an entitlement not*

7

5-7a

*to stand trial*. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985). Immunity is defined by the functions it protects and serves (*i.e.* the judicial process), rather than the title of the defendant. Forrester v. White, 484 U.S. 219, 227-29, 108 S.Ct. 538, 544 (1988). Immunity issues should be decided as a matter of law at the earliest possible stage of the litigation and, accordingly, may be decided on a motion to dismiss. *See* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 537 (1991).

Since at least as early as 1871, the United States Supreme Court has recognized that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1871). It is simply beyond dispute that a judge is entitled to absolute immunity when performing judicial acts. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function usually performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Id. at 362. The U.S. Supreme Court has held the doctrine of judicial immunity to be applicable to actions filed pursuant to 42 U.S.C.A §1983. *See* Stump, 98 S.Ct. at 1104.

This well-established principle of judicial immunity cannot be avoided simply by crafting allegations of malice, corruption, or incompetence, as the Plaintiff has done here. As the High Court in Bradley explained: "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, *even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly*." Bradley, 80 U.S. at 351 (emphasis

58a

added).

In 1871, the Supreme Court could have been describing the case at bar when it noted that human nature will often give rise to perceptions of improper conduct in the minds of disgruntled litigants:

> [T]he disappointment occasioned by an adverse decision, often finds vent in imputations of this character, and from the imperfection of human nature this hardly a subject of wonder. If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in a complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action.

Bradley v. Fisher, 80 U.S. at 348.

These principles remain unchanged in modern Supreme Court jurisprudence, which additionally emphasizes the channels of higher judicial review which are available to dissatisfied litigants. "Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." Forrester, supra, 108 S.Ct. at 543.

A judge is entitled to absolute judicial immunity if his actions meet a two-part test: first, the acts must be taken within the judge's jurisdiction; second, the acts must be performed in the judge's judicial capacity. John v. Barron, 897 F.2d 1387, 1391 (7th Cir. 1990), cert. denied, 111 S.Ct. 69 (1990) (citing Stump and Bradley, supra). Both prongs of this test are met in this case.

**a. There is no dispute that the Court of Chancery had jurisdiction in the State Court matter.**

It is well settled that a judge will not be deprived of immunity from liability because the action he took was in error, or in excess of his authority. Rather, a judge will be subject to liability only when he has acted in the "clear absence of all jurisdiction." Stump, *supra*, 98 S.Ct. at 1101 (citing Bradley). There is no real question of jurisdiction in the underlying case from which Plaintiff claims to be aggrieved and which precipitated her suit against the judicial defendants. The original Delaware case was filed by Plaintiff in the Delaware Court of Chancery as Cathy D. Brooks-McCollum v. Kenneth Shareef, *et. al.*, C.A. 147-N. Plaintiff and defendants are all Delaware residents or Delaware entities. In the case at bar, Plaintiff continues to agree that all parties to the original Court of Chancery action are Delaware corporations or Delaware residents. Certainly, Plaintiff's very act of filing her complaint in the Court of Chancery amounts to her concession that that Court has jurisdiction over her claims. Plaintiff does not dispute this fact in her complaint.

Plaintiff's original Court of Chancery complaint sought injunctive relief, in that Plaintiff was seeking to compel the corporation and defendants to act in a manner which she perceived to be in accordance with the Delaware General Corporation Law and the corporation's bylaws. It is well-settled that in Delaware, the Court of Chancery is the court of equity and "shall have jurisdiction to hear and determine all matters and causes in equity." 10 Del. C. §341. Further, the Court of Chancery is specifically vested with jurisdiction to hear disputes arising under the General Corporation Law, including those involving the validity of election of directors--one of Plaintiff's grievances in the original action. *See* 8 Del.C. §225.

10

60a

There is no question that the Delaware Judicial Defendants had jurisdiction over the subject matter of the underlying litigation from which Plaintiff claims to be aggrieved. Accordingly, first prong of the judicial immunity test is met.

### b. Vice Chancellor Parsons was, at all times, acting in his Judicial Capacity.

Given jurisdiction over the subject matter, absolute immunity will attach if the judge's acts were "judicial acts." A judicial act is "a function normally performed by a judge, and to the expectations of the parties, *i.e.* whether they dealt with the judge in his judicial capacity." Stump, 98 S.Ct. at 1107.

