CASE NO. 04-419(JJF)

**ORIGINAL**

**In the United States District Court For The District Of Delaware**


Cathy Brooks-McCollum & Emerald Ridge Service Corporation (Derivative
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694
Plaintiff(s)

vs.

State Farm Insurance Company
Defendant/Defendant(s)



<u>**VOLUME I OF PLAINTIFF'S APPENDIX TO BRIEF**</u>


Cathy Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694


Dated: August 17, 2005

## LIST OF APPENDICIES

Pages

Chancery Court Opinion in Civil Action 147-N, Submitted 4/2/2004, Decided 7/29/04 ........................................ 1a-4a

Supreme Court Order In Civil Action 335,2004, Submitted 8/24/04, Decided 9/30/04 .............................................5a

Supreme Court Order In Civil Action 294,2004, Submitted 8/18/04, Decided 9/30/04 ............................................6a

Chancery Court Order Civil Action 147-N, Not Dated, Referencing 1/30/2004 Defendants Letter...........................7a

Chancery Court Order in Civil Action 147-N ...............................................................................................................8a

Chancery Court Order In Civil Action 147-N ..............................................................................................................9a

Emerald Ridge By-Laws (Excerpt) ......................................................................................................................10a-11a

Emerald Ridge Certificate Of Incorporation (Excerpt) ...........................................................................................12a

Anonymous Letter Sent To Petitioner (Excerpt)......................................................................................................13a

Defendant's Vivardis Letter and Resignation 7/2003 (Excerpt). ............................................................................14a

State Farm Policy (Excerpt) ...............................................................................................................................15a-16a

Corporate Counsel Confirmation Illegal Board (Excerpt) ......................................................................................17a

Corporate Counsel Letter Calling For all To Resign (Excerpt)...............................................................................18a

Board Minutes 8/23/2003 (Excerpt) ........................................................................................................................19a

12/29/2003 Illegal Board Meeting (Excerpt) ...........................................................................................................20a

State Farm Letter Refusing Petitioner Insurance & Showing Reason Why .............................................................21a

Defendant's Longhurst Confirmation Not A Member Of Board ..............................................................................22a

Edward Kafader Confirmation non-Removal Of Web Postings ...............................................................................23a

Emerald Ridge Maintenance Declarations (Excerpt) ..............................................................................................24a

Defendant's Reply To Motion For More Definite Statement...............................................................................25a-26a

Defendant's Renewal Motion....................................................................................................................................27a

Defendant's Illegal Election Process (Excerpt)..................................................................................................28a-32a

Chancery Court Transcript dated June 24, 2004 (Excerpt) ................................................................................33a-37a

Chancery Court Transcript dated March 29, 2004 (Excerpt) .............................................................................38a-43a

Defendant's Shareef's Letter To Bank ......................................................................................................................44a

District Court Order .........................................................................................................................................45a-46a

Notice Of Appeal To The District Court....................................................................................................................47a

Delaware Supreme Court Order .........................................................................................................................48a-52a

Edward Kafader Letter Dated July 22, 2005 To Delaware Superior Court Judge Vaughn....................................53a-55a

Homestore Inc. vs. Peter Tafeen (DE Supreme 223-2005) ................................................................................56a-64a

[D#1, D#5,D#10,D#13, D#19]

COURT OF CHANCERY OF THE
STATE OF DELAWARE

Date Submitted:    April 2, 2004
Dated Decided:    July 29, 2004

Re:    Brooks-McCollum v. Emerald Ridge Service Board Of Directors, et al., - Civil Action No. 147-N

Dear Ms. Brooks-McCollum and Counsel:

      Cathy Brooks-McCollum ("Appellants"), pro se, filed a Motion to Compel Indemnification on March 18, 2004.[1] Appellant's Motion arises out of claims she filed against certain current and former members of the board of directors ("Appellees") of the Emerald Ridge Service Corporation ("Emerald"). The Court reads Appellant's self styled Motion to Compel Indemnification as a motion for advancement and for a declaration that she is entitled to indemnification in the circumstances of this case.[2] Appellants contend she is entitled to advancement from Emerald for the cost of pursuing numerous claims, including: unjust enrichment, breach of fiduciary duty, and slander. In addition, Appellant's reply papers suggest that the pleadings, which are not yet closed, may include a request for relief under 8 Del. C. §225, as well.

      Based on the numerous papers submitted by Appellants, Appellees' response, and the arguments presented during the hearing on June 24, 204, the Court finds that Appellants is not entitled to advancement. The Court also will deny without prejudice Appellant's motion for a declaration that she is entitled to indemnification, on the ground that it is premature.[3]

## I. BACKGROUND

      Appellant was elected a director of Emerald in June of 2003 and was appointed to serve as both Treasure and Secretary.[4] At a December 23, 2003 Board meeting, a unanimous Board voted to remove Appellants from those positions.[5] Appellants resigned from the Board on January 15, 2004.[6]

      In Appellants reply papers, Appellants alleges that she rescinded Appellants resignation on February 7, 2004, and that she now is the only valid director of Emerald.[7] Appellees' submissions and argument make clear that they dispute Appellant's status as a current board member and Appellants claim to be the only valid board member. These issues go to the merits of the underlying dispute and are not ripe for decision at this time. For purposes of the motion for indemnification, it is undisputed that Appellants was a director of Emerald until January 15, 2004. The Court will assess the motion on that basis. Whether or not Appellants

---

[1] This Court has jurisdiction under 8 Del. C. §145(k) to hear and determine all "actions for advancement of expenses or indemnification" in a summary proceeding. Appellants brought her motion for indemnification as part of a larger action before any decision as to liability or any significant discovery has occurred. The procedural propriety of Appellant's motion at this early stage of the litigation is discussed infra.

[2] On July 7, 2004, Appellants filed a Motion for Reargument on Advancement on Advancement of Fees for Indemnification. In her motion, Appellants incorrectly stats that, at a hearing on June 24, 2004 the Court "ordered that Appellants was entitled to indemnification and a written order would be issued." In fact, at the June 24th hearing, the Court only expressed its preliminary view that Appellants was not entitled to indemnification, it would not be for all of her claims. Appellants's July 7th motion seeks reargument on the advancement issue. The Court, however, did not render a final ruling on either advancement or indemnification at the June 24th hearing. Consequently, I will treat the Motion for Reargument as an additional submission in support of Appellants's motion for indemnification and advancement.

[3] The Court's decision does not preclude Appellants from filing a proper action for indemnification at the conclusion of this litigation.

[4] *See* Response to Appellees Reply to Indemnification & Response to Appellees Answer to Appellants's More Definitive Statement ("PRB") at 17. Unless otherwise noted, the facts recited in this letter opinion are drawn from Appellants's moving papers, which the Court assumes arguendo to be true. This is without prejudice to Appellees' ability to dispute in later proceedings any facts not otherwise admitted.

[5] *See* Appellants's Response to Motion for More Definite Statement at 2. Appellants disputes the validity of her removal. The factual assertions related to that issue, however, are not relevant to this motion.

[6] *See* Appellees' Renewal of Motion For More Definite Statement and Motion for Judgment on Pleadings ("Defs.' Renewal of Motion"), Ex.E.

[7] PRB at 15.

effectively rescinded Appellants resignation and the potential ramifications of that action upon Appellants claim for indemnification cannot be resolved until after the Court addresses the merits of this action.

On January 2, 2004, before she resigned, Appellants filed Appellants Complaint in this Court. On February 3, 2004, Appellees moved for a more definite statement. On February 9, 2004, Appellants filed Appellants response. In it and numerous other papers, Appellants alleges that: (1) she was invalidly removed as an officer because Appellee Shareef was not a valid director; (2) Emerald was unjustly enriched by requiring Appellants to pay for a power washing service to clean community monuments; (3) the Board utilized funds for unauthorized purposes and disregarded the referendum directives made by the members of the corporation; (4) the Board improperly failed to permit inspection of Emerald's books and records; and (5) the Board made intentional, slanderous postings on Emerald's website. On March 5, 2004, Appellees renewed their motion for a more definite statement and moved for judgment on the pleadings. On March 9, Appellants filed a self-styled amended complaint to add breach of contract claims against State Farm Insurance Company ("State Farm") and to assert various challenges to the identity of the properly elected directors of Emerald, as well as several other new claims.[8] On March 18, Appellants filed Appellants Motion to Compel Indemnification.

In a telephone conference on March 29, 2004, the parties agreed to defer action on Appellees' pending motions and Appellant's purported amended complaint until after Appellant's Motion to Compel Indemnification was briefed and resolved. The Court provided its preliminary views on the advancement issues during a hearing on June 24, 2004 on another motion by Appellants in this action.

## II. ANALYSIS
### A. Advancement

The Delaware General Corporation Law permits a corporation to advance the costs of litigation to a director.[9] This allowance is permissive, not mandatory.[10] Thus, a corporation is free to limit the terms of advancement and even preclude advancement entirely.

The Emerald bylaws relating to indemnification provide a narrow right to advancement of legal expenses.[11] Specifically, Section 225, subsection 1 of the bylaws provides in pertinent part:

Right to Indemnification – Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (proceeding"), by reason of the fact that he or she or a person for who he or she is the legal representative is or was a Director or officer, employee or agent of the Corporation or is or was serving at the request of the Corporation as a Director or officer…shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended…against expenses, liability and loss (Including attorneys fees, judgments, fines… Such right shall be a contract right and shall include the right to be paid by the Corporation expenses incurred *in defending any such proceeding* in advance of its final disposition; provided, however, that the payment of such expenses incurred by a Director or officer of the Corporation in his or Appellants capacity as a Director or officer…shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such Director or officer, to repay all amounts so advanced if it should be determined ultimately that such Director or officer is not entitled to be indemnified under this section or otherwise.[12]

Thus, Emerald's bylaws set forth two substantive requirements for advancement. First, the expenses must be incurred in "Appellee" a proceeding such as this civil action.[13] Second, the individual requesting advancement must deliver to Emerald an undertaking to "repay all amounts so advanced if it should be determined ultimately that such Director or officer is not entitled to be indemnified."

