IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Cathy D. Brooks-McCollum<br>& On behalf of<br>Emerald Ridge Service Corporation Derivative Action<br>As a Director<br>PO Box 12166<br>Wilmington, DE 19850<br>(302) 521-1241<br>**(PLAINTIFF)**<br><br>vs.<br><br>State Farm Insurance Company<br>**(DEFENDANTS)** | CIVIL ACTION NO:   04-419 (JJF)<br><br>**JURY TRIAL REQUESTED**<br><br>FILED<br>JUN - 8 2006<br>BD scanned<br>U.S. DISTRICT COURT<br>DISTRICT OF DELAWARE |

## MOTION TO JOIN ADDITIONAL PARTIES & OR TO STAY THESE PROCEEDINGS PURSUANT Fed.R.Civ.P. Rule 17, 18, and 19

Pursuant to Fed.R.Civ.P. Rule 17, 18, and 19 Plaintiff hereby petitions this court for Joinder of Additional Parties (Kenneth Shareef, Renford Brevett, Maudy Melville, Valerie Longhurst, Ruth Vivardis, Mark Martell, Edward Kafader, Ferry, Joseph & Pearce) to the Complaints before this court, in that this parties jurisdiction lies in this court, and substantial justice will not be provided, should the court allow these proceedings to continue without hearing all issues related to this case, in that Defendants in this case acted/instructed and supported all the crimes committed by themselves and other parties in which the US Court of Appeals eloquently stated in its' Order, that it saw based on the evidence that it saw that there were [who also committed and validated their crimes before via video coverage and confirmed that they were acting on behalf of State Farm and for State Farm] _"quintessential state law causes of action; slander, violations of provisions of Delaware criminal code, questions of corporate governance, and violations of Delaware Code Of Professional Conduct"_.

Pursuant to Fed.R.Civ.P.17, Fed.R.Civ.P.18, Fed.R.Civ.P.19 provide other parties to be joined with another who may have subject matter jurisdiction elsewhere. Pursuant Fed.R.Civ.P.19 in order for there to be Just Adjudication, the court must first rule upon the crimes committed by the parties who acted concurrently with Defendant State Farm, and then there must be a trial on those issues, to have a Jury determine and rule if the claims and crimes committed by them constituted fraud amongst other things. It is clear that according to Fed.R.Civ.P.19 (1)(2)(i) and (ii) would impair, impede, leave Plaintiffs at risk amongst other things.

The Delaware Supreme Court confirmed in Civil Action 396, 2004 as noted in its' Order Appendix 37a Footnote 2 that, _"It appears that at all times relevant, McCollum herself was a member of the board." "Plaintiff herself was a Director at all times relevant"_. In light of this decision and no appeals regarding the high courts decision, there is and can't be a

1

dispute of Plaintiff's having been a Director, when at this point the issues of the other parties have not been ruled upon in any court in accordance to the law. Defendants are of the belief that the only issues before this court are the issue of indemnification, when that is so untrue. In that State Farm funded, had knowledge and instructed these other parties to commit the crimes they committed, this case cannot be disposed of fully upon summary judgment, in that Plaintiffs invoked their rights to have a trial by Jury, and should be indemnified prior to proceeding to trial on the other issues.

Should the US Court Of Appeals For The Third Circuit and/or The United States Supreme Court come back with a ruling based on the issues before it that the State did violate Plaintiffs Rights, and these parties acted on this violation this would not be substantial justice. Should either court return a ruling that the State Court acted in its' individual capacity, as the case law supports, then it supports that the State would not be immune, and is another basis for this complaint. The decision of the US Court of Appeals and the US Supreme Court are imperative regarding this case, along with the US Supreme Courts decision involving the other parties to be joined.

When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judges orders are void, of no legal force or effect. Which would mean that any order this court established as a basis for its' not ruling on Indemnification, would be null and void. The State clearly admitted and stated that it erred in its' decision, and still has failed to correct said error, when all the law is before it. These Defendants failed to correct its' error and hides behind the States protection.

