IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHY D. BROOKS-MCCOLLUM,          :
                                   :
          Plaintiff,               :
                                   :
     v.                            : Civil Action No. 04-419 JJF
                                   :
STATE FARM INS. CO.,               :
                                   :
          Defendant.               :

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff's Motion To Rule If There Is A Valid Settlement Agreement (D.I. 79) and, if so, whether Defendant violated that agreement.  For the reasons discussed, the Court will grant the Motion to the extent it requests the Court's ruling.  However, the Court concludes that there is no valid settlement agreement between Plaintiff and Defendant State Farm Insurance Company ("State Farm").[1]

By her Motion, Plaintiff refers to two separate series of settlement discussions and contends that a valid settlement had been reached.  In response to the Motion, the Defendant contends that no settlement was reached between the parties.  (D.I. 80).

---

[1] By her Motion, Plaintiff contends that she has not been provided any discovery and requests that the Court "rule upon defendants providing Plaintiff with the discovery in these proceedings." (D.I. 79).  The Court will deny the Motion to the extent it requests the Court to rule on this matter and will entertain renewed arguments regarding discovery in the context of a motion to compel if the parties are unable to resolve the issue outside of the courtroom in accordance with Del. Local Rule 7.1.1.

The first series of settlement discussions between Plaintiff and Mr. Edward Kafader occurred in the fall of 2005.[2]  On November 18, 2005, Plaintiff submitted to the Court the parties' communications regarding negotiation of settlement terms.  (D.I. 55).  Plaintiff included a letter sent to her from Mr. Kafader dated November 17, 2005, spelling out specific terms of the proposed agreement.  (D.I. 55-2).  In the letter, there is reference to a phone conversation between Plaintiff and Mr. Kafader during which State Farm agreed to pay Plaintiff $21,038.77 in return for Plaintiff's agreement to dismiss with prejudice all cases that Plaintiff had filed against State Farm, its related companies, and current and former members of the Emerald Ridge Service Corporation.  Plaintiff responded to Mr. Kafader's letter by e-mail, advising him that she would be sending a letter to the Court "asking for a Settlement Conference to iron out our differences should I not hear from Mr. Kafader in an attempt to amicably resolve them between the parties . . .. " (D.I. 55-2).  Plaintiff's e-mail did not state the differences to which Plaintiff was referring.  By letter to the Court dated November 17, 2005, Plaintiff disagreed with the last paragraph in Mr. Kafader's letter which reads:

---

[2] Plaintiff identifies Mr. Kafader as "State Farm's attorney." Stephen P. Casarino, Esquire, is the counsel of record for Defendant State Farm in this litigation.  The Court understands that Mr. Kafader is an attorney employed at the firm of Ferry, Joseph & Pearce, and represents State Farm in other actions.  Mr. Casarino has not been a party to the settlement discussions with Plaintiff, who is appearing pro se.  (See D.I. 80).

> In the event that there are outstanding
> filing fees or court costs which are still
> owing to any of the courts in these cases,
> you [Plaintiff] alone will be responsible for
> the payment of those costs.  Neither State
> Farm nor its insureds will be responsible for
> payment of any costs, other than the check in
> the amount of $21,038.77, which I will
> forward to you upon receipt of executed
> stipulations of dismissal and release.

(D.I. 55).  Plaintiff stated that, "[State Farm and I] clearly discussed that State Farm as part of any settlement would pay for all costs. . ." and further, "if there are costs not known to myself, State Farm, or any other parties, I will not agree to be responsible for them." (D.I. 55).  Plaintiff specifically requested that the Court "outline for all parties what you deem costs for the proceedings  . . .. " (D.I. 55).

By letter to the Court dated November 30, 2005, Plaintiff again requested that the Court clarify the terms of the settlement agreement.  (D.I. 57).  Plaintiff attached to the letter a proposed unsigned "Settlement and Release." (D.I. 57-3).  Thereafter, Plaintiff filed a number of motions, including a Motion To Renew Summary Judgment (D.I. 58, 63) which the Court denied by Memorandum Order on April 12, 2006.[3]  (D.I. 68).