In this case, Plaintiff has sued Vice Chancellor Parsons solely for acts performed in his judicial capacity. While Plaintiff's complaint is primarily devoted to an exposition of her perceived grievances against the private litigants in the State court case, Plaintiff also identifies the "Chancery Court" as a source of Constitutional violations. Plaintiff complains about Vice Chancellor Parsons' conduct of her case[6], specifically the issuance of the July 29, 2004 opinion, which denied advancement of costs. (*See* Complaint at pages 9, 13, 14, 16, 18-22). It is obvious from the complaint that Plaintiff is alleging that the Vice Chancellor was acting in a judicial capacity. Plaintiff herself acknowledges that she sought relief in the Court of Chancery, and that the Vice Chancellor held a hearing and issued an opinion—albeit an opinion Plaintiff disagreed with—on Plaintiff's own motion. Plaintiff, by invoking the Court's jurisdiction, filing and arguing motions, obviously intended to deal with the Court and Vice Chancellor in their judicial

---

6  The language used throughout Plaintiff's complaint identifies "Chancery Court" as the State actor throughout. However, since Vice Chancellor Parsons was named in the caption and the allegations specifically pertain to his judicial conduct (such as holding a hearing and issuing decisions), Defendants have construed Plaintiff's claims to be directed at the Vice Chancellor in his official capacity as well as the Court itself.

612

capacity. As noted above, Plaintiff's complaint in the instant case arises from her dissatisfaction with the outcome of a Court of Chancery opinion. It is difficult to imagine an act that is more reflective of "judicial capacity" than issuing a court opinion.

It is clear that Plaintiff disagrees with the July 29, 2004 opinion and feels that the Court erred in reaching that outcome. Under a section of the Complaint titled "SUMMARY OF ARGUMENT," Plaintiff states her position as follows: "Plaintiff argues that Chancery Court in its' ruling erred, by violating Plaintiffs Civil and Constitutional Rights regarding Indemnification . . ." (Complaint at p. 18). *See also* Complaint at p. 26 ("This court erred in its opinion."). Yet the law is definitive that error on the part of a jurist will not circumvent judicial immunity. Forrester v. White, *supra*, 108 S.Ct. at 543. Error, if any, is a matter to be corrected by the appellate process, not by suing the trial judge in Federal Court. In this case, Plaintiff has the ultimate right to appeal the July 29, 2004 decision to the Delaware Supreme Court.[7] Plaintiff's apparent decision to abandon or suspend her Court of Chancery action in favor of multiple actions in this Court is of no consequence to the existence of that right. (*See* Nature and Stage of Proceedings, *supra*).

In the Complaint, Plaintiff makes additional, blatantly unsupported, allegations that the Court showed favoritism toward or "sided with" the Defendants in the Chancery litigation, but even these base allegations are asserted within the context of the judicial proceedings. (*See e.g.* Complaint at p.9). As discussed *supra*, the law is well settled that clearly erroneous, malicious or even illicit decisions on the part of a judge (and, again, there is no evidence whatsoever of such

---

7 The mere fact that Plaintiff unsuccessfully sought interlocutory review from the Delaware Supreme Court does not deprive her of the right of final review at the conclusion of the Court of Chancery proceedings.

62a

conduct here) are protected by absolute judicial immunity. The risk of a judge being hauled into court and made to defend his judicial acts by the mere allegation of "conspiracy" is the precise harm that judicial immunity seeks to avoid. John v. Barron, *supra*, 897 F.2d at 1392. Clearly, all actions taken by the Vice Chancellor as the presiding jurist in Plaintiff's case must be considered judicial acts. Accordingly, he is protected from suit by the doctrine of judicial immunity.

This Court recently considered and dismissed a complaint against a judge containing allegations remarkably similar to those in the instant case. In D'Alessandro v. Robinson, 210 F.Supp.2d 526 (D.Del. 2002), the plaintiffs alleged, *inter alia,* that a District Court judge had violated their constitutional rights by dismissing their case, and that the judge had "conspired" with defense counsel in the underlying case. This Court dismissed pursuant to Rule 12(b)(6) on the basis of judicial immunity. The Court noted that, as here, all acts taken by Judge Robinson occurred in her official capacity as judge in plaintiffs' underlying case. 210 F.Supp.2d at 530. Furthermore, this Court held that "even if Judge Robinson's rulings were contrary to the law, she is still immune from suit." Id. Finally, with regard to the (unsubstantiated) allegations of "conspiracy", the Court held "even if Judge Robinson's actions were taken as a result of a conspiracy, [she] is still immune from suit." Id. The allegations lodged against the Vice Chancellor here are virtually identical, and the result must be the same. Plaintiff's complaint must be dismissed as the Vice Chancellor and judicial defendants are absolutely immune from suit.