Appellants do not meet either or these two requirements. First, she is not defending this lawsuit; in fact, she initiated it. In Appellants reply papers, Appellants seems to argue that the advancement rights

---

[8] Appellants has not properly moved pursuant to Chancery Court Rule 15 for leave to file her amended complaint. Yet, she has included the proposed Amended Complaint in previous communications to the Court. Whether some, all or none of the new claims asserted in Appellants's so-called amended complaint will be allowed remains to be determined.

[9] 8 *Del. C.* §145(e)

[10] See Tafeen v. Homestore, 2004 Del. Ch. LEXIS 38, 44 (2004), noting that corporations can draft narrow advancement bylaws.

[11] Defs.' Renewal of Motion, Ex.D at 14.

[12] Id., Ex. D (emphasis added).

[13] Id., Ex. D at 13

provided by the bylaws necessarily extend to every situation under which the bylaw might authorize indemnification.[14] The advancement explicitly is limited to persons "defending" an action. The language in the bylaws defining the scope of indemnification arguably might have broader application. For example, read most broadly, Section 25 would afford indemnification rights to: "Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding…by reason of the fact that he or she… is or was a Director or officer, employee or agent of the Corporation." Whether or not Appellants ultimately might qualify for indemnification under Section 25 as to some aspect of Appellants claims, the Court concludes that the narrower language on advancement precludes Appellants from receiving an advancement of Appellants costs and expenses in this action.[15]

A second and independent basis exists for denying Appellant's application for advancement. The bylaws require that she submit to the Corporation a formal undertaking to repay. Appellants presented no evidence that she ever supplied the requisite undertaking. In fact, Appellants reply papers indicate that Appellants denies that the requirement to agree to repay advanced funds applies to Appellants.[16] Appellant's rationale is that Appellants case on the merits as to the proper makeup of the board is so strong that there is no possibility that she ultimately will be determined not to entitled to indemnification. The Courts rejects this excuse for not providing the requisite undertaking.

For both the above reasons, Appellants has failed to prove a right to advancement. Thus, the Court will deny that aspect of Appellants motion.

## B. Indemnification

In Appellants Motion to Compel Indemnification and Appellants argument on June 24, 2004 Appellants has requested a ruling on Appellants claimed right to indemnification. Even at this preliminary stage of the litigation, it seems clear that on at least some of Appellants original claims and potential new claims in the proposed amended complaint, Appellants will not be entitled to indemnification. For example, Appellants claim of slander does not arise out of an obligation or duty to the corporation. Appellants make this claim on Appellants own behalf, asserting Appellants personal rights, rather than as part of Appellants responsibilities and duties as a director. To the extent indemnification might arguably be authorized by Emerald's bylaws in connection with a particular claim, that claim by Appellants would have to arise out of Appellants duty to the corporation.[17] Hence, Appellants claim for slander would not be indemnifiable.

As to the remaining claims, Appellant's right to indemnification evidently will be challenged on several grounds, including that she commenced this litigation unlike most litigants who seek indemnification in their role as Appellees. The Delaware courts only rarely have authorized indemnification of Appellants.[18] Whether the Emerald bylaws and the holdings in those cases provide a basis for granting indemnification to Appellants in the circumstances of this case is likely to be hotly contested.[19]

It would be premature, however, for the Court to attempt to address those issues before the questions of liability are determined. Apart from the issue of advancement addressed above, courts understandably tend to defer deciding whether a party is entitled to indemnification until after the merits of the underlying dispute

---

[14] PRB at 4.

[15] Appellants also argues that she is "defending the accusations as a Appellants wrongly accused." PRB at 20-21. Having considered the allegations in Appellants's complaint and her moving papers, the Court is not convinced that there is any legitimate basis for characterizing her position in this litigation as one of "defending" within the meaning of the Emerald bylaws.

[16] PRB at 11-12

[17] Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578, 594 (Del. Ch. 1994) citing Hibbert v. Hollywood Park, Inc., 457 A.2d 339, 344 (Del. 1983) ("Thus, I take Hibbert to recognize that permissible indemnification claims will include those deriving from lawsuits brought by directors, officers, agents, etc., only insofar as the suit was brought as part of the employee's duties to the corporation and its shareholders.") The Court further stated that claims for slander or breach of contract, similar to the claims raised by Appellants, do not arise out of duty to the corporation and are not thus not indemnifiable: "The suits brought by [Appellants[…cannot be considered a manifestation of her responsibilities to [the indemnifying entity]. These suits plainly sought to advance [Appellants's] own interest, not the interest of the [the indemnifying entity]…the litigation involves purely the assertion of Appellants's personal rights (i.e., defamation, breach of contract), and thus advances no interest of, or duty to, [the indemnifying entity]." *Id.*

[18] See Shearin v. E.F. Hutton Group, 652 A.2d 578 and Hibbert v. Hollywood Park, 457 A.2d 339.

[19] See, e.g., Appellees' Response to Appellants's Motion to Compel Indemnification.

have been resolved.[20] The additional facts that the pleadings in this action are still incomplete and virtually no discovery has occurred yet underscore the inadvisability of addressing indemnification at this time.

Accordingly, to the extent Appellant's motion seeks an immediate ruling on the indemnification question, the Court denies that aspect of the motion without prejudice on the grounds that it is premature and seeks an impermissible advisory opinion.

### III. CONCLUSION

For the foregoing reasons, Appellant's Motion to Compel Indemnification, more accurately classified as a request for advancement, is DENIED.  IT IS SO ORDERED.

Sincerely,

/s/Donald F. Parsons Jr.

Vice Chancellor

lef

---

[20] See 8 Del. C. §145© ("To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding...or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such persons in connection therewith.").

[D#1, D#5,D#10,D#13, D#19]

IN THE SUPREME COURT OF THE STATE OF DELAWARE

CATHY D. BROOKS-MCCOLLUM

No. 335, 2004

Appellants Below,
    Appellant,

    v.

KENNETH SHAREEF,
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
    Appellees below,
    Appellees

Court Below-Court Of Chancery
of the State of Delaware,
in and for New Castle County
C.A. No. 147-N

Submitted:    August 25, 2004
Decided:    September 30, 2004
Before **STEELE**, Chief Justice, **HOLLAND**, and **BERGER**, Justices

**ORDER**

This 30th day of September 2004, it appears to the Court that:

(1) The Appellants below, Cathy Brooks-McCollum, has petitioned this Court, pursuant to Supreme Court Rule 42, to appeal from interlocutory rulings of the Court of Chancery dated March 29, 2004, June 24, 2004, and July 29, 2004. The Court of Chancery denied Brooks-McCollum's motion to compel advancement of costs in pursuing Appellants claims against the Appellees who are members of the board of directors of Emerald Ridge Service Corporation and denied as premature Brooks-McCollum's request for a declaration that she is entitled to indemnification. Brooks-McCollum also simultaneously filed an application to this Court for certification of questions of law pursuant to Supreme Court Rule 41.

(2) With respect to Appellants application for certification of questions of law, this Court will only accept certification from the state and federal courts specified in Rule 41. Accordingly, Brooks-McCollum has no right to request certification under Rule 41, and Appellants application for certification shall be stricken as a nonconforming document.

(3) With respect to Appellants application for certification to take an interlocutory appeal, it appears from the Court of Chancery docket that Brooks-McCollum did not file Appellants application to certify an interlocutory appeal until August 13, which failed to comply with the ten-day time period set forth in Supreme Court Rule 42(c).

(4) The Court of Chancery, however, did not address the timeliness of Brooks-McCollum's application because it decided to stay any further proceedings below in light of Brooks-McCollum's attempt to transfer the case to federal district court. Accordingly, no action has been taken on Brooks-McCollum's application.

(5) Ordinarily, this Court would await action by the trial court on a petitioner's application to certify an interlocutory appeal. We do not find it necessary in this case, however, because we find it apparent that Brooks-McCollum's application fails on its face to satisfy the procedural or substantive requirements of Supreme Court Rule 42(b). Accordingly, the exercise of our sound discretion, we have determined that the application should be refused.

NOW, THEREFORE IT IS HEREBY ORDERED that the application for certification of questions of law under Rule 41 is STRICKEN. Alternatively, the notice of interlocutory appeal under Rule 42 is REFUSED.

BY THE COURT:

/s/Randy Holland Justice

[D#1, D#5,D#10,D#13, D#19]

IN THE SUPREME COURT OF THE STATE OF DELAWARE

CATHY D. BROOKS-MCCOLLUM

No. 294, 2004

Appellants Below,
   Appellant,
   v.

KENNETH SHAREEF,
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
   Appellees below,
   Appellees

Court Below-Court Of Chancery
of the State of Delaware,
in and for New Castle County
C.A. No. 147-N

Submitted:   August 18, 2004
Decided:    September 30, 2004

Before **STEELE**, Chief Justice, **HOLLAND**, and **BERGER**, Justices

## ORDER

This 30th day of September 2004, it appears to the Court that:

   (1) On July 13, 2004, Appellants-appellant Cathy Brooks-McCollum filed a notice of appeal from a bench ruling pronounced by the Court of Chancery on June 24, 2004, which denied Brooks-McCollum's motion to compel. The Court of Chancery interpreted the motion to compel as a motion for advancement of costs and a motion for a declaration that she is entitled to indemnification. The Court of Chancery denied Brooks-McCollum's request for advancement of costs to pursue Appellants claims of unjust enrichment, breach of fiduciary duty, and slander against the Appellees and denied, as premature, Appellants request for indemnification.

   (2) On July 15, 2004, the Clerk of this Court issued a notice, pursuant to Supreme Court 29(b), directing Brooks-McCollum to show cause why this appeal should not be dismissed for Appellants failure to comply with Supreme Court Rule 42 in taking an appeal from an interlocutory order. On July 29, 2004, the Court of Chancery issued its written order supporting its June 24 bench ruling. On August 3, Brooks-McCollum filed a response to the notice to show cause and also separately filed a notice of interlocutory appeal in case No. 335, 2004.