The U.S. Supreme Court, in *Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)* stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

The judge then acts not as a judge, but as a private individual (in his person).

The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958)*.

Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason.

If a judge does not fully comply with the Constitution, then his orders are void, *In re Sawyer, 124 U.S. 200 (1888)*, he/she is without jurisdiction, and he/she has engaged in an act or acts of treason.

2

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)

In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994).

Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

That Court also stated that Section 455(a) "requires a judge to recuse himself in any proceeding in which her impartiality might reasonably be questioned." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). In Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972), the Court stated that "It is important that the litigant not only actually receive justice, but that he believes that he has received justice."

Our Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954). A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice.

"Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself/himself sua sponte under the stated circumstances." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989).

Further, the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language [455(a)] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed." Balistrieri, at 1202.

Should a judge not disqualify himself as required by law, then the judge has given another example of his "appearance of partiality" which further disqualifies the judge. Should another judge not accept the disqualification of the judge, then the second judge has evidenced an "appearance of partiality" and has disqualified himself/herself. None of the orders issued any judge who has been disqualified by law are valid, they are void as a matter of law, and are of no legal force or effect.

Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996)* ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").

Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his/her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity.

Courts have repeatedly ruled that judges have no immunity for their criminal acts. Since both treason and the interference with interstate commerce are criminal acts, no judge has immunity to engage in such acts.

Virtually all courts that have acknowledged the existence of aiding and abetting a fraud state that the following are the elements that must be established by the plaintiff:

    a. There existed an underlying fraud;

    b. The defendant had knowledge of the fraud;

    c. The defendant provided substantial assistance to advance the commission of the fraud.

*See Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir.2000); In re Worldcom, Inc. Secs. Litigation, 382 F.Supp. 2d 549 (S.D.N.Y. 2005); Vtech Holdings, Ltd. V. Pricewaterhouse Coopers, LLP, 348 F.Supp.2d 255 (S.D.N.Y.2004); Tew, 728 F. Supp at 1560; Thornwood, Inc. vs. Jenner & Block, 799 N.E. 2d 756 (Ill.App. 1st 2003).*

    2. To determine whether a duty sufficient to support a negligence claim exists, one begins by determining whether the defendant by its conduct created a foreseeable zone of risk. *See McCain v. Florida Power Corp., 593 So.2d500 (Fla. 1992); Paszamant v. Ret. Accounts, Inc. 776 So. 2d 1049 (Fla. 5th DCA 2001)*. Defendant, "Kafader" knew that their was a foreseeable risk, when he went before the Corporation on numerous occasions, informing the Corporation (while being videotaped) that he was the Corporations Attorney, other Defendants Attorney and State Farms attorney (Defendants client and financier), when at all times the claims against all other parties were on behalf of the Corporation, and Plaintiff personally for the damages caused. The US Court Of Appeals clearly outlined the correct caption in the case before it as Cathy Brooks-McCollum and on Behalf Of Emerald Ridge Service Corporation (Appellants) vs. Shareef et. al, as docketed in the United States District Court, as well as the case in the United States District Court is captioned as Cathy Brooks-McCollum and on Behalf Of Emerald Ridge Service Corporation (Appellants) vs. Shareef et. al. Still Defendant Kafader, as well as Corporate Counsel Donald Gouge informed the Corporation that they were being sued, and not the parties suing. Plaintiffs clearly outlined the crimes and gave supporting documentation in their Complaint, and Appendices filed in this court, which also show Defendant "Kafader" informing the Corporation they can countersue (when this would have been a suit against themselves). Mr. "Kafader" gave his blessings (supported through court documents), advising his clients to

4

commit and ratify crimes they committed, in a further attempt to help his client State Farm Insurance Company. Defendant "Kafader" tried invoking a settlement with terms untrue and false, in another attempt to defraud the Corporation, trying to lead them to believe the court cases were against them.