_____

[3] By her Motion (D.I. 79), Plaintiff also asks the Court to rule on the summary judgment motion filed in December 2006.  Upon review of the docket, the Court understands that there are currently no pending summary judgment motions and no summary judgment motions filed in December 2006.  Plaintiff's Renewed Motion For Summary Judgment was filed on December 12, 2005 (D.I. 63) and denied by the Court's April 12, 2006 Memorandum Order (D.I. 68).

The second series of settlement negotiations took place as a result of discussions which occurred between the Plaintiff and Mr. Casarino at the Court's status conference held on May 10, 2007. By her Motion, Plaintiff recalls that, at the status conference, she stated that she would only accept a renewed offer of settlement from Mr. Kafader in accordance with the terms stated in the "letter originally sent by Mr. Kafader to Plaintiff's attention."[4] (D.I. 79). Plaintiff further states that, "Defendants were not willing to adhere to the original settlement terms as Plaintiff agreed to in open court." (D.I. 79).

In order to determine whether a valid settlement agreement exists, the Court must determine whether the settlement agreement at issue is an enforceable contract under Delaware law. Under Delaware law, "[a] contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound to their agreement on all essential terms." Telephone & Data Sys., Inc. v. Eastex Cellular L.P., No. 12888, 1993 Del. Ch. LEXIS 182 at *35 (Del. Ch. Aug. 27, 1993). The party seeking to prove the existence of the settlement agreement must do so by a preponderance of the evidence. See Heiman Aber & Goldlust v. Ingram, No. 96C-05-047, 1998 Del. Super. LEXIS 251 at *4 (Del. Super. May 14, 1998).

---

[4] The Court understands Plaintiff to be referring to the November 2005 letter. (D.I. 55-2).

After considering the parties' communications and the
surrounding circumstances, the Court concludes that there is no
valid settlement agreement.  Assuming, for purposes of the
present motion, that Mr. Kafader's November 17, 2005, letter is
an offer of settlement, Plaintiff must have indicated her
acceptance, or intent to be bound, in order to effectuate a
binding agreement.  It is clear from Plaintiff's e-mail in
response to Mr. Kafader's letter that Plaintiff believed the
terms of the settlement agreement to be unacceptable or at least
still under negotiation.  Specifically, Plaintiff expressed her
view that the issue of court costs and attorneys' fees was still
in dispute and requested the Court's assistance with this aspect
of the negotiations.  Additionally, Mr. Kafader's letter
indicated that State Farm's payment to Plaintiff was contingent
on Plaintiff dismissing all pending litigation against State Farm
and other related parties.  Thus, the Court concludes that, after
considering the circumstances related by the parties, a
reasonable person could not conclude that Plaintiff manifested
her assent to the offer of settlement or that the parties
intended to be bound by the terms of Mr. Kafader's November 17
letter.  Rather, the Court concludes that the letter was evidence
of the parties' preliminary settlement negotiations.
Additionally, the Court concludes that a reasonable person could
not conclude that the parties intended to be bound to any

agreement regarding settlement based on the parties' negotiations following the Court's May 2007 status conference. Therefore, the Court concludes that there is no valid settlement agreement between the parties.

**ORDER**

NOW THEREFORE, IT IS HEREBY ORDERED that:

1)    Plaintiff's Motion To Rule If There Is A Valid Settlement Agreement (D.I. 79) is **GRANTED** to the extent it requests the Court's ruling, and, in accordance with the Memorandum, the Court concludes that there is no valid settlement agreement;

2)    Plaintiff's Motion (D.I. 79) is **DENIED** to the extent it requests the Court rule on discovery matters and summary judgment.

July 10, 2007

_____
UNITED STATES DISTRICT JUDGE