63a

II.     **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C.A §1983.**

The Plaintiff has named the State of Delaware, Delaware Chancery Court, and Vice Chancellor Parsons as party-defendants in this matter. The Court of Chancery exists pursuant to the Delaware Constitution of 1897, Article IV, §10.   Defendants State of Delaware, the Court of Chancery and the Vice Chancellor in his official capacity cannot be considered "persons" as contemplated by the jurisprudence interpreting 42 U.S.C.A. § 1983. [8]

Obviously, the State of Delaware and the institutional Court of Chancery are not "persons." For purposes of this litigation, neither is Vice Chancellor Parsons a person subject to suit.   The United States Supreme Court has held that a state official acting in his or her official capacity is immune from suit under 42 U.S.C.A. §1983 because he or she is not a "person" under the statute. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).  Just as States themselves are protected from suit under the immunity granted by the Eleventh Amendment to the U.S. Constitution (*See* Argument III, *infra*), so are state actors in their "official" capacities.

As the Supreme Court in Will explained: "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such it is no different from a suit against the State itself." Will, supra, 491 U.S. at 71.   As a preliminary matter, the complaint is captioned against the institutional offices and "Donald Parsons Vice Chancellor," by reference to his

---

8  42 U.S.C.A. §1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

64a

official state title. As noted above, the grievances set forth in Plaintiff's complaint stem entirely

from Vice Chancellor Parsons' actions and decisions issued as the presiding judge in this case.

Thereby, all actions allegedly taken by the Vice Chancellor occurred in his official capacity as

judge and he may not be considered a "person" subject to suit in this Court.

### III. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE JUDICIAL DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.

The sovereign immunity of the states is found in the Eleventh Amendment to the United

States Constitution, which provides that "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State." While the

Amendment does not facially bar suits against the State by its own citizens, the United States

Supreme Court has held that in the absence of consent, a state is "immune from suits brought in

federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415

U.S. 651, 662-63, 94 S.Ct. 1347 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign

immunity limit[s] the federal courts' jurisdiction under Article III." Seminole Tribe of Florida v.

Florida, 517 U.S. 44, 116 S. Ct. 1114 (1996). "Congress' powers under Article I of the Constitution

do not include the power to subject States to suit at the hands of private individuals." Kimel v.

Florida Bd. of Regents, 528 U.S. 62, 80, 120 S.Ct. 631 (2004). "The Eleventh Amendment limits

federal judicial power to entertain lawsuits against a State and, in the absence of congressional

abrogation or consent, a suit against a state agency is proscribed." Neeley v. Samis, 183 F. Supp. 2d

65a

672, 678 (D. Del. 2002) (*citing* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98-100, 104 S.Ct. 900 (1984)). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive state immunity will produce this result. Id.

No such clear intent can be seen in 42 U.S.C.A. §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 U.S.C.A. §1983. Neither the State of Delaware nor its officials acting in their official capacity are "persons" as contemplated by 42 *U.S.C.* § 1983. (*See* Argument II, *supra*).

To the extent plaintiff claims any violations of state laws, the Doctrine of Sovereign Immunity also bars such a claim. *See* Pagano v. Hadley, 535 F.Supp. 92 (D.Del. 1982). Sovereign immunity provides that the State and its agencies may not be sued without consent. *See* Doe v. Cates, 499 A.2d 1175, 1881 (Del. Supr. 1985). No such consent exists here. *See also* 10 Del.C. §4001 (providing for absolute tort immunity for judges).

## IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE, THE ANTI-INJUNCTION ACT AND THE YOUNGER ABSTENTION DOCTRINE.

### a. The Rooker-Feldman doctrine bars Plaintiff's claims.

A review of the Nature and Stage of the Proceedings section of this brief makes clear that Plaintiff is engaged in a pattern of abusing the judicial process with attempts to appeal unfavorable rulings through new litigation. It is well established that federal district courts do not have jurisdiction to review judgments of a state court. District of Columbia v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 44 S.Ct.

66a

149 (1923).  The Rooker-Feldman doctrine is based on the theory that only the United States

Supreme Court has authority to review final state court judgments.  Id. at 476.