   (3) It is clear from the record that the Court of Chancery's June 24 bench ruling and its July 29 supporting order are interlocutory. Although the Court of Chancery has jurisdiction to hear and determine all "actions for advancement of expenses or indemnification" in a summary proceeding,[21] Brooks-McCollum filed Appellants motion to compel such relief as part of a larger action alleging, among other things, Appellees' breach of fiduciary duty and slander. Appellants lawsuit is still pending before the Court Of Chancery.

   (4) Absent compliance with Rule 42, the jurisdiction of this Court is limited to review of the final judgment of a trial court.[22] An order is deemed final if the trial court has clearly declared its intention that the order be the court's "final act" in the case.[23] To date, no final judgment has been rendered on the merits of Brooks-McCollum's claims. Accordingly, this appeal must be dismissed.[24]

   (5)

   NOW, THEREFORE IT IS HEREBY ORDERED pursuant to Supreme Court Rule 29(b), that this appeal is dismissed..

BY THE COURT:
/s/Randy Holland Justice

---

[1]8 Del. C. §145(k).

[22] Julian v. State, 440 A.2d 990, 991 (Del.1982)

[23] J.I. Kislak Mortgage Corp. v. William Matthews, Builder, Inc., 303 A.2d 648, 650 (Del. 1973).

[24] By separate order, this Court has addressed Brooks-McCollum's petition for an interlocutory appeal in case No. 335, 2004

[D#1, D#5,D#10,D#13, D#19]

IN THE COURT OF CHANCERY O FTHE STATE OF DELAWARE IN AND FOR NEW CASTLE
COUNTY

CATHY D. BROOKS-MCCOLLUM
                    No. 147-N

Appellants Below,
   Appellants,
   v.

EMERALD RIDGE                    Court Below-Court Of Chancery
SERVICE CORPORATION              of the State of Delaware,
BOARD OF DIRECTORS,              in and for New Castle County
KENNETH SHAREEF,                 C.A. No. 147-N
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
   Appellees,

## ORDER

      The Court having received Appellee's Motion for a More Definite Statement pursuant to Court of
Chancery Rule 12(e), and preferring that the motion be briefed and presented promptly, IT IS HEREBY
ORDERED this 4th day of February, 2004, as follows:
    1.  Appellants shall file a response to the Motion for a More Definite Statement on or before February 20,
2004, and Appellees reply in support of the Motion shall be filed on or before March 5, 2004; or
    2.  If Appellants elects not to oppose the Motion, she shall file an amended complaint on or before March
1, 2004 addressing the concerns stated in the Motion for a More Definite Statement.


                           /s/Donald Parsons, Jr.
Vice Chancellor

[D#1, D#5,D#10,D#13, D#19]

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE
COUNTY

CATHY D. BROOKS-MCCOLLUM

               No. 147-N

Appellants Below,
   Appellants,
    v.

               Court Below-Court Of Chancery
EMERALD RIDGE        of the State of Delaware,
SERVICE CORPORATION   in and for New Castle County
BOARD OF DIRECTORS,    C.A. No. 147-N
KENNETH SHAREEF,
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
   Appellees,

## ORDER

On the basis of Appellees' letter to the Court of January 30, 2004 requesting an extension of time to respond to the Complaint, and there appearing to be good cause shown for the request, the above listed Appellees shall have until March 1, 2004 to move, answer or otherwise plead in response to the Complaint in this action. If Appellants objects to this Order, she shall notify the Court, in writing, on or before February 10, 2004.

     IT IS SO ORDERED.


                     /s/Donald Parsons, Jr.
                     Vice Chancellor

**[D#1, D#5,D#10,D#13, D#19]**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE
COUNTY

CATHY D. BROOKS-MCCOLLUM

              No. 147-N

Appellants Below,
    Appellants,
    v.

EMERALD RIDGE            Court Below-Court Of Chancery
SERVICE CORPORATION    of the State of Delaware,
BOARD OF DIRECTORS,    in and for New Castle County
KENNETH SHAREEF,       C.A. No. 147-N
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
    Appellees,

**ORDER**

IT IS SO ORDERED.

                      /s/Donald Parsons, Jr.
                      Vice Chancellor

[D#1, D#5,D#10,D#13, D#19]

## BY-LAWS OF EMERALD RIDGE SERVICE CORP.

1.     MEETING OF MEMBERS:

Special meetings of the members may be called at any time by the President and shall be called by the President or Secretary on the request in writing or by vote of a majority of the Directors at the request in writing of a majority of members in the Corporation.

4.     DIRECTORS:

The property and business of the Corporation shall be managed and controlled by its Board of Directors, which shall consist of two (2) members so long as they are appointed, and which **thereafter** shall consist of **three** or more **elected** Directors, not to exceed five (5). Directors must be members of the Corporation or officers, partners or employees of members of the Corporation.

At the first annual meeting, at least one Director shall be elected for a three-year term, one shall be elected for a two-year term and one shall be elected for a one-year term. Thereafter, at least one Director shall be elected at each annual meeting for a two year term, with the objective that at least two members on any three or four Director Board, and at least three members on any five Director Board, shall hold over at each election so that the Board shall never consist entirely of inexperienced directors after the first election (unless by resignation or recall). **The Directors shall hold office until the next annual election or until their successors are elected and qualify.** They shall be **elected** by the members, except that if there be a vacancy in the Board by reason of death, resignation or otherwise, such vacancy shall be filled for the unexpired term by a majority vote of the remaining Directors, though less than a quorum.

9.     OFFICERS OF THE CORPORATION:

The officers of the Corporation shall be a president, or more Vice-Presidents, Secretary, Treasure, and such other officers as may from time to time be chosen by the Board of Directors **The President and Vice-Presidents shall be chosen from among the Directors.**

The **officers** of the Corporation **shall hold office until successors are chosen and qualify in their stead**. Any officer **chosen** or **appointed** by the Board of Directors may be removed either with or without cause at any time by the affirmative vote of the majority of the whole Board of Directors. If the office of any officer or officers becomes vacant for any reason, the vacancy shall be filled by the affirmative vote of a majority of the whole Board of Directors.

25.     INDEMNIFICATION:

Section I. Right to Indemnification

Each person who was or is made a party or is threatened to be made a party to or is involved in any

action, suit or proceeding, whether civil, criminal, administrative or investigative ("proceeding"), by reason of

the fact that he or she or a person for whom he or she is the legal representative is or was a Director or officer,

employee or agent of the Corporation or is or serving at the request of the Corporation as a Director or officer,

employee or agent or another corporation, or of a partnership, joint venture, trust or other enterprise, including

service respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official

capacity as a Director, officer, employee or agent or in any other capacity while serving as a Director, officer,

employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized

by the Delaware General Corporation Law, as the same exists or hereafter be amended (but, in the case of any

such amendment, only to the extent such amendment permits the Corporation to provide broader

indemnification rights than said law permitted the Corporation to provide prior to such amendment) against

expenses, liability and loss including attorneys fees, judgments, fines,.......... Such right shall be a contract

right shall include the right to be paid by the Corporation expenses incurred in defending any such proceeding in advance of its final disposition; provided, however that the payment of such expenses incurred by a Director or officer of the Corporation in his or Appellants capacity as a Director or officer (and not in any other capacity in which services was or is rendered by such persons while a Director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of such proceeding, shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such Director or officer, to repay all amounts so advanced if it should be determined ultimately that such Director or officer is not entitled to be indemnified under this section or otherwise.

[D#1, D#5,D#10,D#13, D#19]

## CERTIFICATE OF INCORPORATION OF EMERALD RIDGE SERVICE CORPORATION

FOURTH:  The said Corporation is not a corporation organized for profit, and it shall have no capital stock.  The members of the Corporation <u>shall be the owners of the lands and premises in the Community, but only for so long as they are and remain such owners as set forth hereinafter</u>.......... Subject to the provisions of paragraph FIFTH hereof, at all the meetings of the Corporation the owners of each lot shall be entitled collectively to cast such vote or votes as provided for in the By-Laws, which vote or votes may be cast in person or by proxy.

SIXTH:  At the first annual meeting of members of which such members are entitled to elect the Board of Directors, and at each regular annual meeting thereafter, the members of the Corporation shall establish the amount of annual assessment for the coming year, and the Board of Directors shall thereon promptly levy such assessment.

TENTH:  A Director of the Corporation shall not be personally liable to the Corporation or its members for monetary damages for breach of fiduciary duty as a Director except for liability (i) for any breach of the Director's duty of loyalty to the Corporation or its members, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the Director derived an improper personal benefit.

[D#1, D#5,D#10,D#13, D#19]

## LETTER SENT DUE TO APPELLEES ILLEGAL MEETING

.........

......I have to wonder how intelligent you really are, especially trying to take on 138 of your closest friends and one time neighbors........

Now do I really believe that if you win a settlement you are going to walk around and share this with all of your so-called neighbors? Do you really consider us neighbors? Do you thing we consider you a neighbor?........Is it really necessary for you to send your lesbian friend to speak for you?..... I guess your husband doesn't have the balls to speak for himself.....I'm sure he doesn't have a voice at home living with Miss Domineering so why should I expect anything less at the meetings.......

I also find Don & Ed to very informative and appreciate the time they take to attend our meetings. "In their position I'm sure they can't afford to lie to us, I think they've been very straightforward with us." I'm sure you didn't like the "percentage of winning" offered by Ed nor did you like the clapping and hollering from us in the audience. On by the way, a bunch of us are getting together and bringing our own video cameras to the next meeting, we need to document all of this for our future countersuit.

"It's obvious you no longer like it here, so please do us all a favor and MOVE OUT! You are no longer welcome anyway."

"Good luck! I hope this makes you happy, have a happy life, wherever it may take you, just hopefully not in Emerald Ridge and preferably far from Bear."

[D#1, D#5,D#10,D#13, D#19]

To:     cathy.brooks.mccollum@effem.com, ………..
From:   Visvarr@cs.com
07/27/2003 04:57p.m.