3. In *Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057 (2d Cir. 1977)*, this case is borne out of the same crimes committed in this case by Defendants and their attorneys, however the exception here is that the Attorney's and the Insurance Company who they represented stood to gain substantially by becoming involved in the "squeeze out" and participated from beginning to the end. Defendant, "Kafader" masterminded the effort and was instrumental in the implementation from beginning to end, where he also solicited the aid and help of the Corporations counsel, "Donald Gouge" to carry out his fraud and scheme to insure that his clients State Farm Insurance Company would not be responsible for the fraud and deceit he was hired to bring upon the Corporation and Plaintiffs, which resulted in threats against Plaintiffs, and vandalism to Plaintiffs property. Corporate Counsel gave to the Corporation a written statement that he could not help either party, since they all were Directors, and he was the Corporations attorney and stated, "that any assistance would be a conflict of interest", however when his friend "Kafader" decided to break the law, he willingly and knowingly assisted him and aided him in the fraud created and continued by all Defendants, therefore since written statements and video tapes are available showing and confirming that these parties knew they were breaking the law and continued their actions knowing so, they can't now claim they should be excused from prosecution. As a result of these persons actions State Farm is now in control of the Emerald Ridge Corporations finances, and their faith regarding escalating costs against the Corporations Insurance policy and bank accounts, with the Corporation never having been fully advised of the damage and consequences, by parties who would not benefit from the deceit. Numerous residents have elected to move from a Corporation, which invokes their own laws, where people take over without penalty.

4. The Model Rules Of Professional Conduct clearly mandates that a lawyer cannot represent a client whose business interests conflict with a lawyer's own interests in the absence of client consent after full disclosure. The burden of proof in such situation is heavily weighted against the attorney. "[A] lawyer must refrain from entering into the transaction unless his client has consented after full disclosure by the lawyer." Id. "Full disclosure" not only means disclosure of the nature of the transaction, but it also means explaining to the client why he or she would benefit from independent counsel and insisting independent counsel be secured. Plaintiffs cannot believe that Defendant "Kafader" or "Ferry, Joseph and Pearce informed other defendants of their right and need to obtain counsel independent from State Farm who was also being sued by the Corporation and of whom he had a vested interest to protect from liability, and surely the Corporation itself was never given full disclosure by either party. Not only did Defendant "Kafader", Ferry, Joseph and Pearce neglect to inform other Defendants in this case that they should seek independent counsel, they also joined forces with Corporate counsel to cover up

5

all defendants acts from the Corporation, never giving full disclosure and explaining it to the Corporation as the law requires. Instead all Defendants and Corporate Counsel informed the Corporation that a win for the Defendants would be a win for them, while exhausting the Corporations Insurance Policy, using the Corporations banking funds for crimes being covered up, all to aide and help State Farm Insurance Company and themselves.