      The essence of Plaintiff's claims against the Judicial Defendants is that the Court of

Chancery has ruled against Plaintiff.  Plaintiff attempted to appeal the rulings of the Chancery

Court to the Delaware Supreme Court but the appeal was dismissed as interlocutory.  The

Rooker-Feldman doctrine bars plaintiffs from submitting the final judgment of a state court to a

federal District court for review.  The doctrine has also been held to apply even where there has

been no "final" judgment in the state court.  Keene Corp. v. Cass, 908 F.2d 293, 297 (8th Cir.

1986) (affirming District Court's dismissal of suit against state court and judge on basis of

judicial immunity and Rooker-Feldman).

### b. The Anti-Injunction Act, 28 U.S.C.A. §2283, bars Plaintiffs' claims.

      The Anti-Injunction Act, 28 U.S.C.A. §2283, is "an absolute prohibition against [federal

courts] enjoining state courts unless the injunction falls within one of three specifically defined

exceptions."  Banks v. District of Columbia et al, 1989 WL 38956, (Dist. D.C 1989) (citing 17 C.

Wright & A. Miller, Federal Practice and Procedure, §4222 (1988)).  "A United States Court can

only enjoin state court proceedings if such an injunction is 'expressly authorized by Act of

Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Id. (quoting 28 U.S.C.A. §2283).  This case does not fall under any of the exceptions to the Anti-

Injunction Act.

### c. The Younger Abstention Doctrine bars Plaintiff's claims.

      The Younger Abstention Doctrine is also applicable to this case insofar as Plaintiff is

soliciting this Court to interfere in pending state court litigation.  Plaintiff unsuccessfully

670a

attempted to remove the case that she filed in state court to the United States District Court for

the District of Delaware. The District Court should abstain from her most recent attempt to

interfere with the state court proceedings based upon the Younger Abstention Doctrine. <u>Younger</u>

<u>v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746 (1971); <u>Middlesex County Ethics Committee v. Garden</u>

<u>State Bar Association, et al.</u>, 457 U.S. 423, 102 S.Ct. 2515 (1982). As in <u>Middlesex County,</u>

there is an adequate state forum for resolution of the relevant issues of the case. The principles

of comity and federalism require that the Federal Court abstain from interference in a pending

state court case.

> It would trivialize the principles of comity and federalism if federal
> courts failed to take into account that an adequate state forum for
> all relevant issues has clearly been demonstrated to be available
> prior to any proceedings on the merits in federal court.

<u>Middlesex County Bar Association, et al.</u>, 457 U.S. at 437 (*citing* <u>Hicks v. Miranda</u>, 422 U.S.

332, 350 (1975)). Plaintiff's state court case involves interpretations of Delaware General

Corporation Law affecting real property and corporate governance in the State of Delaware. The

State of Delaware has an important interest in interpreting its Corporate Law, real property

within its borders, as well as the functioning of its State judicial system. For these reasons, the

Federal District Court should abstain from interference with this pending state judicial

proceeding.

### V.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED, PURSUANT TO FRCP 12(b)(6) AS IT OTHERWISE FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even notwithstanding the bar of absolute judicial immunity and the other defenses discussed

above, Plaintiff's complaint must fail as she states no cognizable claim for relief under the United

States Constitution. In order to state a claim for relief under §1983, the plaintiff must aver that her constitutional rights were violated. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986). Without establishing the existence of a constitutional right, the plaintiff cannot state a claim upon which relief can be granted. There can be no claim for relief under §1983 for "due process" violations unless plaintiff was improperly deprived of a constitutionally protected life, liberty or property interest. "As a predicate to a substantive due process claim, a plaintiff must first establish possession of property interest 'worthy of due process protection.'" Dale v. Town of Elsmere, 702 A.2d 1219,1224 (Del. Supr. 1997) (citing DeBlasio v. Zoning Board of Adjustment, 53 F.3d 592 (3d Cir. 1995), *cert. denied*, 516 U.S. 937 (1995)). Based upon the issues set forth at length in Plaintiff's complaint, the only conceivable interpretation of plaintiff's complaint is that she believes she has a "property" interest in obtaining favorable rulings and a favorable outcome to her underlying case in the Court of Chancery.[9] Of course, no such interest exists under the Constitution.