2    What process or guideline gave one board member the right to contact the lawyer, at the expense of the community, on this question without first approaching the other board members? Is this policy? If so, it shows lack of financial responsibility.

5.   I suggest that the entire board step down, reinstating the previous board until a fair solution can be attained, that satisfies the guidelines and is fair to all involved, and *"I start this process by removing myself from a board that does not legally exist."*

Ruth

[D#1, D#5,D#10,D#13, D#19]

**CONDOMINUM ASSOCIATION POLICY**

**STATE FARM INSURANCE**

**STATE FARM FIRE AND CASUALITY COMPANY**
**STATE FARM GENERAL INSURANCE COMPANY**
**HOME OFFICE: BLOOMINGTON, ILLINOIS**

**DECLARATONS PAGE**
**STATE FARM FIRE AND CASUALTY COMPANY**
**ONE STATE FARM DRIVE**
**FREDERICK, MD 21709-1000**
**A STOCK COMPANY WITH HOME OFFICES IN BLOOMINGTON, ILLINOIS**

EMERALD RIDGE SERVICE CORP.
P.O. BOX 281
BEAR, DE 19701-0281

SECTION II COMPREHENSIVE BUSINESS LIABILITY [Exhibit I Supplied With Appellants Brief, page 18-19,22,24]
We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury.....
2. to advertising injury caused by an occurrence committed in coverage territory during the policy period. The occurrence must be committed in the course of advertising your goods, products or services.

SUPPLEMENTARY PAYMENTS
In addition to the Limit of insurance, we will pay, with respect to any claims or suit we defend:
4. all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings, up to $100 a day because of time off from work.
5. all costs taxed against the insured in the suit;

BUSINESS LIABILITY EXCLUSIONS
Under Coverage L, this insurance does not apply:
16.    to personal injury or advertising injury:
a. rising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity:
b. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
c. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or.....

SECTION II OPTIONAL COVERAGE
Optional Coverage
The following Optional Coverage is subject to all terms and conditions applicable to Section II of this policy, except as otherwise provided for herein.
This Optional Coverage applies only as indicated in the Declarations.
OPTION DO – Directors and Officers Liability
1. We will pay those sums that the insured becomes legally obligated to pay as damages, because of "wrongful acts" committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association.
2. This optional covers does not apply to:
a. any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts;
g. violation of any federal or state civil rights law or local ordinance, including but not limited to discrimination on account of race, religion, sex or age; or....

15a

3. When used in the provisions of this Option DO, the unqualified word insured means only the following:

   a. any of your directors or officers, collectively and individually, which form your administrative body provided that each individual:

      (1) is **duly elected** by the unit-owners to serve on the managing body of the Condominium/Association; and

      (2) acts within the scope of their duties on your behalf;

   b. any of your members, but only with respect to ther liability for your activities or activities they perform on your behalf as a member of a committee appointed by the administrative or managing body of the Condominium/Association;

4. When used in the provisions of this Option DO:

   a. "wrongful acts" means any negligent acts, errors, omissions or breach of duty directly related to the operations of the Condominium/Association;

   b. "occurrence" means a "wrongful act", including any conduct related to any of these, during the policy period, which results in a claim made in writing or suit filed no later than one year from the end of the policy period.

SECTION II DESIGNATION OF INSURED

WHO IS AN INSURED

1. If you are designated in the Declarations as:

   c. an organization other than a partnership or joint venture, you are an insured. Your executive officers, directors and trustees are insureds but only with respect to their duties as your officers, directors or trustees. Your stockholders are also insureds but only with respect to heir liability as stockholders.

**[D#1, D#5,D#10,D#13, D#19]**

From:         Don Gouge (mailto:dongouge@magpage.com)
Sent:         Wednesday, March 31, 2004 5:26 PM
To:           ...........................
Subject:      RE: ERSC

...., I had a fairly long discussion today with Ed Kafader, the State Farm attorney.

I am leaving soon for a short vacation, returning to the office next Wednesday.

I think that it is important for me to meet with the Board, such as it is, ASAP. You can certainly pass this email onto the Board members.

The short answer is that "new elections for an entirely new Board must be held. In any event I will be available to discuss upon my return.

c.            ................

**[D#1, D#5,D#10,D#13, D#19]**

From:      "Don Gouge",dongouge@magpage.com>
To:        mccollumc1@Comcast.net; Shareef727@aol.com; jmello1@ix.netcom.com;
Rbrevett@comcast.net.
Sent:      Monday, February 02, 2004 2:51 PM
Subject:   Boards Decision

    I do believe that the issues can and should be resolved.  The easy method is for new elections for the entire Board and then revise the by-laws to address the concerns that have been raised.

[D#1, D#5,D#10,D#13, D#19]

### BOARD MEETING MINUTES – 8/13/2003 – WEDNESDAY

- Discussed next Board Meeting will be on Thursday, September 4, 2003 at the Bear Library.
- Discussed Architectural Guidelines and took a vote to have the Corporation decide if they would like to change how the Architectural committee is run.  The vote was that we will have the Corporation rule on new terms for the ARC
- We also took a vote on incorporating the Open Space sections into the overall community guidelines, thus adding tables, chairs and grills cannot be placed in front of ones home.
- Voted on the positions each Board member will hold.  Ken Shareef will hold the position of President, Maudy Melville will hold the position of First Vice President, Renford Brevett will hold position of Second Vice President, and Cathy D. Brooks-McCollum will hold the position of Secretary and Treasurer.
- The next Board meeting will be held at Renford's home on Wednesday, October 15, 2003.

Discussed each person putting together a BIO for next board meeting and sending to all members via e-mail.

[D#1, D#5,D#10,D#13, D#19]

Emerald Ridge Service Corporation

December 29, 2003

Minutes for ERSC emergency Board Meeting
Attendees:
Ken Shareef -- President
Maudy Melville 1st Vice President
Renford Brevett 2nd Vice-President

Meeting was called to order at 7:40p.m.
The issue of the letter dated 12/26/03 and distributed to the community by Treasurer & Secretary Cathy D. Brooks-McCollum was brought to the floor for discussion. In said letter, actions by Cathy Brooks-McCollum over the past several weeks have misrepresented the board, financially obligated the board and the community without consent of other board members, and Cathy Brooks-McCollum has acted outside of current board responsibilities without knowledge and/or consent of current board members. Motion was made and seconded to remove Cathy D. Brooks-McCollum fro Appellants current positions of Secretary & Treasurer.

..................

[D#1, D#5,D#10,D#13, D#19]

**State Farm Insurance Companies**

March 11, 2004

MS. CATHY BROOKS-MCCOLLUM
115 EMERALD RIDGE DRIVE
BEAR, DE 19701

RE:    Claim Number: 08-R337-251
       Insured:      Emerald Ridge Service Corporation

Dear Ms. Brooks-McCollum

This will acknowledge your letter to our Corporate headquarters dated March 1, 2004.

It is my understanding you are a Appellants in a lawsuit against our named insured, Emerald Ridge. We are providing a defense to the board members under the Director and Officer's coverage of the corporation's policy. We have tendered this defense in response to your lawsuit filed in Chancery Court. Attorney Ed Kafader has been in contact with you regarding this lawsuit.

We have no contractual obligation to provide you with counsel since you are the Appellants in this action. State Farm is honoring its contractual obligations under the contract and we have instructed Mr. Kafader to proceed with appropriate discover. We will also defend any lawsuit filed against this Company as we believe there is no viable cause of action.

Should you have any questions, please contact Attorney Ed Kafader or Team Manager Ed Dillon at (302) 995-0399

Sincerely,

/s/Larry L. Wilson
State Farm Fire and Casualty Company

**[D#1, D#5,D#10,D#13, D#19]**

To:     dongouge@magpage.com
From:  Valerie.Longhurst",Valerie.Longhurst@Comcast.net
       08/04/2003 11/14 A.M.
cc:     "Cathy McCollum" cathy.brooks.mccollum@effem.com
Subject: RE: ERSC
Don,
No problem with the delay.  Since I have voluntarily removed my name off the board and decided not to run for re-elections the new contact you should send the letter to is Cathy McCollum.

[D#1, D#5,D#10,D#13, D#19]

Ferry, Joseph & Pearce, P.A.
Attorneys At Law
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555


March 5, 2004


Ms. Cathy Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
RE:     Brooks-McCollum v. Emerald Ridge Corporation et al
Dear Ms. Brooks-McCollum:
This letter is a follow up to our phone conversation of March 3, 2004. In that phone conversation, you and I discussed the deletions that you have requested from postings on the Corporation's website. I indicated to you that the Board was willing to delete a reference from the minutes of the January 15, 2004 general meeting in which it was indicated that the Power Wash was improperly bid. In particular, I informed you that the Board was willing to delete the words "that was improperly bided". I informed you that the Board was not willing to make other changes to the website. You informed me that you were not included to accept the offer to settle this matter for $1,150.


Sincerely,


/s/Edward F. Kafader
EFK/lma

                              cc:     Glenna Molster State Farm Ins.

23a

[D#1, D#5,D#10,D#13, D#19]

### EMERALD RIDGE MAINTENANCE DECLARATIONS

(b).....All such assessments must be fixed at a uniform rate for all lots......The assessments levied by the maintenance Corporation shall be used exclusively for the purpose of maintaining said Roads and Private Space.

(c).....An annual assessment, if necessary, shall be set by a majority vote of the members who are voting in person or by proxy at the annual meeting, and any special assessments shall be set by a majority vote of the members who are voting in person.......