      These Defendant lawyers advised their clients (on behalf of Defendants State Farm) to revise all of the corporations laws which now allows these defendants if not challenged the opportunity to assess Defendant legal fees against the Corporation (since State Farm could now invoke not paying them-knowing they were never valid Directors), as well as only have Defendants vote on corporate issues and to incorporate these laws as part of the Corporations Bylaws and Articles of Incorporation, where neither the Defendants nor Corporate Counsel fully advised the Corporation of the damage of such a vote and they now have advised the Corporation that they have incorporated their new laws into the Bylaws. When the Defendants could not afford their legal fees the defendant attorneys provided the defendants (who admitted via court records that they were not validly elected Directors), access to the Corporations Insurance policy in order to cover up their other clients State Farms errors, as well as advised other defendants not to pay the Corporations counsel unless he went along with their scheme of fraud. (Corporate Counsel wrote documented letters himself as to the invalidity of these Defendants stating that they all should step down, and he himself had the opportunity to side with law or his friend, where he chose the latter and stated so by way of written correspondence, "that he was helping his friend Kafader") Prior to Corporate Counsel or Defendant Counsels advising the other defendants to seek independent counsel, other then counsel hired by State Farm who had a vested interest in hiring and paying for defendant Kafader and his firm, these parties failed to do so, thus violating further the Rules Of Professional Conduct, which led to further crimes as outlined. All of these Defendants submitted documentation to the Corporation, which are before this court stating that they were State Farms Attorney, (they never presented to the Corporation that Defendant Kafader, Ferry, Joseph and Pearce claiming also to represent them was against the law, but claimed Kafader was acting on their behalf, with Corporate counsel by his side not advising the Corporation of anything, however Gouge continued to collect and extort from the Corporations funds for ill advising or better yet lack of advising). Defendants' submissions to the Corporation clearly show a scheme to defraud, because a Corporation suing a party (whether Derivatively or not) cannot be represented by a party admitting and claiming to be the attorney for a Corporation being sued by the Corporation itself. _Petit-Clair v. Nelson, 782 A.2d 960 (N.J. Super. Ct. App.Div. 2001)_ clearly supports this to be a violation of the Rules of Conduct and other claims setforth within the Complaint filed as well as providing a claim of TORT and FRAUD. These defendants cannot argue their crimes are protected by Attorney/Client Privilege, per _United States v. Reeder, 70F.3d 93.106 (1st Cir. 1999)_ (citations and internal quotation marks omitted), petition for cert. Filed, 68 U.S.L.W. 3079 (U.S. July 9, 1999) (no. 999-79), they continued to give advice in addition to aiding and

abetting for the commission of continuing fraud. One can put on a defense for their clients, but must do so without breaking the law themselves, and advising and commissioning one to break the law as an attempt to protect another client (State Farm Insurance Company).

*In Blake v. Dierdorff, 856 F.2d 1365 (9th Cir. 1988)* the ninth circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its' lawyers. In this case one court already stated that there was enough evidence to allow the charges outlined. *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig., MDL No. 834 (D.Ariz.)* a jury rendered verdicts of more then $1 billion against Keating and others. Other courts have found that, under the Reform Act, plaintiffs can still create a strong inference of fraud by pleading motive and opportunity. *See, e.g., Press v. Chemical Invest. Servs. Corp., 166 F.3d 529 (2d Cir. 1999)*. Press appears to resolve the issue for the Second Circuit on the side of sufficiency of motive and opportunity pleading. *See also Marksman Partners, L.P. v. Chantall Pharm., Corp., 927 F. Supp. 1297 (C.D. Cal. 1996)* It is clear that these Defendants had the greatest motive and opportunity of all, and that was to insure they not have to pay valid claims to the Corporation, and a validly elected Director. The Second Circuit held that "strong inference of fraudulent intent" can be established by alleging facts to show either that the defendant had the motive and opportunity to commit fraud or which constituted strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)*. The Ninth Circuit interpreted FRCP 9(b) only to require that plaintiffs allege scienter generally. *In re GlenFed Inc., Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1995)*.

The US Court Of Appeals for the Third Circuit has already established that there are valid claims for a trial to proceed based on the evidence presented before it. This Motion and any others are to ensure all issues are raised for appeal purposes. Should Defendants elect an option that this court lacks subject matter jurisdiction, when claims are clearly evident, Plaintiff respectfully, asks the court to rule upon subject matter jurisdiction at this time, where Defendants can then be joined on the State pleadings if necessary after and or during any appeals.