The United States Supreme Court has held that the Fourteenth Amendment's procedural protection of property "is a safeguard of the security of *interests that a person has already acquired in specific benefits*." Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2708-09 (1972). As the Court explained, in what has become the defining statement of when due process rights are triggered:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. *He must, instead, have a legitimate claim of entitlement to it.*

---

9 Plaintiff summarizes her claim by saying that "Chancery Court in its' ruling [the July 29, 2004 opinion] erred, by violating Plaintiffs Civil and Constitutional Rights regarding Indemnification . . ." (Complaint at p. 18).

69a

92 S.Ct. At 2709 (emphasis added).

It is apparent from plaintiff's complaint that she believes she is "entitled" to indemnification by Defendants in the underlying matter; to a declaration by the Court of the same and to other rulings in her favor on the underlying complaint in the Court of Chancery.   While every litigant wishes to obtain a favorable result in litigation, there is, of course, no Constitutional right or guarantee to that outcome.   Plaintiff has invoked the jurisdiction of virtually every court in the State of Delaware in efforts to obtain the relief she claims she is entitled to in the underlying matters.  She has even failed to fully pursue her State court claims, effectively abandoning the Court of Chancery action before any discovery or action on the merits.  In an effort to expedite her desired outcome, Plaintiff now claims that the United States Constitution and this Court should afford her the substantive remedy she seeks.  It goes without saying that this contention is without merit.

Clearly, even accepting the allegations of Plaintiff's complaint as true, she has failed to allege deprivation of (or even the existence of) any constitutionally protected life, liberty or property interest.  According, she has failed to state a claim for relief under 42 U.S.C.A §1983, which provides an additional ground for dismissal.

70a

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Honorable Court to grant their

Motion to Dismiss Plaintiff's complaint with prejudice.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

By:

GREGG E. WILSON (I.D. No. 85)
STEPHANI J. BALLARD (I.D. No. 3481)
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants

DATED: Jan. 7, 2005

71a

## *CERTIFICATE OF MAILING AND/OR DELIVERY*

The undersigned certifies that on _____ 2005, she caused the attached

***Defendants' Opening Brief in Support of Motion to Dismiss Complaint*** to be delivered to the

following persons in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701

**MANNER OF DELIVERY:**

_____ One true copy by facsimile transmission to each recipient.

__X__ Two true copies by first class mail, postage prepaid, to each recipient.

_____ Two true copies by Federal Express.

_____ Two true copies by hand delivery to each recipient.

Stephani J. Ballard, I.D. No. 3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
Attorney for Defendants

I:\stephani.ballard\Litigation\Brooks-Mccollum v. Parsons\BRIEF IN SUPPORT MTD2.doc

72a

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CATHY D. BROOKS-MCCOLLUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE OF DELAWARE, | ) | C.A. No. 04-1419 |
| DELAWARE CHANCERY COURT, and | ) | |
| DONALD PARSONS, Vice Chancellor, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**DEPARTMENT OF JUSTICE
STATE OF DELAWARE**

GREGG E. WILSON, I.D. #85
STEPHANI J. BALLARD, I.D. #3481
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants

DATED:    1/19/05

73a

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS.............................................................................................. ii

ARGUMENT............................................................................................................1

I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE   IMMUNE FROM SUIT UNDER THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY...................................................2

II.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C.A §1983................................................................................5

III.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE  JUDICIAL DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.........................................................5

IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE, THE ANTI-INJUNCTION ACT AND THE YOUNGER ABSTENTION DOCTRINE..........................................................5

V.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED, PURSUANT TO FRCP 12(b)(6) AS IT OTHERWISE FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.......................................................7

CONCLUSION....................................................................................8

74c

## TABLE OF CITATIONS

**Case Name**                                                                          **Page**

Bradley v. Fisher, 80 U.S. 335, 347 (1872) ........................................................ 2

District of Columbia v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303 (1983)................5-6

Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908)............................................…...5-6

Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985)..........................5

Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 44 S.Ct. 149 (1923)..........................5-6

Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099 (1978).........................................4

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).......................................5

Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971)...........................................…...5-6

### Statutes, Rules and Other Authorities

28 U.S.C.A. §2283 .................................................................................................6

42 U.S.C.A. §1983 .................................................................................................5

Federal Rule of Civil Procedure 11(b)......................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...............................................................7

Del. Const., Art. IV, §10 .......................................................................................3

8 Del.C. §145(b) ...............................................................................................3, 6

75a

## ARGUMENT

In "Plaintiff's "Reply Brief[1] in Support of Defendants Motion to Dismiss" (sic), Plaintiff continues to repeat and expand her unsubstantiated, conclusory allegations against Vice Chancellor Parsons and the Delaware Court of Chancery, without factual or legal support. Plaintiff's unsupported accusations against the Judicial Defendants do not merit a response. The law requires more than just slanderous allegations. The fact that plaintiff is obviously angry that the Court of Chancery did not rule in her favor on her motion for advancement and indemnification does not state a claim.