(j).......the assessment shall bear interest from the date of delinquency at the highest rate of interest then legally permissible to charge individuals for mortgage loans not to exceed twenty percent(20%)

[D#1, D#5,D#10,D#13, D#19]

IN THE COURT OF CHANCERY O FTHE STATE OF DELAWARE IN AND FOR NEW CASTLE
COUNTY

CATHY D. BROOKS-MCCOLLUM
                            No. 147-N

Appellants Below,
    Appellants,
    v.
                            Court Below-Court Of Chancery
EMERALD Ridge              of the State of Delaware,
Service Corporation        in and for New Castle County
Board Of Directors,        C.A. No. 147-N
Kenneth Shareef,
Renford Brevett,
Maudy Melville,
Valerie Longhurst
    Appellees,

REPLY TO APPELLANTS'S RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT AND FOR
JUDGMENT ON THE PLEADINGS

        The Appellee hereby makes the following reply to Appellant's response to Appellee's motion for a
more definite statement, or alternatively, motion for judgment on pleadings. In Appellant's response to
Appellees' motion, Appellants asserted that the March 2, 2004 Board of Directors meeting was not a validly
constituted board of directors of the Corporation. In order to try to clarify the current membership of the board
of directors, the Appellees submit the following:

        In May of 2003, the Board consisted of the following individuals: Valerie Longhurst, Kenneth
Shareef, Terry McCormick, John Garurrello and Thomas Laughery. In June of 2003 elections were held. The
board believed that there were three open slots, which needed to be filled at the time. Kenneth Shareef and
Valerie Longhurst were believed to be holdovers. Therefore, an election to three open slots was held in June
of 2003.

        Four nominees were obtained for the three open slots. Those nominees were Patricia McClurg, Ruth
Visvardis, Cathy Brooks-McCollum and Maudy Melville. The three slots were to be filled by the top three
vote getters. Those top three vote getters were Patricia McClurg, Ruth Visvardis, and Cathy Brooks-
McCollum.

        At the initial meeting in the newly constituted board, Ms. Brooks-McCollum indicated that she had
been in touch with the attorney for the Corporation. She indicated she had been informed by the attorney for
the Corporation that the maximum number of years to which an individual could be elected to the board of
directors was two years. Ms. Brooks-McCollum pointed out that Ms. Longhurst had already served a two-year
term. The by-laws provided for a three-year term only for the selection of the original board members. Upon
further discussion of the positions as members of the board. This left only Kenneth Shareef and Cathy Brooks-
McCollum as members of the Board of directors. Maudy Melville was then contacted by the board and
requested to serve as a third member of the Board.

        Section 4 of the Corporate by-laws provides that in the event a vacancy on the board is created by
reason of death, resignation or otherwise, such vacancies shall be filled for the unexpired term by a majority
vote of the remaining directors, even though less than a quorum. Therefore, Cathy Brooks-McCollum and Mr.
Shareef were empowered to appoint Ms. Melville as a member of the Board. Even without counting Mr.
Shareef as a member of the board, Ms. Brooks-McCollum would have the authority to appoint a new director
to the Board.

        Renford Brevett was next contacted by the Board (now consisting of Mr. Shareef, Ms. Brooks-
McCollum and Ms. Melville) and requested to serve as a Board member. He agreed to do so and his
membership on the Board was approved by those Board members.

        At the December 29, 2003 Board meeting, Ms. Brooks-McCollum was relieved of Appellants duties
as secretary treasurer of the Board, but remained a Board member.

Mr. Shareef tendered his resignation from the Board at a general meeting of the members of the community held on January 15, 2004, on the same date, Ms. Brooks-McCollum submitted Appellants resignation from the Board.

At the meeting of the board of directors held on January 15, 2004, which was held immediately after the general membership meeting, Mark Martell was appointed a member of the board of directors, in place of Kenneth Shareef.

At the March 2, 2004 meeting of the board of directors, Ruth Visvardis was appointed to the Board. Ms. Visvardis was also selected to serve as secretary of the Board. AT the same meeting, Mr. Martell was appointed treasurer of the Board.

Attached hereto as Appendix A is a revised copy of the minutes of the March 2, 2004 board meeting. An earlier copy of the minutes of that meeting was submitted as Appendix E to Appellees' exhibits to Appellee's motion for judgment on the pleadings, and renewal of motion for more definite statement. The only change in these minutes is that Mr. Martell was incorrectly identified as Ken Martell. He is correctly identified as Mark Martell in the revised minutes.

..............

.......It is conceded that Mr. Shareef was not validly a member of the Board because he was not a titled landowner in the community. .........

Date:                          /s/Edward F. Kafader ID#246
                               Edward F. Kafader, Esquire
                               824 Market Street, Suite 904
                               Wilmington, DE  19801
                               (302) 575-1555
                                          Attorney

**[D#1, D#5,D#10,D#13, D#19]**

IN THE COURT OF CHANCERY O FTHE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

CATHY D. BROOKS-MCCOLLUM

No. 147-N

Appellants Below,
   Appellants,
     v.

EMERALD Ridge
Service Corporation
Board Of Directors,
Kenneth Shareef,
Renford Brevett,
Maudy Melville,
Valerie Longhurst
   Appellees,

Court Below-Court Of Chancery
of the State of Delaware,
in and for New Castle County
C.A. No. 147-N

RENEWAL OF MOTION FOR MORE DEFINITE STATEMENT AND MOTION FOR JUDGMENT ON THE PLEADINGS

   1.    STATUS OF CASE
   .........

Attached hereto as Appendix F is a copy of the minutes of a Board meeting held on March 2, 2004, At the meeting, the Board voted to ratify all actions taken by the Board between July 27, 2002 and December 29, 2003......

   7.    BOARD'S RIGHT TO UTILZE CORPORATION'S FUNDS OUTSIDE THE SCOPE OF THE BYLAWS
   .........

Shareef and Longhurst did not read the corporate bylaws, certificate of incorporation or the general corporation of laws of the State of Delaware. It does not appear that this section states any cause of action that could be recognizable by this Court.

.....................
Date:   3/05/04

/s/Edward F. Kafader ID#246
Edward F. Kafader, Esquire
824 Market Street, Suite 904
Wilmington, DE 19801
(302) 575-1555

Attorney for Appellees

27a

**[D#1, D#5,D#10,D#13, D#19]**

Emerald Ridge Service Corporation
P.O. Box 281
Bear, DE  19701

To:     Homeowners
From:   Board of Directors
RE:     Annual Meeting

Attached to this letter you will find an Agenda and Proxy associated with our Annual Meeting to be held at Red Lion Christian Academy in the Multi-Purpose Room from 7:00p.m. to 9:00p.m. on June 30, 2004.

We look forward to seeing you that evening if you can make it, and we hope to provide answers to any and all questions you might have.  **Mr. Ed Kafader** of Ferry, Joseph **(State Farm's Attorney)** will discuss matters as it relates to the lawsuit as it continues to go forward in court. Please note that the annual assessment for the forthcoming 2005 budget cycle has been sent under separate cover, and **the board has reduced the assessment to $75** for the coming financial period.

We will accepting nominations from the floor at this election.  If you would like us to add your name to the list of candidates beforehand, please contact Mark Martell at 834-5595 and we'll update the list accordingly..............

**[D#1, D#5,D#10,D#13, D#19]**

EMERALD RIDGE SERVICES CORPORATION ANNUAL MEETING, JUNE 30, 2004 FROM 7:00-9:00
P.M. Red Lion Christian Academy – Multi-Purpose Room
BALLOT

2004 Election of Officers:

The **entire** Board of Directors has resigned effective **June 30, 2004 at 7:00 p.m.**  Therefore, an entire new Board of Directors must be elected.  The current Board is standing for election.  **No other candidates** have submitted their name for election.

The individuals with the top two votes totals will serve two-year terms, until June 2006.  The individuals with the third and fourth highest vote totals will serve one-year terms and will stand for re-election in June 2005.

The candidates are listed below.  Please place a mark on the ballot for your choices:

1. Renford Brevett
2. Mark Martell
3. Maudy Melville
4. Ruth Visvardis

......................................

[D#1, D#5,D#10,D#13, D#19]

EMERALD RIDGE SERVICE CORPORATION
PLO. BOX 281
BEAR, DE 19701
NOTICE OF RESCHEDULED ANNUAL MEETING AND PROXY

TO:        Homeowners
FROM:      Board of Directors
The annual meeting for the Emerald Ridge Service Corporation has been rescheduled for Wednesday, August
11th, 2004 at 7:00p.m. in the Multi-purpose room at Red Lion Christian Academy, located on Route 71
...............
First let me thank those of you who attended the meeting scheduled for June 30th, and our apologies that it
could not proceed, but corporate guidelines mandate that a quorum must be represented and we came up short.
This will not be a problem with this meeting as enough proxies have been received to proceed with business.
Please plan to attend.

**Ed Kafader of Ferry & Joseph (State Farm Attorney)** will be present to discuss current status and
developments in the lawsuits........

If you are unable to attend the meeting, and have not previously submitted a proxy, or wish to update your
proxy previous to the meeting, you will find a copy attached. Names have been added to the proxy............

**[D#1, D#5,D#10,D#13, D#19]**

EMERALD RIDGE SERVICE CORPORATION
Wednesday 8/11/2004
7:00PM – 9:00PM
Red Lion Christian Academy
Multi-Purpose Room
(Upper School Building adjacent to route 71)
Community Meeting
Agenda
..........
3. Re-certification of Prior Board Activities.........

**[D#1, D#5,D#10,D#13, D#19]**

EMERALD RIDGE SERVICES CORPORATION ANNUAL MEETING, AUGUST 11, 2004 FROM 7:00-9:00 P.M. Red Lion Christian Academy – Multi-Purpose Room
BALLOT

2004 Election of Officers:

      We are electing a new board of directors during the upcoming meeting.  The current board is standing for **re-election** and others have volunteered to run……………….

      The individuals with the top two votes totals will serve two-year terms, until June 2006.  The individuals with the third and fourth highest vote totals will serve one-year terms and will stand for re-election in June 2005.

      The candidates are listed below.  Please place a mark on the ballot for your choices:

1. Renford Brevett
2. Mark Martell
3.     Maudy Melville
4.     Ruth Visvardis
5.     Sue Nixon
6.     Robert Bukowski
7.     Write in
8.     Write in
9.     Write in
…………………………………………………

**[D#1, D#5,D#10,D#13, D#19]**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

CATHY D. BROOKS-MCCOLLUM

Civil Action No. 147-N

Appellants Below,
  Appellants,
  v.