Whereby, Plaintiff respectfully asks that this court allow joinder of all parties who committed the crimes along with these Defendants, instruct Defendants to comply with discovery efforts it wanted, and if the court refuses to allow for Joinder then these proceedings should be Stayed in accordance to Fed.R.Civ.P. Rule 17, 18, and 19 as not to disallow Plaintiffs from receiving substantial justice prior to all issues surrounding this case being ruled upon and tried against the parties who acted along with these Defendants. Furthermore in Chancery Court Proceedings the court stated along with The Delaware Supreme Court "that Plaintiff was an acting Director, but just not entitled to Advancement of Funds". However since part of the courts ruling went against Federal law surrounding who the Directive Suit belongs to, by stating, that the meaning of a Derivative Suit was that, *"it belongs to the individuals personally, itself and not the Corporation"*, which goes against all the

US Courts indicated as being Derivative. Should this court allow these proceedings to proceeding prior to a trial for the co-conspirators being had to determine the extent of these Defendants involvement it would be placing a heavy burden on a Corporation, who was given false information in an attempt to allow other parties to illegally utilize the Corporations' policy and limit these Defendants financial liability, of which all financial liability would then fall back on a Corporation already injured by these Defendants negligence and the extent they would go to, in order to protect not paying out valid claims submitted before them. On behalf of Defendant State Farm and the crimes other parties committed along with them who were being mislead by another of Defendant State Farm's attorneys, in an attempt to protect Defendant State Farm, and the other parties lack of experience and the law, they place and continue to place the Corporation in a bad financial position, which could be potentially crippling, since the lawyers' involved had a conflict of interest, and failed to properly inform the Corporation. These issues and all other issues raised before the court clearly support this Motion pursuant Fed.R.Civ.P. Rule 17, 18, and 19, where the other parties should be joined along with this party who's jurisdiction lies in this court, and made accountable for their actions and the harm they have caused the Corporation, to protect a party who has nobody's interest in mind, except their very own. It is clear that these Defendants' feel that a financial responsibility that belongs to them should fall on the Federal Government and others, although a valid Insurance Policy exists to support the claims presented before this court, and there is an undertaking given and supported by the Delaware Supreme Court, _"that Plaintiff was a validly elected Director's at all time"_. At know time has there been a ruling on the individuals who these Defendants stated in supplying several courts with fraudulent documents, and statements. Once the Delaware Supreme Court made its' ruling the policy holder should have then ensured that funds exausted were paid to the Corporation, and the only confirmed validly elected Director, and what these Defendants should have done, is to petition this court to rule on the validity of the parties, they accepted as Directors on word. Any person in the country could have submitted a claim before these Defendant's against the Corporations' policy, and these Defendants would have paid it. You ask how Plaintiff knows this, and the short answer would be that these Defendants did not even require a Policy be presented, because the original policy was in the possession of the only valid Director at the time, and that would be Plaintiff, along with Bank Records, which were fraudulently altered and moved, without authorization. While the other parties may not be smart enough to understand that these Defendants care nothing about them or the Corporation, Plaintiff did everything the law requires to protect it, even to the extent to be forced from Plaintiffs' home in order to protect her family, rather then break the law.

Submitted,

*[signature]*

Cathy D. Brooks-McCollum
PO Box 12166
Wilmington, DE 19850
June 6, 2006

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Cathy D. Brooks-McCollum<br>& On behalf of<br>Emerald Ridge Service Corporation Derivative Action<br>As a Director<br>115 Emerald Ridge Drive<br>Bear, DE 19701<br>(302) 832-2694<br>**(PLAINTIFF)** | CIVIL ACTION NO:   04-419 (JJF)<br><br>**JURY TRIAL REQUESTED** |
| vs. | |
| State Farm Insurance Company<br>**(DEFENDANTS)** | |

**PROOF OF SERVICE**

I Cathy D. Brooks-McCollum hereby certify that on the 7th day of June 2006, I will and have caused to be served a true and correct copy of the foregoing two (2) Motions regular postage mail, postage prepaid and facsimile upon defendants:

Casarino, Christman & Shalk
Stephen P. Casarino
800 North King St, Suite 200
P.O. Box 1276
Wilmington, DE 19899
(302) 594-4500
(302) 594-4509 Fax

_____
Cathy D. Brooks-McCollum (Pro Se)
PO Box 12166
Wilmington, DE 19850
(302) 521-1241