A review of the Court of Chancery record shows that the Court gave Plaintiff a full and fair hearing on her motion. It issued a five page written opinion which is well reasoned, fair, and legally sound. (A-7-11). The Court cited the Delaware statutory and case law upon which the ruling was based. Finally, while the Court denied *advancement* of costs, the issue of final indemnification rights has actually never been finally decided, as it was deemed premature by the Court at that stage of the proceedings, thus preserving Plaintiff's ability to renew her motion at a later time. (A-10-11). Instead of awaiting her opportunity to present her argument to the Court at the appropriate time, and through the appropriate legal process, Plaintiff opted instead to sue the Court and the Vice Chancellor.

---

1 Plaintiff titled her responsive filing a "reply brief," but it should be considered an Answering Brief in the context of a Motion to Dismiss. This is Defendants' reply brief thereto.

1

I. **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY.**

All of Plaintiff's allegations against the Court of Chancery and Vice Chancellor Parsons are barred by the doctrine of absolute judicial immunity, and her complaint must be dismissed. In her answering brief plaintiff repeatedly asserts, without supporting legal analysis, that the Vice Chancellor's ruling was wrong. Plaintiff's own brief makes clear that her claim is based entirely on alleged legal error in her State court case. (*See e.g.* Answering Brief at p. 3: "Plaintiffs dissatisfaction is as a result of the outcome [of the motion] not being based on any law, when all the law supports Plaintiffs claim."). The Court's well reasoned opinion speaks for itself, but even if Plaintiff were correct, and the Court of Chancery had erred in its ruling on advancement, the Court and the Vice Chancellor may not be sued for legal error. This is the essence of the doctrine of Judicial Immunity.

Plaintiff makes baseless and, frankly, slanderous allegations of improper conduct against the Vice Chancellor and State Court. While leniency is shown to *pro se* litigants in regard to pleading, Plaintiff's allegations are so scurrilous and unfounded as to approach a violation of F.R.C.P. 11(b). As noted in Defendants' Opening Brief, the United States Supreme Court could have been describing Plaintiff when it stated in 1871, in the seminal case on judicial immunity: "[f]ew persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action." Bradley v. Fisher, 80 U.S. 335, 348 (1871). One of the primary purposes of judicial immunity is to protect judges from being drawn into endless debates over their rulings by bitter litigants. Therefore, plaintiff's false and outrageous allegations of improper conduct are not only untrue, but also inconsequential to the

77a

application of judicial immunity to this case.

Plaintiff acknowledges that the doctrine of judicial immunity is controlling in this case:

> Plaintiff is not going to argue that she does not know that Vice
> Chancellor Parsons has immunity if he did not act outside the scope
> of his judicial capacity, although it is clear he did.

(Plaintiff's Ans. Brf. at p. 5). Now, having been put on notice of the legal standard by Defendants,

Plaintiff asserts for the first time that the Vice Chancellor was acting outside his jurisdiction and/or

the scope of his judicial capacity. Plaintiff, of course, offers no legal or factual support whatsoever

for this new argument.

There can be no genuine dispute that the Vice Chancellor and the Court of Chancery had

jurisdiction over the state court case. Plaintiff must acknowledge that she, herself, initiated the

action in the Delaware Court of Chancery, thereby invoking the Court's jurisdiction over her claim.

It cannot be disputed that the Plaintiff and defendants were Delaware residents, and the Corporation

at issue was a Delaware Corporation. It cannot be disputed that Plaintiff sought injunctive relief

from Delaware's court of equity, the Court of Chancery. The Delaware Constitution of 1897

provides in Article IV, § 10:

> In any cause or matter in the Court of Chancery that is initiated by an
> application to a Judge of that Court, the application may be made
> directly to the Chancellor or a Vice-Chancellor. Causes or
> proceedings in the Court of Chancery shall be decided, and orders or
> decrees shall be made by the Chancellor or Vice Chancellor who
> hears them, respectively.