       Court Below-Court Of Chancery
EMERALD RIDGE    of the State of Delaware,
SERVICE CORPORATION  in and for New Castle County
BOARD OF DIRECTORS,  C.A. No. 147-N
KENNETH SHAREEF,
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
  Appellees,

       Chancery Courtroom No. 12C
       New Castle County Courthouse
       Wilmington, Delaware
       Thursday, June 24, 2004
       2:00 p.m.
   BEFORE: HON. DONALD F. PARSONS, JR., Vice Chancellor

HEARING

CHANCERY COURT REPORTERS
500 North King Street – Suite 11400
Wilmington, Delaware 19801-3759
(302) 255-0525
APPEARANCES:

     Cathy D. BROOKS-MCCOLLUM Pro se
     EDWARD F. KAFADER, ESQ.
     Ferry Joseph & Pearce, P.A. for Appellees

[D#1, D#5,D#10,D#13, D#19]

## CERTIFICATE

I, DIANE G, McGRELLIS, Official Reporter for the Court of Chancery of the State of Delaware, do hereby certify that the foregoing pages numbered 3 through 71 contain a true and correct transcription of the proceedings as stenographically reported by me at the hearing in the above cause before the Vice Chancellor of the State of Delaware of the date therein indicated.

IN WITHNESS WHEREOF I have hereunto set my hand at Wilmington, this 13th day of August, 2004.

/s/Diane G. McGrellis
Official Reporter for the Court of Chancery of the State Of
Delaware

CSR 108-PS
Expires Permanent

34a

THE COURT : All right. Now, you have – you filed a motion to dismiss or for a more definite statement. Right?

MR. KAFADER: Right. There has been a response filed—I think actually two responses filed by Ms. Brooks-McCollum.

THE COURT: Now are you filing a reply?

Mr. KAFADER: No. I'm not going to file anything further, Your Honor. I think maybe the thing to do is for the Court to give some consideration to the motion and Ms. Brooks-McCollum's response to the motion. And that may whittle down some of the issues that the Court is required to deal with here.

THE COURT: Right.

MR. KAFADER: I think that the thing that Ms. Brooks-McCollum has pointed out in Appellants pleadings, and pointed out from the beginning, I think, of this case—I'm not sure about that—is that there was an issue about Mr. Shareef's ability to serve on the board.

Ms. Brooks-McCollum pointed out—if not in Appellants first complaint, in one of the amended complaints that she has filed—that Mr. Shareef was not on the deed for the property where he lives. His wife owns the property, only, and there is a requirement in the bylaws that in order to be eligible for service on the board of directors, you have to be a landowner. And I think she correctly points out in Appellants pleadings that he was not—it is correct that he was not a landowner. He was not on the deed for the property when he was serving as director. And that, I think, is one of the most salient points that she has made in Appellants pleadings.

And then we are dealt with—what I think the Court may have to deal with is what impact does the fact that Mr. Shareef met—served on the board of directors have on the actions of the board. There was later—a later meeting of the board. Mr. Shareef resigned in January of this year, and he is off the board. There was a meeting of the board in March by which the board gave its blessing to other actions of the board, validated the actions of the board taken while Mr. Shareef was on the board. I have done some research in the area, and it appears that that can correct any problems where there is an issue about the ability of one member of the board to serve on the board. But that's something I think the Court is going to have to wrestle with.

Go ahead. I'm sorry.

MS. BROOKS-McCOLLUM: That's not my -- the basis of what my complaint was. My initial basis was based on the fact that the members of the board were not going to follow the laws of the general corporation laws or the laws of the corporation itself. So I went to the Court after they refused to pay for power washing services on my behalf that I was asked to do. So I went to the Court to get my money back, so -- for power washing services, as well as to ask the Court to clarify the laws for the corporation, so the corporation would know exactly what laws would have to be followed.

As a result of that, and as a result of me being accused and removed from the board -- I guess the assumption why I was removed from the board was I was trying to get them to follow the laws. I have never spoken on the phone to any of those members. I've never had any communications other than communications I sent to them. They refuse to address any of the items that I wanted to bring up.

So basically, at that point, that's when I did further research and found out there was a lot more things that were not being done properly, and addressed those in the complaint. So the complaint would have -- initially had nothing to do with the fact that Mr. Shareef -- in my research, that's what I found out. Mr. Kafader is stating that they basically validated the actions of his since December of 2003. They cannot do that. Mr. Ken Shareef, even if he were a valid board member, he cannot serve on the board. There was a June 2003 meeting -- I mean election. That June 2003 election, if Mr. Shareef even were valid, he would have had to put his name on the ballot. He did not. He was on the -- he was appointed to the board in 2002, without proper identification to make sure he was allowed to be on the board. 2003, the election came up. He just stayed on, as did the case -- what Ms. Longhurst wanted to do. I do have a letter stating that. I brought to Appellants attention, "You can't stay on. You have to run for office." She got angry and decided not to run for the office. Therefore, all of the persons who were elected to office resigned, and what Mr. Kafader is talking about, about ratifying people, these are all people that were invalid members, appointed after the legal proceeding was filed in the courts.

This is a corporation – the corporation doesn't even know what is going on. They didn't know these people were arbitrarily put on there. We have four appointed persons on the board and one person who resigned as of the January 15th meeting that the community had, who the community thought she was no longer on the board. But she decided now to be on the board, but she never stated that she tendered Appellants resignation. At the meeting, a lot people were like, "She resigned. Why is she still there?" We have people, basically, that decided, "We have all the people," and that, "We are going to appoint them to our board." That goes against all of the laws of Delaware

THE COURT: What we should do is take up the motion to dismiss or for a more definite statement, as the first item. And I will see, with my secretary, if we can get a time for an argument on that, Is it -- I'm assuming there that you would -□ you are available to come to the Court any present your argument Ms. McCollum?

MS. BROOKS-McCollum: I would really prefer Your Honor first decide on the indemnification, so the lawyer that I basically consulted with can handle this, only because, as--

this, basically, whole situation, to me, is like really ridiculous. It began over $185, and adults have taken the position to retaliate instead of try to work out something, like a normal corporation would do. I don't feel I should have to continue to miss moneys from work and time from work. And basically, I've missed extensive hours away from my two little children because of the fact that people who were not even elected -- and I was elected  -- decided to indemnify themselves and not myself.

THE COURT: Okay.  So let's -- as far--, as the motion for indemnification and the motion to dismiss, you are okay to have the Court decide that without any argument, just on the papers that have been submitted?

THE COURT: Okay. How about you, Mr. Kafader?

MR. KAFADER: Well, two things, Your Honor: I didn't know if Your Honor would want to put off -- I suppose Ms. Brooks--McCollum could possibly be entitled to indemnification in one of two ways, but I think the way she is looking for this is indemnification under the general corporation laws.

THE COURT: Right.

MR. KAFADER: I haven't really responded to that motion. I thought maybe Your Honor was going to put that off until some decision was made on the other motion. If Your Honor wants a short response on that, I can file a response, I guess, by the end of the week.

THE COURT: Well, why don't -- I think it would be worthwhile, because if the Court is able to determine, for example, that Ms. McCollum is not entitled to indemnification, then she ought to know that. And if she is entitled to

indemnification, then it sounds as though what she really would prefer is to know that, so that she can get an attorney to try to put together a complaint that would pass muster if this current one does not.

MS. BROOKS-McCOLLUM: Correct.

THE COURT: And I don't mean to suggest that I have decided that issue, whether you are entitled to indemnification or not. I haven't looked at that closely yet. But what we usually do is wait to get the other side's response, and after Mr. Kafader puts in his papers saying what his view is with respect to indemnification, you should feel free to put in anything more that you want to, as what we call a reply, Ms. McCollum. We will wait for about a week.

MS. BROOKS-McCOLLUM: Okay.

THE COURT: -- to see if you have anything that you want to put in. If we don't hear from you in a week, we will figure that it's okay for us to go ahead and decide it. And you know -- but if you want to put something in as far as a reply, you should do that.

MS. BROOKS-McCOLLUM: Okay. Thank you.

MR. KAFADER: Your Honor, there is one other thing that might be helpful. I just remembered this as Ms. Brooks-McCollum was discussing the positions of the various members of the board. There have been several resignations of the board since last June. And maybe it might be helpful for me, as kind of a reply to Appellants earlier filing, which was in response to my motion for more definite statement or for judgment on the pleadings, to just give the Court some kind of an outline of who is currently on the board, and how it is that the board believes the -- the Appellees believe that they are entitled to serve on the board.

THE COURT:  Okay.  I think that would be useful. And of course, that will be served on

you, Ms. McCollum. And again, since it's something that you would not have seen before, if you want to submit anything further about that, you are free to do it.

MS. BROOKS-McCOLLUM: I would want to submit something, but I would not want to answer until Your Honor decides on indemnification, due to the fact that I would want an attorney to decide on those issues, because of the fact that -- I would think that they would be able to better correlate those things with the Court.

THE COURT: Okay. The risk that you run is if I decide that you are not entitled to indemnification, then that means you are – you either have to continue representing yourself or just let the case go. I guess it's -- it's sort of up to you.

MS. BROOKS-McCOLLUM:  I will just continue representing myself.

I will -- I would make a reply to whatever Mr. Kafader responds to, as far as the persons who believe they are entitled to serve on the. board.

THE COURT: Right. Okay.

MS. BROOKS-McCOLLUM: The persons who basically resigned because they didn't want to follow the law.

THE COURT: Right. I agree in terms of the -- as far as if it -- if the Court concludes that you are entitled to indemnification, then it's possible that I would put off for a little while deciding the motion to dismiss, to see if your attorney has anything else to add about that.

THE COURT: Okay. But that sounds like a good plan in terms of your -- if you have something that you think I ought to know about whether these new directors are proper directors or not. After you see what Mr. Kafader says, you might as well go ahead and submit a little reply on that, so I know what your position is.