Finally, it cannot be disputed that the jurisdiction to determine corporate indemnification claims is

vested by statute in the Court of Chancery. 8 Del. C. §145(b).

All of the Vice Chancellor's actions were taken in his judicial capacity. Plaintiff herself

78a

admits, and the court docket clearly confirms, that Vice-Chancellor Parsons held a hearing on Plaintiff's motion for advancement and/or indemnification and issued a written opinion. A judicial act is "a function normally performed by a judge, and to the expectations of the parties, *i.e.* whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 1107 (1978). The acts in this case—holding a hearing and issuing a written opinion--are quintessential judicial actions.

Plaintiff's argues that when the Court ruled against her on her motion, the Court's ruling was "unconstitutional" and, therefore, the Court lacked jurisdiction. This novel argument is that the jurisdiction of a court is dependent (retroactively) on which way the court rules on a particular motion. This defies legal precedent, process and common sense. Clearly, the Court of Chancery had jurisdiction to hear the motion filed by plaintiff and is entitled to judicial immunity from attack by the losing party on the motion. Finally, even an argument of "unconstitutionality" is in essence an argument of legal error and, as such, judicial immunity bars suit on such a claim.

Plaintiff complains that Defendants are "hiding behind" judicial immunity rather than addressing the allegations of her claim. (*See e.g.* Ans. Brf. at p. 14). In making this statement, Plaintiff displays a fundamental misunderstanding or disregard for the principle of judicial immunity. Plaintiff, who continually complains that Defendants violated state and federal laws, herself refuses to acknowledge that judicial immunity is the law, established by the United States Supreme Court. Plaintiff further states that "defendants have not argued or proved that they did not violate Plaintiffs constitutional or civil rights . . . but have argued only that they are immune." Id at p.3. In addition to turning the burden of proof on its head (it is for a plaintiff to affirmatively establish violation of rights, not for the defendant to disprove allegations of such), this statement again misapprehends the

79a

principle of judicial immunity, by which this Court is bound.  Absolute judicial immunity is *an entitlement not to stand trial.*  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985).

## II.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS STATE JUDICIAL DEFENDANTS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C.A §1983.

Judicial Defendants §1983 defense is based upon a fundamental principle of Constitutional law and is beyond dispute.  Plaintiff's brief offers no relevant response.  In fact, Plaintiff concedes that the only non-institutional defendant, Vice Chancellor Parsons, "was sued in his official capacity and is an entity of the State government . . . ." (Ans. Brf. at p.18).  *See* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

## III.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE JUDICIAL DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.

This argument is also based upon an elementary principal of constitutional law and is beyond dispute.  Plaintiff's brief offers no relevant response with regard to a claim for monetary damages.  Plaintiff's argument citing the Ex Parte Young exception for prospective injunctive relief is addressed at argument IV, below.

## IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE, THE ANTI-INJUNCTION ACT AND THE YOUNGER ABSTENTION DOCTRINE.

Plaintiff states in her brief that she appealed the (interlocutory) ruling of the Court of Chancery to the Delaware Supreme Court and has "filed an appeal to the United States Supreme Court." (Ans. Brf. at p. 1).  This is precisely the route that the Rooker-Feldman doctrine requires plaintiff to follow to appeal the actions of a state court.  It is also precisely why the District Court

80a

lacks jurisdiction to re-consider rulings of the Court of Chancery, a state court. Plaintiff will be bound by the outcome, favorable or unfavorable, of her appeals to the Delaware Supreme Court and United States Supreme Court. The fundamental premise of the Rooker-Feldman doctrine is that the United States District Court lacks jurisdiction to consider a state court case that may be appealed (and certainly one that is currently pending appeal) to the United States Supreme Court. District of Columbia v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923).

It is unclear what relief that plaintiff is seeking. Her initial "Complaint" in the instant case made no reference to seeking prospective injunctive relief against Defendants. In her answering brief she appears to argue that she is not seeking injunctive relief because she no longer wishes to have her case heard in the Court of Chancery. "Plaintiff has not asked the court to interfere in state action. . . [and] does not wish to add the new charges in Chancery Court and wishes to have them heard in District Court before a jury." (Ans. Brf. at p. 9). At other times, she attempts to invoke the doctrine of Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), as an exception to the Eleventh Amendment prohibition against all claims except those requesting prospective injunctive relief. (Ans. Brf. at p. 19).