MS. BROOKS-McCOLLUM: Okay.

THE COURT: All right? Mr. Kafader, what kind of time frame do you think is reasonable for you?

MR. KAFADER: I think by Monday I can submit something to the Court on the issue of indemnification, and also provide the court by Monday I mean next Monday -- with a -- an outline, at least, of who is on first, I suppose. In other words -

THE COURT: Okay. No. I think I understand what you are saying. And Ms. McCollum, what I will figure is I think Thursday of the following week -- the Court is closed on April 9th, I believe. So you ought to plan to -- I want to make sure -_

MS. BROOKS-McCOLLUM: I know originally we said something about six weeks. In fairness, as far as indemnification, even under the general corporation law, if the Court -

THE COURT: We can't hear you. You have to speak up.

MS. BROOKS-McCOLLUM: If the corporation gets -- in accordance with the general corporation law, if the corporation has enough votes to basically say these persons are not entitled to indemnification -- because the word of counsel was that he said they should not proceed with indemnification. So the corporation law should decide it. That would not be enough time for me to go back to the members who basically took the position to say -- basically, half of the corporation said these persons -- they had no idea these persons were on the board, how they got on the board. So that, to me, would help me in my -- in determining indemnification, as well, what the corporation is doing, and what they are doing it based on.

THE COURT: I think that really is - I tend to agree with Mr. Kafader that that is sort of a separate issue. You should continue proceeding with respect to that issue now, but that's like - the first issue is whether you are entitled to indemnification or not. And then if you are entitled to indemnification, then maybe we get into whether the insurance company should be paying it and if they are refusing to pay it.

MS. BROOKS-McCOLLUM: I'm mostly interested in whether or not I'm entitled to it as well as they are entitled to it. It's a two-fold motion. I'm interested in whether I'm entitled to it, and these persons, as well.

THE COURT: Right. Part of the problem here is to -- is for the Court, since you don't have the benefit of an attorney, to make sure that the claims that you are raising are really proper claims to be before the Court at this time. And -- but I will look at all that. But what we are -- what we are pointing toward now is that, Mr. Kafader, you will have your papers in by next Monday. What date is that?

MR. KAFADER: Hold on just a second.

MS. BROOKS-McCOLLUM: April 5th. That's April 5th.

THE COURT: Okay. April 5th. I will give until -- what is Friday of the following week? T guess it's like April 16th? April 16th. So April 16th will be the date. To the extent you have anything more you want to submit, Ms. McCollum, you should have it submitted. You should send it in so we get it by April 16th.

MS. BROOKS-McCOLLUM: Okay.

MR. KAFADER: Your Honor, one other thing that I would ask is that these filings we are going to file be the last things we file with the Court until a decision is made by the Court on the issues the Court is going to decide.

THE COURT: Well, that's -- it's my

In sort of clarifies things a little. We will consider that information that was in your longer response, Ms. McCollum.

MS. BROOKS-McCOLLUM: Okay.

THE COURT: We definitely will consider that. And it is a motion for judgment on the pleadings and/or a motion to dismiss. So for the most part, I will decide it just on what allegations have been made. But if it becomes necessary, for me to resolve it; to look at something that was submitted outside of those pleadings, then in that limited sense it will be changed to a motion for summary judgment. So what you have submitted will be considered.

MS. BROOKS-McCOLLUM: Okay. Thank you.

37a

THE COURT: -All right. Okay. Well, then, we will send out a short order that just indicates these dates of April 5th for Mr. Kafader's answering papers and then April 16th for any replies that are going to be submitted by Ms. McCollum. And then at that point I'm going to treat it as though both sides are willing to have the Court just decide this on the papers that everybody submitted without any oral argument.

If for some reason between now and the 16th somebody changes their mind and wants oral argument, send me a letter saying that you want it. It doesn't mean that I will give oral argument, but at least I'll think about it.

MS. BROOKS-McCOLLUM: Okay.

THE COURT: All right? Thank you.

(Recess at 4:31 p.m.)

[D#1, D#5,D#10,D#13, D#19]
]

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

CATHY D. BROOKS-MCCOLLUM

                   Civil Action No. 147-N

Appellants Below,
     Appellants,
    v.

                   Court Below-Court Of Chancery
EMERALD RIDGE          of the State of Delaware,
SERVICE CORPORATION   in and for New Castle County
BOARD OF DIRECTORS,    C.A. No. 147-N
KENNETH SHAREEF,
RENFORD BREVETT,
MAUDY MELVILLE,
VALERIE LONGHURST
     Appellees,

                   In Chambers
                   New Castle County Courthouse
                   Wilmington, Delaware
                   Monday, March 29, 2004
                   4:00 p.m.
       BEFORE: HON. DONALD F. PARSONS, JR., Vice Chancellor
         TELEPHONE CONFERENCE FOR SCHEDULING

CHANCERY COURT REPORTERS
500 North King Street – Suite 11400
Wilmington, Delaware 19801-3759
(302) 255-0525
APPEARANCES:

             Cathy D. BROOKS-MCCOLLUM Pro se
             EDWARD F. KAFADER, ESQ.
             Ferry Joseph & Pearce, P.A. for Appellees

CERTIFICATE

I, WILLIAM J. DAWSON, Official Reporter for the Court of Chancery of the State of Delaware, do hereby certify that the foregoing pages numbered 3 through 26 contain a true and correct transcription of the proceedings as stenographically reported by me at the hearing in the above cause before the Vice Chancellor of the State of Delaware of the date therein indicated.

IN WITHNESS WHEREOF I have hereunto set my hand at Wilmington, this 11th day of, 2004.

/s//William J. Dawson
Official Reporter for the Court of Chancery of the State Of Delaware

Certification Number : 197-PS
Expiration : Permanent

that's about.

The main -- the facts that I have at this point -- and I've read your papers and I read the papers from the other side -- show me that there's a dispute, and you disagree about how things have been done. And we'll have to go through and see whether each person was properly elected and those kinds of actions were taken. You have an argument that they weren't.

But I think there's also an argument that all those actions were okay under the Delaware corporation law. We'll have to sort them out one after the other. But as of right now, I don't think that it's more likely that your side's going to win on that than the other side. So, I am not entering any kind of status quo order.

You say that the persons are not authorized to hold an election of new officers, especially themselves; they're not authorized to collect corporate funds. Until I rule on the status of the corporation, that's not correct. The corporation is out there. It is operating. These are the persons who are in charge of it. And it will continue to operate that way until some court -- if it ever does, and that may very well be this Court says that that was wrong: Most likely it's not

going -- I've spoken to Judge Johnston. The kind of actions that m'-ht go forward before Appellants are for actions.) Like for liability or things like that, deciding who's in charge of a corporation, that's going to get decided in this Court. And then if you disagree with it -- whatever the decision is -- then you can take that to the Delaware Supreme Court. But the Superior Court would not .-- they won't decide 1.1 that kind of an issue.

MS. BROOKS-McCOLLUM: That's all I was asking in Superior Court is for the damages that they caused me and my family for living in there.

THE COURT: I understand that Judge Johnston has said that she'll sort of put that on

hold until this Court makes its ruling and then you can go back and pursue those -- the tort claims. I think she realizes that you have tort claims that you can go after in that court.

So at this point, as far as the meeting going forward, the Court -- there is no status quo order in place. There hasn't been any evidence presented at this stage that's sufficient to cause the Court to believe that there's a reasonable likelihood of success that the Appellants is going to be able to show that the current board is not authorized to hold an election as it has noticed; and likewise, there has been no showing that the current board of directors were invalidly elected or appointed, or in the same position the Appellants has asserted that they are not properly elected, and the Court will have to hear both sides of that case in a trial at some point. But as of right now, it's not clear that the Appellants would prevail on that argument, and therefore there is no reason to stop the meeting.

In terms of the elected directors. The Court will note that there was – it seems conceded by the Appellees that former director and Appellee Ken Shareef was not a valid director.

Is that right, Mr. Kafader?

MR. KAFADER: That's correct, Your Honor.

THE COURT: However, he resigned from his position as a director on June – January 15th of 2004. There also is no evidence to show that the remaining directors -- at least at this stage, Or that the remaining directors are invalid. The remaining board members were all appointed. The initial appointment was of the Appellee director Mandy Melville. That was made by the Appellants and Appellee Shareef. The bylaws permit the board, by a majority vote, to appoint a director if a position on the board is available due to the resignation of a prior director. The provision does not require a quorum to be present.

MS. BROOKS-McCOLLUM: Can I respond to that?

THE COURT: Yes.

MS. BROOKS-McCOLLUM: The

appointment -- Ken Shareef was the only person that was on the board and myself, not Mandy Melville. At that particular time, Ken Shareef wanted to put some other people on the board. He appointed Renford Brevett and Mandy Melville to the board. So Ken Shareef made those appointments. Mandy Melville was not a part of the appointments made.

THE COURT: You were a member of the board at that time?

MS. BROOKS-MCCOLLUM: Ken Shareef and

this point I won't know who else -- when you say you're suing the Emerald Ridge Service Corporation Board of Directors, if it's not the company -- and I understand you don't mean it to be a company – I don't know who else it is. I'm just going to go forward from today, assuming it isn't anybody else beyond the four people. And if it's only three - the four people you've named are Appellees. No question. If you want any other individuals to be Appellees, then it's important to let the Court know who they are. You don't have to do it this minute. But that's kind of what's going on.

41a

It sounds then like Mr. Kafader is - I mean, his clients -- the four named individual Appellees and Emerald Ridge Service Corporation, and there I'm talking about the people who are controlling it today -- they sort of think they're all on the same side. And I know you disagree. But that's what they thinks So, they don't really have a conflict of interest between them and Mr. Kafader. Consistent with our rules of professional conduct, he can represent the company and these individual Appellees until such time as a conflict of interest arises.

MS. BROOKS-McCOLLUM: The members of the stockholders are members of the corporation. I don't feel Mr. Kafader is working in my best interest as a stockholder.