However, even if plaintiff were requesting prospective injunctive relief, that remedy against a state court would be prohibited by the Rooker-Feldman Doctrine and the Anti-Injunction Act, 28 U.S.C.A. §2283. Moreover, as stated in Defendants' Opening Brief, the Younger Abstention Doctrine is applicable to the extent that plaintiff is seeking an order that would impact pending litigation in state court. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971). Plaintiff's case involves interpretations of Delaware General Corporation Law, and specifically the state statute regarding indemnification. 8 Del.C. §145. The State of Delaware has an important interest in

81a

interpreting its corporation law, its statutes, property within its borders, and its judicial system. For these reasons, abstention from interfering with the state's judicial process is appropriate and required.

## V.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED, PURSUANT TO FRCP 12(b)(6) AS IT OTHERWISE FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff admits, in the midst of her angry words and unfounded accusations, that the essence of her complaint against the Court is simply that it did not rule in her favor on her motion to be indemnified for legal costs prior to the adjudication of her claims.

> If it were in [Chancery Court's] judicial capacity and power to issue an order that Plaintiff was not entitled to indemnification and did not conflict with every law of our nation, Plaintiff would not have to seek a need to file charges against Defendants in a US Court.

(Ans. Brf. at p. 1).

Not surprisingly, Plaintiff offers no legal support for her purported absolute, "constitutional right" to pre-trial indemnification of legal costs. It is certainly the exception rather than the rule for one party to be ordered to indemnify another for legal costs before a case is even heard. The right to indemnification in a given case, even where it is deemed to exist, is based on statutory or common law, and certainly appears nowhere in the United States Constitution. Plaintiff has failed to state any constitutional claim against the Judicial Defendants based upon a failure to rule in her favor on this issue. The repetitiveness, volume, or viciousness of her accusations does not change the underlying nature of the case. This is simply the case of an angry, dissatisfied litigant who will go to any length to attack the Court for not ruling in her favor. Plaintiff has failed to state a claim and the case should be dismissed.

7

82 a

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Honorable Court to grant their

Motion to Dismiss Plaintiff's complaint with prejudice.

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

By: _____
GREGG E. WILSON (I.D. No. 85)
STEPHANI J. BALLARD  (I.D. No. 3481)
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants

DATED:   1/19/05

8

83a

# EMERALD RIDGE
## NEWSLETTER

**JANUARY 2005**

## ANNUAL MEETING
### AUGUST 11, 2004

The rescheduled annual meeting was held August 11, 2004, at the Red Lion Christian Academy. Anyone wanting a copy of the minutes of the Annual Meeting should contact the Secretary.

### Your new board:

Ruth Visvardis, Mark Martell, Maundy Melville, Susan Nixon and Robert Bukowski were elected to form the new Board.
At the next scheduled board meeting the following offices were set:
Ruth Visvardis - President
                                    (2 yr term)
Susan Nixon - 1st Vice-president
Robert Bukowski - 2nd Vice-president
Maundy Melville - Secretary
Mark Martell - Treasurer(2 yr term)

We would like to thank outgoing President Renford Brevett for his dedicated service. He took over the Board at a difficult time and guided us through a rough year.

## Financial Update

Mark Martell, treasurer, will be glad to supply copies of the financials that were handed out at the meeting, upon request.

## Community concerns

**Vandalism:** Several instances of vandalism were reported including shed break-ins and mutilation of personal property. Names were taken for the future assembly of a neighborhood watch.
**Paving:** Areas of the development are in need of corrective/repaving. The state has been contacted and we are awaiting their

action Hopefully the worst areas will be started soon.

**Lawn maintenance/Snow removal:**
Contract has been renewed for snow removal service. New lawn  mowing and maintenance estimates are being solicited. Concerns  for replanting of common areas at the entrance are being addressed .
We are looking into, with the help of government resources, lighting for the entrance monuments. Hopefully this will be accomplished in 2005.

**Scooters:** Several complaints have been received regarding motorized scooters and their usage in the Development. Guidelines prohibit their use on Development roads, but more importantly, Delaware has State laws regarding their use.

## New Items

The board, with legal help, is currently addressing the state of the documents that govern our community. It is our intention that during the current term we will be able to update these documents to allow for better understanding and clearer governing.

## Street lights

Street lights are maintained by CONECTIV. For any street light problems, e.g. bulb replacement, broken glass or poles, or damage, contact them at their customer service number, or contact a Board member to assist. CONECTIV will request the number at the bottom rear of the pole and the house number closest.

84a