THE COURT: Right. But as a legal matter, your understanding is incorrect. You are a shareholder. You have certain rights, important rights as a shareholder of a company, one of which is to file a derivative action, which is something that you've done. But the company itself is separate from the shareholders. And when you sue somebody, that's you personally as a shareholder suing. It's not the company.

*At this point the company essentially is siding with -- the people who control the company today are siding with the named individual Appellees, Shareef and so on. And so it's okay under our Delaware laws -- the Delaware rules of professional conduct.*

MS. BROOKS-McCOLLUM: Did you explain that? I'm not understanding that part. If you're saying that those Appellees are the corporation, how are persons that -- Shareef is no longer on the board. Valerie Longhurst was never on the board. There is a conflict with those two at least. They were not board members.

Then overall, in all -- are you saying that no matter who you elect to the board that they now become the corporation, and the other 140 something people in the corporation have no say? Mr. Kafader can go to this meeting, that is curtailing my case -- now it's like get them on my side. They already lied to members of the corporation. They sat there and lied. So, I might as well just go ahead and throw in the towel the way that this is. I may as well let them put dolls on my car.

I feel I'm being raped in this Court. Here I am. Mr. Kafader is advising them to do legal stuff over and over and over. All I'm doing is getting more upset than I was over the weekend for having a doll with the head cut off. I may as well be in Kuwait the way I feel.

THE COURT: Let's talk about the doll with the head cut off, which is a terrible situation. It's a different issue from what we were talking about, but it's front and center and we need to talk about it now. It's a horrible situation that has occurred. And I assume that you reported it to the police and have taken whatever other action you can with respect to that. But for this Court -- for me to be able to do something, I need somethingI need evidence that links one of these four Appellees -- Shareef, Melville, Brevett, Longhurst -- one of those people to doing that, or what you're saying a moment ago that Mr. Kafader is involved in any way in that. I know you may think that,..- Mr. Kafader is a respected member of the bar.

It's completely out of character that he would ever be anywhere near anything like that, and the Court doesn't suspect that.

MS. BROOKS-McCOLLUM: Because he's a respected member of the bar you respect that. Because I'm a respected citizen, you don't respect

copy of the fax of all the information I was asking him to remove, and they said no.

THE COURT: All right.

Now, what I'm telling you is that what you should be doing at this point is, you should go ahead and get your own attorney.

I can't I'm not guaranteeing that at the end of the day there is going to be indemnification. Your attorney can look at that and then this Court, within the not too distant future, will come out with some little written opinion that will say, based on what I know so far, whether any of your claims look like they might qualify for indemnification. But what usually happens is that we really don't know for sure until we get all the way through to the end of the case.

MS. BROOKS-McCOLLUM: Just to have that. That's all the attorney asks for, something from the Court to basically say that -- basically feel that you basically are entitled to

indemnification, to basically take the case where it's only on a certain contingency, which then I have no problem giving the lawyer the contingency to take over these claims. That's why I asked Your Honor to basically decide on indemnification first. You did

say after that the attorney could come in and do an amended complaint to outline each and every issue

THE COURT: All right. Okay. so, I think now I understand better.

I thought the focus was more on the advancement. I understand w at you're saying. That makes sense. So, it's important that we move ahead to the indemnification issue itself and make sure we rule on that.

So, I think what all this boils down to is that, for the cease and desist order that has been requested at this point in the papers that you submitted on the record that's presently before me, I'm denying the cease and desist order. And of course, at some point later in the proceeding you have more concrete evidence, and it looks like that kind of an order is important, then you can bring that.

MS. BROOKS--McCOLLUM: Evidence like my family being threatened again, but without showing who did it?

THE COURT: No. Evidence that links it to one of these parties who's before me. MS. BROOKS-McCOLLUM: I can get threatened every week, but because we don't catch the person we'll have to move.

THE COURT: I am encouraging

Mr. Kafader and his clients to at least do everything that they can not to add to the problem by stirring things up. The difficulty is that undoubtedly you're making a lot of allegations here. You feel very strongly about it. But the more you're accusing people of doing things that would be illegal, that they think are crazy allegations against them, their back is going to get up. It just makes for a very tense situation for everybody involved. That doesn't justify anybody acting outside the law.

And I don't -- I'm saying right here, I don't have any evidence that these individuals did. But in that kind of a context, then it spills over to other people and who knows who hears. what and takes some kind of crazy action.

MS. BROOKS-McCOLLUM: I have one more question on the sections that apply in Chancery Court because you basically said you can issue a cease and desist order. The crimes under there call for felony charges. They basically have different levels of felony charges. That is what I want. I want the

THE COURT: Okay.

But, see, this Court doesn't do any criminal – you can't bring a criminal case into this Court. What you need there is for the attorney --- the police and then the Attorney General's Office to believe that there's sufficient – that there is a crime here, and they either – they institute the criminal proceedings, which are in the Superior Court. The only kind of thing I'm talking about is if there's some sort of a – you need an injunction to tell somebody to stop, you know, putting graffiti on your wall or something like that.

MS. BROOKS-MCCOLLUM: From the Internet violations. The Internet violations, since it falls under Chancery Court, and that they – each one assesses different felony charges if they're convicted of having done those. If you're saying that once Chancery Court rules on if these persons did this, then I go back to the Attorney General's Office on those specific items and say these persons did post this stuff on the website?

THE COURT: What section of the code?

MR. KAFADER: Your Honor, she's

**[D#1, D#5,D#10,D#13, D#19]**

January 23, 2004

Kenneth N. Shareef
Emerald Ridge
1 Winchester Court
Bear, DE  19701

Dear Mr. Shareef:

RE:    Emerald Ridge Service Corp-Account#3049-8073

While we have reviewed documentation submitted by both Ms. Brooks-McCollum and Mr. Shareef, we are not in a position to determine who is authorized to act on the Emerald Ridge Service Corporation's account with Wachovia Securities, nor do we wish to act as a judge or arbitrator in this matter.  We understand that Ms. Brooks-McCollum has filed a civil action in chancery court of New Castle County to have the court determine how the affairs of the corporation should be handled.  We will continue to hold the assets in the account until resolution by the court providing us guidance on who is authorized to act on our account.  If this lawsuit is dismissed without such resolution and the disputing parties can settle their differences, we will need a written opinion of independent counsel for the company advising us what individuals are properly authorized to act prior to accepting any further instructions on the account.  We hope that the interested parties can resolve the issue, either with or without court intervention.  In the meantime, we ask that you not continue to call us or send us further documentation in support of your differing views as we are not willing to substitute our judgment for that of the court.

Sincerely,

/s/Gary L Gittings, CFP
Branch Manager
Managing Director
Private Client Group
cc: Cathy D. Brooks-McCollum

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHY D. BROOKS-MCCOLLUM          :
                                  :
            Plaintiff,            :
                                  :
      v.                          :     Civil Action No. 04-419 JJF
                                  :
STATE FARM INSURANCE COMPANY,     :
                                  :
            Defendant.            :

## O R D E R

WHEREAS, Plaintiff filed a Motion for Indemnification (D.I. 5) asking the Court to order Defendants to "make all payments incurred to date in accordance to the Emerald Ridge Service Bylaws, and in accordance to the [Chancery Court Order] given on June 24, 2004";

WHEREAS, subsequently, Plaintiff filed a Motion To Stay Until Indemnification Is Confirmed Against State Farm Per Chancery Court July 24, 2004, Order Indemnifying Plaintiff (D.I. 10);

WHEREAS, insofar as Plaintiff's Motion for Indemnification petitions the Court to enforce the Chancery Court's June 24, 2004, Order, the Court lacks jurisdiction for such enforcement;

WHEREAS, insofar as Plaintiff's Motion for Indemnification petitions the Court to review the order of the Chancery Court, the Court is estopped from such review because (1) the issue is identical to the issue decided in the Chancery Court; (2) the issue was litigated in the Chancery Court; (3) resolution of the issue was essential to a final judgment in the Chancery Court;

45a

and (4) plaintiff had a full and fair opportunity to litigate the issue in the Chancery Court;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) Plaintiff's Motion for Indemnification (D.I. 5) is **DENIED**;

2) Plaintiff's Motion To Stay Until Indemnification Is Confirmed Against State Farm Per Chancery Court 7/24/04 Order Indemnifying Plaintiff (D.I. 10) is **DENIED** as moot.

March 31, 2005
DATE

UNITED STATES DISTRICT JUDGE

46a

**NOTICE OF APPEAL**
**TO**
**U.S. COURT OF APPEALS. THIRD CIRCUIT**

**U.S. District Court for the District of Delaware**

CIRCUIT COURT
DOCKET NUMBER: _____
(leave blank)

FULL CAPTION IN DISTRICT COURT AS FOLLOWS:

Emerald Ridge Service Corp. &
Cathy Brooks-McCollum

DISTRICT COURT
DOCKET NUMBER: 04-419 (JJF)

v.

State Farm Insurance Co

DISTRICT COURT
JUDGE: Judge Farnan

Notice is hereby given that Emerald Ridge Service Corp & Cathy Brooks-McCollum
(Named Party)

appeals to the United States Court of Appeals for the Third Circuit from [ ] Judgment, [X] Order,

[ ] Other (specify) Appelle State Farm was not and is not being sued in

any state court proceeds and jurisdiction of all items fall under the US Court

entered in this action on 31st day March
(date)

Dated: April 2, 2005

Cathy Brooks-McC
(Counsel for Appellant-Signature)

Cathy Brooks-McCollum
(Name of Counsel - Typed)

Stephen P. Casarino
(Counsel for Appellee)

115 Emerald Ridge Dr.
(Address)

800 North King St., Suite 200
(Address)

Bear, DE 19701
(City, State Zip)

Wilmington DE 19801
(City, State Zip)

(302) 832-2694
(Telephone Number)

(302) 594-4500
(Telephone Number)

**NOTE: USE ADDITIONAL SHEETS if all appellants and/or all counsel for appellees cannot be listed on the Notice of Appeal sheet.**