# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

Cathy D. Brooks-McCollum
& On behalf of
Emerald Ridge Service Corporation Derivative Action
As a Director
PO Box 12166
Wilmington, DE 19850
(302) 521-1241
**(PLAINTIFF)**

**CIVIL ACTION NO: 04-419 (JJF)**

**JURY TRIAL REQUESTED**

vs.

State Farm Insurance Company
**(DEFENDANTS)**

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that the undersigned will take the deposition of Ed Dillon*, Edward Rust*,

Larry Wilson* and Glenna Molster* on Friday, October 14, 2005 at 5:00 p.m. @ the offices of Esquire

Deposition, 1201 North Orange Street, Suite 760, Wilmington, DE 19801. Plaintiff is willing to have the persons

not located in Delaware to be deposed via telephone @ the offices of Esquire Deposition Services.

Submitted.

Cathy D. Brooks-McCollum
PO Box 12166
Wilmington, DE 19850

September 8, 2005

*DUCES TECUM: to produce all documents relating to this case, including any new policies issued to the illegal
board, and State Farms Policy to deny claims as a cost savings measure, as outlined in the Campbell Case, as well
as all the State Farm prior and current employees who testified in the Campbell case, and the parties who testified
against State Farm. Also produce the document where State Farm also confirmed that Mr. Edward Kafader was
representing them.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

Cathy D. Brooks-McCollum
& On behalf of
Emerald Ridge Service Corporation Derivative Action
As a Director
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694
**(PLAINTIFF)**

**CIVIL ACTION NO: 04-419 (JJF)**

**JURY TRIAL REQUESTED**

vs.

State Farm Insurance Company
**(DEFENDANTS)**

### PROOF OF SERVICE

I Cathy D. Brooks-McCollum hereby certify that on the 9th day of September, 2004, I will and have

caused to be served a true and correct copy of the foregoing taking of deposition regular postage mail, postage

prepaid and e-mail:

Casarino, Christman & Shalk
Stephen P. Casarino
800 North King St, Suite 200
P.O. Box 1276
Wilmington, DE 19899
(302) 594-4500
(302) 594-4509 Fax

Cathy D. Brooks-McCollum (Pro Se)
PO Box 12166
Wilmington, DE 19850
(302) 521-1241

# EXHIBIT B

March 31, 2004


Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300 (Telephone)
(302) 995-0399 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Dillon,

Mr. Dillon please be aware that one of the persons listed in Civil Action #04C-03-074-1-CV (Emerald Ridge Board Of Directors) filed in the Superior Court who was on the board previously agreed with me that we did not have a valid board. Therefore, I could only hope that State Farm first confirms indemnification and the validity of these persons prior to allowing them to utilize the policy for this civil action. This will limit State Farms liability if they choose to utilize this information.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694


cc:     Delaware Insurance Commission

March 19, 2004

Mr. Ed. Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE   19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)



Dear Mr. Dillon,

In the wake of having received the letter today by Mr. Kafader after I informed your offices that I would only be dealing with you regarding any issues that do not relate to the current case in Chancery Court, I must say that I find this to be unprofessional and unethical on the part of State Farm.

Thus, I am informing you of your ~~of your~~ further unethical practices and your continued failure/refusal to honor your policy.

Please review the attached Stanford Review in addition to my having cases to back this up in conjunction with the policy issued to Emerald Ridge Service Corporation (mainly page 24, 3a through c).

Thus, the Insured vs. Insured clause would apply here and I will show that you once again made an educated decision to cause emotional distress and harassment on one of your policyholders.

Your section 3 states as follows should you not have it in front of you:

    a.    any of your directors or officers, collectively and individually, which form your administrative body provided that each individual:
        (1) is duly elected by the unit-owners to serve on the managing body of the Condominium/Association; and
        (2) acts within the scope of their duties on your behalf;

    b.    any of your members, but only with respect to their liability for your activities they perform on your behalf as a member of a committee appointed by the administrative or managing body of the Association/Association;
    c.    the named Insured shown in the Declarations with respect to liability because of "wrongful acts" committed by an insured.

In that you have chosen to insure Mr. Kenneth Shareef who as I informed you on numerous occasions is not a stockholder and was not a valid Director, as well As Mr. Brevett who was not elected and who was performing services at the request of an invalid member, I'm sure that the ruling will be in my favor that these parties are not covered.

Furthermore, your offices will not be able to argue that they were unclear on the issues set forth, because all of the letters I've sent to you will be utilized for discovery.

Now, these illegal persons, one who was not elected (Mr. Renford Brevett) and another who tendered her resignation (Ms. Maudy Melville) have chosen to appoint two other persons to the Board. This would mean that none of these parties are covered. Since appointments were made by persons not valid themselves.

Therefore, as I stated please do not have Mr. Kafader cause any further undue/emotional distress on me or my family making demands by parties who are not valid, and furthermore, stating actions regarding another suit, if he is not the counsel of record.

It further appears that you are practicing the tactics referenced in my March 9, 2004 letter. I'm personally not surprised that State Farm has remained true to their name in being a deceitful company. I've attached the document I am referring to.

Thank you for abiding by my wishes.

Sincerely,

Cathy D. Brooks-McCollum
Emerald Ridge
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694


cc:     Delaware Insurance Commission.

# STANFORD LAW SCHOOL
## SECURITIES CLASS ACTION CLEARINGHOUSE
### IN COOPERATION WITH CORNERSTONE RESEARCH

2002 News and Press Releases                                    SEARCH

## News                                                    ## News 2002

HEADLINES | SETTLEMENTS | COURT FILINGS
LINKS TO OTHER NEWS | NEWS ARCHIVE

HEADLINES ARCHIVED
SETTLEMENTS ARCHIVED

---

**HEADLINE ARCHIVED:**

**Outside Counsel Evaluating D & O Insurance In The Wake Of The Enron**
**By: Randy Paar**

New York Law Journal. July 30, 2002

---

EXCERPT: Corporate officers and directors are under siege. Stock prices are falling, balance sheets must be restated, and indictments are being filed. In a recent speech to the National Press Club in Washington, D.C., Henry Paulson, Chairman and CEO of The Goldman Sachs Group, said: "In my lifetime, American business has never been under such scrutiny. To be blunt, much of it is deserved. ... [T]he Enron debacle and subsequent revelations have revealed major shortcomings in the way some US companies, and those charged with their oversight, have gone about their business. And it has, without doubt, eroded public trust." [n1] The frequency of federal securities-fraud, class-action lawsuits has increased in the last year, as well as the average payment to shareholder claimants. At a time like this, it is reasonable for directors and officers, and their risk managers, to view the D & O insurance policy as the corporation's most important asset. However, at the same time that individual directors and officers need the insurance policy most, the D & O insurance policy may not provide the protections that the individual insureds expect. **For instance, many current policies provide protection for claims both against the individual directors and officers (D & Os) and against the corporate entity. As a result, the individuals and the corporation may both seek access to the same insurance policy limits to defend against, and ultimate settle, claims.** These competing interests are involved in the current dispute over access to the limits of the D & O insurance policies sold to the now defunct Enron Corp. Although the court hearing the Enron bankruptcy recently allowed the primary D & O insurance company to advance defense costs for the individual D & Os, payment to defense counsel has been significantly delayed and the dispute is not over. Corporate insiders should be aware of the problems they could face if their corporation files in bankruptcy and understand the ways policyholders and insurance companies currently are seeking to avoid disputes in the future. Under a traditional D & O insurance policy, the insurance company agrees to indemnify, or to pay on behalf of, the individual directors or officers for all "loss" those individuals become legally obligated to pay arising out of a "wrongful act" committed in their capacity as an officer and director. This promise, referred to as Coverage A, "direct" or "liability" coverage, protects only the individual directors and officers for claims made against them. It does not provide insurance for claims against the corporate policyholder.

March 1**7**, 2004

Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

RE:    Policy Number 98-BN-4393-8

Dear Mr. Dillon

Can you please ensure that I receive indemnification for Civil Actions filed in Superior Court 04C-03-074-1-CV
(Emerald Ridge Board of Directors) and 04C-03-075-1-CV (State Farm), in that these two filings were made as a
result of issues which incurred during my responsibility as a Director. I would like this claim to be processed
ASAP.

Thank you,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

cc:    Delaware Insurance Commission

March 1?, 2004

Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
(302) 995-0300
(302) 995-0399 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Dillon,

*corrected*

Today, after church I spoke to some of my colleagues who further informed me of some questions to pose to your company relating to the policy paid for by the Emerald Ridge Service Corporation Stockholders.

First, I would like to ask in that the suit filed against the persons you have elected to cover, and yourself is brought as a stockholder and Director of Emerald Ridge Service Corporation the portion that covers stockholders for any liability in which they incur, what would be your definition? As it was placed to me it would be a liability to me as a stockholder and the rest of the stockholders for a period of years should our rates increase drastically, as Corporate Counsel advised. Thus, in light of this I would like State Farm to present to me as a stockholder and a policy owner what is the projected cost of our policy rate for the next 10 years as a result of this suit. I would like this question to be answered in that the law provides for this. I would also be getting approximately three (3) more quotes as to the increase in our policy coverage to utilize for these proceedings. Could you also inform me if State Farm will be renewing coverage for us in June and for what rate?

Second, I would like State Farm to pay for an insurance adjuster to perform an analysis as to the market value decline of the homes in Emerald Ridge once people who seek to purchase in here become aware that there are several claims against the persons who claim to be operating the Corporation, and their insurance carrier. In accordance to Delaware's disclosure laws in that these suits will more or less be prolonged for a period of time, this will have to be disclosed by home seller's to potential home buyers. Thus, I would like your firm to place a monetary value on the losses one would incur. It is highly unlikely that someone would want to purchase a home in Emerald Ridge at this time with the risk of a potential lawsuit damages lurking over it. Given that the policy only covers up to $1,000,000, State Farm has an obligation to the rest of the stockholders to inform them that if there is an award over this amount that the costs will have to come from them, or the Directors. They should be informed that this would depend on how the court rules the amount over will have to be paid. During the proceedings I will have an outside consultant do the same type of analysis, thus I would hope that State Farm does a fair comparative analysis.

Could you please send me the answer to these questions prior to the March 25, 2004 meeting, so that I can share with the stockholders the risk that they are placed in? I'm sure you are aware just because a lawsuit is filed against you, does not mean that you do not have to answer any questions I pose to you as a policy owner and stockholder, in that I own the policy as well.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694


cc:    Delaware Insurance Commission

**Attachments Of Other Letters Not Answered Sent To The Delaware Insurance Commissioner**

March 15, 2004

Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE  19808
(302) 995-0300 (Telephone)
(302) 995-0399 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Dillon,

Just a note of information the research performed on the fraud created in the insurance industry revealed that State Farm was the number one leader in the insurance industry for trying to payout less then what a claim is actually worth.  So please consider this when you review the Delaware laws in which you have broken and continue to break.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

cc:    Delaware Insurance Commission

March 15, 2004


Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-6330

Dear Mr. Dillon

Please review the attached and I expect to be indeminified by the end of the day, or have an amicable settlement presented to me.  Hopefully, you will not incur further legal fees at the expense of illegal Directors.  I have been trying to work in Good Faith with your company, with you only trying not to meet your financial obligations.

This is just a few of the cases which were dug up regarding indeminfication.  State Farms failure to follow the Delaware Indemnification's rules does not exclude them from their negligence.  Hopefully, you will contact me and or insure that I receive the costs for my legal counsel and fees.


Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

cc:    Delaware Insurance Commission

1.    Protected Persons. The statutes permit indemnification of any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director, officer, employee or agent of the corporation. (Section 145(a) and (b), Delaware; § 1701.13(E)(1), Ohio).

a.    Because the statute applies to a D&O who is made a "party" to a proceeding, the Delaware Supreme Court has ruled that indemnification is not limited to defendants. **Rather, indemnification is available regardless of the D&O's role in the litigation, including as a plaintiff, intervenor or amicus curiae. Hibbert v. Hollywood Park, Inc., 457 A.2d 339 (Del. 1983). However, in Shearin v. E.F. Hutton Group, Inc., 1994 Del. Ch. LEXIS 69 (Del. Ch. June 7, 1994), the court ruled that an officer who initiates a lawsuit is entitled to indemnification only if the lawsuit is brought as part of the officer's duties to the corporation or its shareholders.** Thus, the officer was not entitled to indemnification for costs incurred in prosecuting a wrongful termination suit against the company. Accord, Augat, Inc. v. Collier, 1996 WL 110076 (D. Mass. Feb. 8, 1996).

b.    Courts have similarly interpreted broadly the requisite capacity in which an individual must participate in the proceeding in order to trigger the indemnification statute. **In Heffernan v. Pacific Dunlop GNB Corp., 1992 U.S. App. LEXIS 12595 (7th Cir., June 5, 1992), the court ruled that the Delaware indemnification statute applies to suits against directors and officers both in their official capacity or if the suit arises more tangentially from his role, position or status as a director.** In that case, a former director and shareholder of a company was sued for failure to disclose material information when he sold his stock in the company to another corporation. Although he was sued in his capacity as a shareholder (which would not alone trigger indemnification), the court permitted an indemnification claim against the corporation to proceed since his status as a director put him in a position where, in performance of his duties as a director, he either learned or should have learned of the material information which he did not disclose to the purchaser when he sold his stock. See also, Barry v. Barry, 824 F.Supp. 178 (D.Minn. 1973) aff'd., 28 F. 3d 848 (8th Cir. 1994); U.S. v. Lowe, 29 F. 3d 1005 (5th Cir. 1994), Kapoor v. Fujisawa Pharmaceutical Co., 1994 Del. Super. LEXIS 233 (May 10, 1994); Augat, Inc. v. Collier, 1996 WL 110076 (D. Mass. Feb. 8, 1996).

March 13, 2004


Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
(302) 995-0300
(302) 995-0399 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Dillon,

Mr. Dillon upon your offices having an independent counsel review all the laws violated as the law provides I would highly recommend that your offices come up with a fair equitable settlement offer to cease these actions. As it stands now your offices and these persons have caused stress upon me, weight lost and missed time away from my family and the further this prolongs the higher the damages will be. As I stated Mr. Kafader is not deemed independent counsel per the General Corporation Law, Title 8, Chapter 1, Subchapter IV. By law State Farm was required to follow this, and you cannot argue before a jury that you did not know that this was being violated.

It will be presented to the jury that your company and these persons have placed me and my family at a defense, by placing us at risk to walk the community in which we live, without fearing if we will be shot or killed, if one person chooses to believe the false information supplied by your clients. Please do ensure that if any harm comes to my family, and me you should take this as notice that persons have been informed to hold you personally liable. This is for property damage, the loss of life, or personal injury that may occur as a result of these actions. The police have been notified once, and we are now insuring that we trace each and every call deemed threatening from the point the police were notified.

In that I am a policyholder do not share any correspondence I have and am sending to your attention to counsel for defendants. You only have authorization to distribute documents to independent counsel who is independent from all parties, including the Corporation members.

Any type of settlement proposal will not be considered unless received from independent counsel and or State Farm themselves. However, as long as the misleading information remains on the Corporations website there will be no entertainment of settlement. The State Farm Policy states clearly that State Farm has the right to settle any suits, and in that there has been damage to the Corporation, by way of property values and the other items listed, I would suggest prior to the March 25th meeting with the Corporation members, that State Farm work in the Good Faith of the Corporation, not persons who were not Directors, and who are not stockholders.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

March 13, 2004


Mr. Ed Dillon
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
(302) 995-0300
(302) 995-0399 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Dillon,

As a policy owner and a stockholder of the Emerald Ridge Service Corporation, as I have stated you have hired Mr. Ed Kafader to defend persons who first are not and have not ever been Directors of the Emerald Ridge Service Corporation. Second, as a policyholder you cannot by law ask me to address any policy related questions to that of a counsel you have hired for other parties. Third, I've posed certain questions to your corporation and to date have not received any responses from your offices regarding the questions posed. Fourth, we will have the courts interpret the terms of the insurance policy in that it is quite clear that the courts will construe the policy on behalf of what an average persons would interpret the clauses as listed in your policy. Fifth, your company was supposed to have followed all Delaware laws, Federal and US laws prior to indemnification under the policy, or for any other reason and did not. You have now placed an entire Corporation in the way of having legal liability placed on them due to the negligence of a few, who are not valid Directors and have not been. Delaware law provides that prior to any indemnification of any kind that any Directors not part of a suit may decide, and if there are not any then independent counsel can decide, or a vote by the stockholders. Not only did State Farm not do this they have chosen to pay for legal services of a person who is not or was not a stockholder of the Corporation as the Certificate Of Insurance provides for. Independent Counsel of the Corporation at the request of the invalid persons acting as a board gave his opinion on two separate occasions and this was not to utilize the insurance policy, as well as he was present when the Corporation spoke. Thus, State Farm has caused me and my family who are stockholders undue distress and hardship for its violations relating to this suit. Your continuance refusal to address any other stockholder just goes to show how far your negligence will go.

However, I do hope that in that the policy is clear that it does not cover any advertising damages that State Farm at least follow the laws governing this and do not indemnify any of the persons who legal suit has been brought against for their willful and intentional violations of the law. I would hope that State Farm would obtain Independent Counsel separate from the one hired for Defendants in these proceedings to address the issues set forth, since they have failed to follow the advice of Independent Counsel of the Corporation. Mr. Kafader is not independent counsel. He cannot be deemed independent in that he does not have the Corporations/stockholders interest in mind, or that of mine, as he so noted in his correspondence to me. Thus, I would highly suggest that State Farm follow the laws in these proceedings.

Any issues surrounding this policy will have to be done so through Mr. Dillon. In that Mr. Kafader is not an independent party I will only address court related issues to his attention, requested by that of the court. Therefore, as a policyholder I would request a response to this letter and all my letters by Mr. Dillon as not to further delay the violations committed by State Farm against the Corporation in which I hold stock. As a result of these actions State Farm and these individuals have placed all stockholders in the position of possibly losing home values, as well as hardship on all stockholders, at the cost of a few over which began over $185.00, an amount which should never had to result in three separate lawsuits. This goes to show clear negligence on their parts, as well as their admitting in their legal filings that they have refused to pay for these services and only to take another vote, after they stated the Corporation voted on the issue at hand. This goes to show that these parties do not care what they do to break the laws.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

March 13, 2004

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Rust and Ms. Molster,

This letter is to inform you that the Delaware Rules Of Professional Conduct prohibits a party from advising or encouraging a party to violate the law.

In that your offices represent the parties of Emerald Ridge Service Corporation and your knowing that these persons have violated the law and your not advising them to correct this problem will be dealt with in the current legal proceedings. Furthermore, I'm not exactly sure who advised those persons to appoint other persons to the board illegally, in addition to ratifying a persons not entitled to ratification, but this is a clear violation of the law. This will also be dealt with in court as to addressing these individuals who advised them to continue to violate the laws, after they were informed of them.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

# State Farm Insurance Companies®



March 11, 2004

Larry L. Wilson, CPCU, CLU
Division Claims Manager
1500 State Farm Boulevard
Charlottesville, Virginia 22909
Phone: (434) 872-2810

MS. CATHY BROOKS-MCCOLLUM
115 EMERALD RIDGE DR
BEAR DE 19701

RE:    Claim Number:      08-R337-251
       Insured:           Emerald Ridge Service Corporation

Dear Ms. Brooks-McCollum:

This will acknowledge your letter to our Corporate headquarters dated March 1, 2004.

It is my understanding you are a plaintiff in a lawsuit filed against our named insured, Emerald
Ridge. We are providing a defense to the board members under the Director's and Officer's
coverage of the corporation's policy. We have tendered this defense in response to your lawsuit
filed in Chancery Court.  Attorney Ed Kafader has been in contact with you regarding this
lawsuit.

We have no contractual obligation to provide you with counsel since you are the plaintiff in this
action. State Farm is honoring its contractual obligations under the contract and we have
instructed Mr. Kafader to proceed with appropriate discovery. We will also defend any lawsuit
filed against this Company as we believe there is no viable cause of action.

Should you have any questions, please contact Attorney Ed Kafader or Team Manager Ed
Dillon at (302) 995-0399.

Sincerely,

Larry L. Wilson
State Farm Fire and Casualty Company

March 9, 2004

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Rust and Ms. Molster,

You both should review the following and take note that you can't make me deal with counsel you hired for defendants. Therefore, I have tried working in Good Faith with you both in many instances. I would suggest you review my settlement proposal, because at this point I intend to have all the cases taken over by an attorney and in that State Farm committed a breach, I'm sure someone will take all of them without my first having to outlay costs.

Therefore, I expect for your offices to give my claim attention as outlined below, because by law you must and your actions are now causing me and my family emotional distress.

**Duty to Deal Fairly with Insureds**

Every insurance contract contains an unwritten, invisible, or implied term referred to as the covenant or promise of good faith and fair dealing. This is a promise imposed by law upon an insurance company to always act fairly towards its insureds in handling their claims. Whether or not such a clause is included in the policy, judges will read the policy as if it were there.

Carriers must meet the reasonable expectations of the policyholder and an insurer must always give as much consideration to the financial interests of its insureds as it does to its own financial interests.

In bad faith cases a jury is always asked whether under the facts the carrier acted reasonably. Denying benefits, delaying payments and paying less than what is owed are examples of bad faith. An insurance company is obligated to thoroughly and promptly investigate all claims and must inquire into all the possible issues that might support an insured's claim. This obligation is not terminated simply because the insured files a lawsuit against the company.

Where an insurer makes a belated offer of settlement, a cause of action for bad faith does not correct or set aside the previous wrongful conduct. Any payments to the insured only reduce the amount of the insurance company's final liability as it may determined by a jury.

In a bad faith action an insurance company's business practices or common course of conduct is routinely admissible to show motive, opportunity, intent, plan, knowledge or the absence of a mistake or an accident in the manner in which it dealt with its insured. It is not necessary to show that the insurer intended to cause harm in a breach of the covenant of good faith and fair dealing. The policyholder need only show that the insurer failed to honor the agreement and had no cause not to pay what was due under the contract. When a person buys an insurance policy, the very risks that are insured against make it clear that if a claim is not satisfied the policyholder will suffer financial pressure and emotional distress. Policyholders obviously will be vulnerable to oppressive tactics by a

carrier and insurance companies are presumed to know that a denial of benefits will very well result in emotional distress to their insureds.

**Damages that can be Collected**

Where a policyholder successfully shows that an insurer breached the covenant of good faith and fair dealing, the insured can recover all damages caused by the breach. This includes all consequential losses, loss of use of the insurance proceeds, general damages, attorneys' fees and in cases of egregious and outrageous misconduct, punitive damages.

To recover for emotional distress it must be shown to have been caused directly as a result of the insurer's conduct. Normally, once actual economic loss is established, the policyholder is entitled to recover damages for emotional distress as well, as long as that injury was caused by the insurer's breach of the covenant of good faith and fair dealing.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

March 5, 2004

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Rust and Ms. Molster,

Per the suit filed this afternoon in Superior Court against State Farm. As I stated we can settle this suit and
the suit in Chancery Court at this time and at this time only for the full amount of my legal fees and court
costs, which now amount to $2,165.26 and $1,697.50 for the legal fees incurred by the illegal members.
This brings the total to $3,852.76. However, this will not settle the case filed in Superior Court today against
the parties operating Emerald Ridge Service Corporation illegally. In that the case filed in Superior Court
this evening against these parties is for injury for advertising across the Internet this should not concern State
Farm, in that as I stated in the policy page 22, number 16 the policy does not cover for this. If State Farm is
agreeing to cover these individuals for this as well although you should have been made aware by Mr.
Kafader that they knew they were placing false and misleading information over the Internet. One thing
being their advertising that the Chancery Court case was amended six times and still counting. If your
offices review the attached Complaint filed against them you will find that you can remove yourself from
this liability now, before the Superior Court Case goes to trial. Once it goes to trial I will not be making this
offer again, because the damage for false advertising will be too substantial.

Given the situation I believe this to be a fair offer, and I will not be accepting this coming from counsel hired
for Defendants should you wish to extend the offer. This offer will have to come from an independent
counsel or your office itself. You may then have Mr. Kafader draw up the release forms stating that I will
drop the Chancery Court Proceedings in full and the Superior Court Case against State farm only. This way
I will take care of the advertising over the Internet, without State Farm having to try negotiating this portion.

The policy I clear in stating that State Farm can settle at any time. As I said this is not a fight with State
Farm and these persons malicious acts is only going to cost State Farm to expend unnecessary monies. I'm
sure after State Farm removes themselves from the picture away from the Superior Case these persons will
conform to the rules and regulations of the Corporation and make sure the proper procedures are followed.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

March 4, 2004

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Mr. Edward Kafader
(302) 575-1714

Dear Mr. Rust, Mr. Kafader & Ms. Molster,

Attached, are the Federal Trade Commission Laws on Advertising. I will be seeking the $11,000 per ad per day that is false and
misleading in the Superior Court against your clients, in addition to the civil penalties. You may want to inform them of these
laws.

They believe this to be a joke and I do not find any humor in false and misleading advertising over the Internet. There will be a
case filed against them on Monday for this in addition to the case being filed against State Farm.

I will be seeking the full amount allowed by the law because of the damage these people have caused the corporation and continue
to. I've given them ample time to remove the misleading documents from the Internet and they feel this is a game. The policy
goes up to only a million and each day this stays on the website makes it more detrimental. I have support to back up my claims
that this is false and misleading.

I've started counting the days and the amount is already in the area of $1,000,000.

Have them refresh themselves with the FTC laws.

Thanking you in advance for your attention to this matter.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

About Subscribe Order Features ACS Gold

YOU Face $11,000 Penalty PER VIOLATION for... [Read more] March 4, 2004

- Auctions
- Car Ads
- Car Loans
- Children's Ads
- Comparative Ads
- Consumer Lease
- Cotton
- Dairy
- Deceptive Pricing
- Diamonds
- Diet Programs
- Diet Supplements
- Down
- E-Mail Ads
- Endorsements
- Environment/Mail
- Eye Care
- Eye Surgery
- Food Ads
- Fur
- Gems
- Health Claims
- Hearing Aids
- Home Financing
- Indoor Tanning
- Infertility Svcs.
- **Internet Ads**
- Jewelry
- Made in USA
- Milk
- MLMs
- Pearls
- Precious Metals
- Recycling
- Spam
- Testimonials
- Timeshare Tips
- Unfairness
- Use of Word "Free"
- Varicose Veins
- Wool
- Yellow Pages

This page contains the full-text reproduction of FTC's "Frequently Asked
Advertising Questions: A Guide for Small Business"
 Frequently Asked Advertising Questions:
A Guide for Small Business

## GENERAL ADVERTISING POLICIES

**What truth-in-advertising rules apply to advertisers?**
Under the Federal Trade Commission Act:

Advertising must be truthful and non-deceptive;
Advertisers must have evidence to back up their claims; and
Advertisements cannot be unfair.
Additional laws apply to ads for specialized products like consumer leases, credit, 900 telephone
numbers, and products sold through mail order or telephone sales. And all states have consumer
protection laws that govern ads running in that state.

**What makes an advertisement deceptive?**
According to the FTC's Deception Policy Statement, an ad is deceptive if it contains a statement -- or
omits information -- that:

is likely to mislead consumers acting reasonably under the circumstances; and
is "material" -- that is, important to a consumer's decision to buy or use the product.
**What makes an advertisement unfair?**
According to the Federal Trade Commission Act and the FTC's Unfairness Policy Statement, an ad or
business practice is unfair if:

it causes or is likely to cause substantial consumer injury;
which a consumer could not reasonably avoid;
and it is not outweighed by the benefit to consumers.
**How does the FTC determine if an ad is deceptive?**
A typical inquiry follows these steps:

The FTC looks at the ad from the point of view of the "reasonable consumer" -- the typical person
looking at the ad. Rather than focusing on certain words, the FTC looks at the ad in context -- words,
phrases, and pictures -- to determine what it conveys to consumers.
The FTC looks at both "express" and "implied" claims. An express claim is literally made in the ad. For
example, "ABC Mouthwash prevents colds" is an express claim that the product will prevent colds. An
implied claim is one made indirectly or by inference. "ABC Mouthwash kills the germs that cause
colds" contains an implied claim that the product will prevent colds. Although the ad doesn't literally say
that the product prevents colds, it would be reasonable for a consumer to conclude from the statement
"kills the germs that cause colds" that the product will prevent colds. Under the law, advertisers must
have proof to back up express and implied claims that consumers would take from an ad.

The FTC looks at what the ad does not say -- that is, if the failure to include information leaves consumers with a misimpression about the product. For example, if a company advertised a collection of books, it would be deceptive if the ad did not disclose that what consumers actually would receive were abridged versions of those books.

The FTC looks at whether the claim would be "material" -- that is, important to a consumer's decision to buy or use the product. Examples of material claims are representations about a product's performance, features, safety, price, or effectiveness.

The FTC looks at whether the advertiser has sufficient evidence to support the claims in the ad. The law requires that advertisers have proof before the ad runs.

**What kind of evidence must a company have to support the claims in its ads?**

Before a company runs an ad, it has to have a "reasonable basis" for the claims. A "reasonable basis" means objective evidence that supports the claim. The kind of evidence depends on the claim. At a minimum, an advertiser must have the level of evidence that it says that it has. For example, the statement "Two out of three doctors recommend ABC Pain Reliever" must be supported by a reliable survey to that effect. If the ad isn't specific, the FTC looks at several factors to determine what level of proof is necessary, including what experts in the field think is needed to support the claim. In most cases, ads that make health or safety claims must be supported by "competent and reliable scientific evidence" -- tests, studies, or other scientific evidence that has been evaluated by people qualified to review it. In addition, any tests or studies must be conducted using methods that experts in the field accept as accurate.

**Are letters from satisfied customers sufficient to substantiate a claim?**

No. Statements from satisfied customers usually are not sufficient to support a health or safety claim or any other claim that requires objective evaluation.

**My company offers a money-back guarantee. Very few people have ever asked for their money back. Must we still have proof to support our advertising claims?**

Yes. Offering a money-back guarantee is not a substitute for substantiation. Advertisers still must have proof to support their claims.

**What kind of advertising claims does the FTC focus on?**

The FTC pays closest attention to:

ads that make claims about health or safety, such as:
"ABC Sunscreen will reduce the risk of skin cancer."
"ABC Water Filters remove harmful chemicals from tap water."
"ABC Chainsaw's safety latch reduces the risk of injury."

ads that make claims that consumers would have trouble evaluating for themselves, such as:
"ABC Refrigerators will reduce your energy costs by 25%."
"ABC Gasoline decreases engine wear."
"ABC Hairspray is safe for the ozone layer."

Ads that make subjective claims or claims that consumers can judge for themselves (for example, "ABC Cola tastes great") receive less attention from the FTC.

**How does the FTC decide what cases to bring?**

The FTC weighs several factors, including:

FTC jurisdiction. Although the FTC has jurisdiction over ads for most products and services, Congress has given other government agencies the authority to investigate advertising by airlines, banks, insurance companies, telephone and cable companies, and companies that sell securities and commodities.

The geographic scope of the advertising campaign. The FTC concentrates on national advertising and refers local matters to state, county or city agencies.

The extent to which an ad represents a pattern of deception, rather than an individual dispute between a consumer and a business or a dispute between two competitors. State or local consumer protection agencies or private groups such as the Better Business Bureau (BBB) often are in a better position to resolve disputes involving local businesses or local advertising. To get the address and phone number of your state attorney general's office, your local consumer agency, or the nearest BBB, check your telephone directory or the Consumer's Resource Handbook.

The amount of injury -- to consumers' health, safety, or wallets -- that could result if consumers rely on the deceptive claim. The FTC concentrates on cases that could affect consumers' health or safety (for example, deceptive health claims for foods or over-the-counter drugs) or cases that result in widespread economic injury.

**What penalties can be imposed against a company that runs a false or deceptive ad?**
The penalties depend on the nature of the violation. Among the remedies that the FTC or the courts have imposed include:

**Cease and desist orders.** These legally-binding orders require companies to stop running the deceptive ad or engaging in the deceptive practice, to have substantiation for claims in future ads, to report periodically to FTC staff about the substantiation they have for claims in new ads, and to pay a fine of $11,000 per day per ad if the company violates the law in the future.

**Civil penalties, consumer redress, and other monetary remedies.** Violation of certain statutes can result in civil penalties ranging from thousands of dollars to millions of dollars, depending on the nature of the violation. In other cases, advertisers have had to give full or partial refunds to all consumers who bought the product.

**Corrective advertising, disclosures, and other informational remedies.** Advertisers have been required to take out new ads to correct the misinformation conveyed in the original ad. Advertisers also have had to notify purchasers about deceptive claims in ads, include specific disclosures in future ads, or provide other information to consumer

**Bans and bonds:** In some cases, individuals have been banned from an industry or have been required to post a bond before continuing business.

**Will the FTC review my company's ads before they run to make sure that we've complied with the law?**
FTC staff cannot clear your ads in advance. However, there is guidance to help you comply with the law. See Business Guidance for our library of materials for advertisers. For more general information on advertising policies, call the FTC's Division of Advertising Practices at (202) 326-3090.

## How can I keep up-to-date on what's going on at the FTC?

The Federal Trade Commission Homepage is updated almost every day, so bookmark it for instant access to FTC news and views, including recent enforcement actions, speeches, public hearings, and other business information. Before running an ad, check out what the FTC has had to say about products or advertising claims similar to yours. From the homepage, you can search the entire FTC web site using key words or phrases. For example, a search using the word "diet" will yield cases, reports, news releases, and other materials related to FTC policies about the advertising of diet products and services. In addition, see www.consumer.gov for consumer and business information from the FTC, FDA, SEC, and other federal agencies. You may also want to check the Better Business Bureau for tips on truthful

## Internet Advertising

Is advertising over the Internet subject to the same laws as other advertising?
Yes. Ad claims on the Internet must be truthful and substantiated. See Marketing on the Internet: The Rules of the Road for more information. In addition, advertisers should be aware of the privacy issues raised by Internet marketing. For more information about recent FTC conferences on consumer privacy on the Internet, see Privacy Workshop.

## Jewelry

Are there special guides for advertising jewelry?
The FTC's Jewelry Guides cover claims made for gold, silver, platinum, pewter, diamonds, gemstones, and pearls and define how certain common terms may be used in ads. For example, the Guides explain when a product can be called "gold plated" or when a diamond can be called "flawless." For more information, see the FTC's Guides for the Jewelry, Precious Metals, and Pewter Industries.

## Leasing

What information must a company include when advertising leases for cars, household goods, or other products?
The Consumer Leasing Act and Regulation M include specific rules that apply to ads for consumer leases. For example, if a lease advertisement includes certain terms -- such as the amount of any payment due before or at lease inception -- the ad also must make other clear and conspicuous mandatory disclosures about the terms of the lease. These rules also apply if the ad contains phrases like "no money down" or "no down payment." For more information, see Advertising Consumer Leases.

## Made in the U.S.A.

When can my company advertise that our product is "Made in the U.S.A."?
A product has to be "all or virtually all made in the United States" for it to be advertised or labeled as "Made in the U.S.A." For more information, see the Enforcement Policy Statement on U.S. Origin Claims.

## Mail Order Advertising

**What rules must a company follow if it sells products via mail order?**
Truth-in-advertising standards -- including that companies must have proof to back up express and implied claims made about its products -- apply to mail order marketers. In addition, the FTC's Mail or Telephone Order Merchandise Rule ("Mail Order Rule") applies when a consumer places an order by mail, telephone, fax, or computer. Under the Mail Order Rule, a company must have a reasonable basis for believing that it can ship the product within the time period stated in the ad. If the ad doesn't specify a time period, the company must have a reasonable basis for believing that it can ship within 30 days. For more information, see A Business Guide to the Federal Trade Commission's Mail or Telephone Order Merchandise Rule and A Business Checklist for Direct Marketers. In addition, the Direct Marketing Association, a trade group for members of the direct marketing industry, has voluntary guidelines on ethical business practices.

Is it okay for a company to "dry test" a product?

March 4, 2004

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE  19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Mr. Rust and Ms. Molster,

In that your offices have failed or chosen not to reply to the questions I placed to you I am attaching for your records a revised copy of the Complaint to be sent to the court to be filed on Monday, March 8, 2004.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

March 1, 2004


Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

RE:    Policy Number 98-BN-7393-8
       Claim Number 08-R337-251

Dear Mr. Rust,

As a means to keep in conformity with the insurance policy I also felt that you should have this information.

One of the members of the Corporation called to schedule a meeting with me at my home yesterday on behalf of himself and the other members of the Corporation as a result of the actions operating the board illegal. This member was filled in fully with the events of the current lawsuit and the potential of any other. During this conversation he stressed to me that the members had thought this was taken care of as was stressed at the last meeting and was shocked to know that these events were still going on.

The person that came by on behalf of himself and other members was shocked that the insurance company actually processed a claim prior to verifying or making sure that, Title 8, Chapter 1, Subchapter IV, Section 145(d) of the General Corporation laws were not followed to determine indemnification or if they wanted this, which states, "a majority vote of the directors who are not parties to such action, suit or proceeding....". can decide if a person is a valid director to be indemnified"........(3) "if there are no such directors, or if such directors so direct, by independent legal counsel in written opinion, or (4) by the stockholders".

Corporate Counsel (who serves as independent counsel) gave his independent opinion and State Farm and defendants ignored it and did as they felt against corporate counsels advise. The way all of this has been handled by State Farm has placed them at a legal liability. As it stands a stranger off the street can process a claim with State Farm against our policy claiming to be a Director and State Farm will process the claim.

As I said this entire procedure was not handled properly and I am the only valid Director at this point with the Corporation being run by persons illegally, of which the Corporation was not informed. It is apparent that these illegal persons appointed someone else since this time without notifying the Corporation of this, and the fact that a valid election needed to be had.

You guys may take this advice and use it as you please, but a valid stockholder and Director have informed you.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

March 1, 2004


Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE  19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

RE:      Policy Number 98-BN-7393-8
         Claim Number 08-R337-251

Dear Mr. Rust and Ms. Molster,

      Attached, is a copy of the Complaint to be filed with the Delaware Superior Court on Monday, March 8, 2004 should I not here from you regarding the contract violations prior to this Friday.  Can you please inform me if Ms. Molster is not the correct party this Complaint should sent in care of in your Delaware office should these proceedings have to continue.

      You may notify me at my e-mail address of mccollumc1@comcast.net or at my home fax which is the same as my home number, which is (302) 832-2694

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

March 1, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)
Policy Number

Dear Ms. Molster,

First, I would like to inform you that I have addressed some of the issues placed to you and not answered to the Chairman of the Corporation in Illinois.

Second, I would like to state that this is not a fight with State Farm, and I really do not feel that the Corporation should have to be sued, because individuals who are not Directors are running the Corporation and have chosen to do so against the Corporations rules and not inform the Corporation of the liability they have placed them in.

Thus, in light of this I was advised today that there is another alternative for State Farm to remove itself from these proceedings. This will in turn remove the liability from State Farm and the Corporation from being sued. The alternative will place any further liability on the persons acting as an invalid board and recklessly.

What was suggested that I propose to State Farm was for your offices to settle the costs incurred by me, which now total $1,559.92 and the legal costs in the amount of $1,697.50 generated as a result of these persons acting as an illegal board. In turn for this I will release the suit in Chancery Court, however the release will have to state that I release everything except the advertising injury charges. These issues will be taken up against these individuals in a separate complaint. In that State Farms policy does not cover advertising injury, this will remove you fully from the picture. Therefore, the Corporation will not have to take responsibility of the individuals that misused the Corporate Website and placed them at risk. In addition to this State Farm will not have to possibly pay for the persons claiming to be Directors. State Farm will not have to defend themselves against charges for not protecting me as the only valid and legal Director who was wrongfully accused. In that the policy is not clear on coverage for the Corporation, if you are responsible for Coverage of the liability the Corporation will incur as stockholders, you will then not have worry about possibly paying for the suit I was advised to file against the Corporation.

This will place the one outstanding charge of advertising injury against the individuals that continue to do so today. It is clear that this policy does not cover advertising injury.

This letter will be forwarded to the Chairman as well. Also, should State Farm continue to cover Emerald Ridge Service Corporation there needs to be some type of policy in place as not to let any person claiming to be a Director file a suit against a policy in which the Corporation pays for, especially since the Corporation members were against this. Also, there needs to be an new clause added to protect the entire Corporation and especially a valid Director bringing suit, without their having to sue the policy carrier.

In that I'm the only valid Director and the persons operating the Corporation are doing so illegally I would like to receive correspondence concerning the business of the Corporation.

Hopefully, we can settle this amicably and let the persons that committed advertising injury be responsible for their actions in that the policy does not cover this. It is clear that they are acting reckless at the cost of State Farm. Prior to their knowing they had coverage they were willing to settle these issues, however after knowing that State Farm was going to pay for them although they were not valid they have taken liberty to misinform the Corporation and cause costs to rise and if State Farm does not settle this, I do not see any end to their actions in site.

Thanking you in advance for your attention to this matter.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

March 1, 2004


Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

RE:    Policy Number 98-BN-7393-8
       Claim Number 08-R337-251

Dear Mr. Rust,

Mr. Rust, here are the letters sent to Mr. Kafader as well. He is the counsel hired by State Farm for the invalid board members operating illegally.

State farm had made a settlement offer, which was made prior to receiving the bill from the corporate counsel generated as a result of the actions of these illegal parties. In that he did send this letter prior to having all the costs as stated I will settle to drop the complaint in Chancery Court, without my releasing the claim for advertising injury. I will then file a separate complaint in the Superior Court for the advertising injury, which is not covered under the policy and thus release State Farm from all liability.

The only difference in this proposal other then that made by State Farm as stated is that the release must state that I will release all claims in Chancery Court, without releasing the one charge of advertising injury. Please inform me if this addition is agreeable by State Farm.

Thank you,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

March 1, 2004

Mr. Edward B. Rust
State Farm Insurance Company
Bloomington, IL
(309) 766-2311 (Telephone)
(309) 766-2566 (Fax)

RE:    Policy Number 98-BN-7393-8
        Claim Number 08-R337-251

Dear Mr. Rust,

This letter is being written to you disputing the policy coverage of which your Delaware office refused to address and give me the appeals process, in addition to presenting the settlement offer which was sent to Ms. Molster as well.

The policy states and is clear that it covers all Directors who have been wrongfully accused of something. First, the suit in which I filed against other persons claiming to be Directors was for their wrongfully accusing me a valid Director of doing something wrong. State Farm processed these parties who claimed to be Directors and are not without ever first confirming with the Corporation that these parties are indeed valid Directors. The parties running the Corporation and who were running the Corporation are not and were not valid Directors, except that of one. A person should not just be able to state they are a valid Director or stockholder and then be automatically covered. One of the persons claiming to be a Director is not a stockholder in the Corporation, where the Certificate Of Incorporation requires that a Director be a stockholder, thus he clearly is not a valid Director.

However, I as a valid Director and stockholder have not been given any assistance on a policy in which I pay for. Furthermore, no one from your office felt that it was worth it to contact me with the clarity on the sections of the policy I placed to them.

Nevertheless, I've proposed the following settlement in addition to dropping the current lawsuit, which will result in State Farm not having to possibly defend three separate lawsuits against this one claim.

Should your offices contact me by the end of the week in agreement to this settlement I will not be filing suit against State Farm, or against the Corporation as outlined in the attached letter dated March 1, 2004 sent to Ms. Molster. I have also attached several other letters for your review, which were sent to Ms. Molster and the person hired to represent the invalid board members.

It is not common practice for a company to expect that a policyholder or any person for that matter speak to counsel for Defendants to iron out issues of a policy in which they pay for. If I was placing questions to Ms Molster which referenced the case, I could then in turn see Ms Molster referring this to counsel for defendant. However, questions regarding certain coverage should be answered to all and any stockholder that places the question.

Hopefully, we can settle this amicably and let the persons that committed advertising injury be responsible for their actions in that the policy does not cover this. It is clear that they are acting reckless at the cost of State Farm. Prior to their knowing they had coverage they were willing to settle these issues, however after knowing that State Farm was going to pay for them although they were not valid they have taken liberty to misinform the Corporation and cause costs to rise and if State Farm does not settle this, I do not see any end to their actions in site.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

February 19, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Ms. Molster,

Ms. Molster in that I've scheduled a meeting with the Corporation members as to inform them of the status and issues within the lodged lawsuit and have asked for $200,000 as part of damages for the Corporation and $100,000 against each defendant for slander, and the costs I've expended today, prior to this meeting State farm is free to negotiate and access the damages and make a settlement offer of which I can and will take to the members at this meeting.

Although, the claim was opened by me as a Director, in working in what I believe is the best interest of the Corporation I feel it only fair that the Corporation receive some compensation to protect them. I further feel that in that these members have placed me and my family in a defensive position for their advertising of lies and slander posted to the website that they should have to pay compensation for this.

In that the Business liability of the insurance policy, page 22 states in Number 16 "personal injury or advertising injury, (a) arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity" (b) "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured"; it is apparent that these persons were informed sometime of their violations of and false advertising and violation of penal statute/ordinances and have not chosen to correct this, that they should not be covered by said policy. As stated to you previously our bylaws provide that there be three elected board members to have a valid board and because that is not in place it was their responsibility to take the proper procedures. These parties were informed prior to their meeting held in December of 2003 that all meetings must include all Directors and they chose to ignore this. These parties were informed of the procedure to determine indemnification and they ignored independent counsel opinion and chose not to have a vote placed before the community.

In that there was never a valid board none of these persons had the authority to remove me from the position of Secretary or Treasurer, nor did they have the authority to make any decisions on behalf of the Corporation until a valid board was in place.

In having outlined all of the aforementioned your offices can decide if they would like to incur further legal fees, and possibly have to pay the Corporation and myself higher damages, or we can work out an agreement that is amicable, which will be taken to the Corporation at the meeting informing them of a resolution that they can have in determining how they would like to proceed with this.

I'm pretty sure they would prefer the $200,000 award to protect them in the future, however as I said I can take to them an amount state farm and I agree to which is fair for all parties.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 17, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Ms. Molster,

Per the insurance policy brought on behalf of the Emerald Ridge Service Corporation, can you please answer the following question for me, so that I may present it to the stockholders of the Corporation as a means for their making their determination.

In that Mr. Kafader is working on behalf of the Defendants in this case I am addressing this question to State Farm on behalf of the myself and the Corporation.

This policy states in (2a) of the protection for Directors and Officers – any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts; and 2(g) violation of any federal or state civil rights law or local ordinance, including but not limited to discriminate on account of race, religion, or sex or age;.

Based on the case filed should the court find that these individuals did violate state laws and local ordinances, in not following the General Corporation laws and the Certificate of Incorporation and Bylaws, which are an expanded version of the General Corporation laws and or local ordinances would these persons be responsible to pay back state Farm all legal costs incurred?

Can you please e-mail me back @ mccollumc1@comcast.net or respond back to me concerning this via regular mail?

If you are not the person to contact regarding the clarity of the laws outlined in the policy, please tell me to who to contact. In that Mr. Kafader is working on behalf of the other members I would not believe he is the correct person to answer policy related questions. Mr. Kafader would be the person to answer issues regarding settling this lawsuit or responding to filings.

Thanking you in advance for your attention to this matter.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 17, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Ms. Molster,

Ms. Molster pursuant to the policy Option DO (Directors and Officers) can you also let me know if the corporation decides at the Community meeting being held on the 25th after reviewing the proof to be offered that the person or persons claiming to be Directors acted fraudulently, or was dishonest to them and acted malicious by giving the mis-information and placing them at risk; will the $200,000 I am asking for as part of my claim still be protected by the State Farm policy, in accordance to number (f) which states, "damages arising out of any transaction of the insured from which the insured will gain any personal profit or advantage which is not shared equitably by the Condominium/Association members?" I ask this because of these persons prior actions and present actions the monies being asked for will be shared equitably by the Corporation to protect them in the future should Board Members choose not to follow the laws, or supply the Corporation with dishonest information. Again, as a policy owner I would like to know what the policy covers and have these questions answered. This should not be shared with counsel for defendants in that this is my asking for coverage as a Plaintiff and to help me better inform the parties that pay for this policy.

Thanking you in advance for your attention to this matter and I look forward to hearing from you on this question and the other questions posed to you regarding the policy protection clauses, so that I will know what I need to do in petitioning the courts.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 17, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Ms. Molster,

Ms. Molster just another insight for the proposal placed by Mr. Kafader. Asking one person to withdraw a complaint which stressed issues that the Corporation were against would not prevent another member of the Corporation from filing a suit if this were settled without all items being addressed and settled. Secondly, my husband in that he is against these persons running of the Corporation can go back and file a Complaint as a Stockholder, so the proposal placed would not protect State Farm, nor would it protect the Corporation from this never happening again, if these issues are not addressed in a legal forum and the legal laws not defined, and the slander not removed from the website.

In saying this there would be no protection for State Farm or the Corporation, there would only be protection for the invalid board members and the person who was not a Director, or a stockholder of the Corporation.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 17, 2004


Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300
(302) 995-0361 (Telephone)
(302) 995-6330 (Fax)

Dear Ms. Molster,

Earlier today I spoke to Mr. Kafader regarding settling this issue. As it stands now these persons who claim to be legal board members have accused me wrongfully and continue to place such items on the Corporations website to this effect. As I stated previously it has always been my desire to work out these proceedings in the best interest of the Corporation, and to give up my rights, without the other side even desiring to address the issues raised is not a compromise in the best interest of the Corporation

There is a meeting set up for March 25, 2004 to meet with the Corporation informing them of the items setforth in this complaint, making them aware of the deeds done after they requested that this not take place. Thus, in light of this and in light of your not having honored the policy on my behalf of first being accused wrongfully of obtaining a powerwashing company as a Director, and being wrongfully removed from the position of Secretary/Treasurer I am again asking that your offices institute my claim to have my counsel paid for. As a paying policyholder and a person having been wrongfully accused, which continues today by postings on the website I am not willing to give up my rights until my name is cleared and the rules and regulations are agreed to be followed.

Proper notice was instituted to open a claim for counsel to represent me for the accusations made against me and I would like this done. As I stated to Mr. Kafader I've asked the court to Stay these proceedings until such time there can be a meeting of the stockholders giving them the right to implement the procedures of the Corporation within the boundaries of the law. Should the court grant this stay there will be no litigation during this period, and I will then do what the Corporation votes should be done. In that Mr. Kafader was hired to work on behalf of the other persons claiming to be valid Board members I on the other hand would like the same representation, if there is not going to be any negotiations of these proceedings with all valid parties having fair legal representation as the policy provides, and the laws outlined and addressed as well as the removal of the slanderous and inaccurate material is to be removed from the website, then we do not need to try settling this at this time.

However, if state farm chooses to limit its' costs they can pay for my counsel to negotiate with Mr. Kafader the understanding of the laws, and the payment of the items raised, as well as taking into consideration the wishes of the Corporation and the removal of the slanderous and inaccurate material placed on the website.. The meeting set for March 25, 2004 is an open meeting where Mr. Kafader can be present, as well as the Counsel State Farm pays for on my behalf, so that the Corporation can be informed of the correct interpretation of the laws.

As stated, if you are not honoring my claim for payment of counsel please inform me of the appeals process through State Farm, so that I can proceed with this through counsel, or on my own. Hopefully, we would not have to do this.

Should I not hear from State Farm regarding if they would like to wait for the March 25, 2004 meeting, or if they are going to honor the policy on my behalf, or negotiate a fair settlement then I will assume that I will have to petition for this to happen.

Thanking you in advance for your attention to this matter.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 16, 2004


Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300 (Telephone)
(302) 995-6330 (Fax)


Edward Kafader
824 North Market Street
Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Dear Ms. Molster,

Please keep in mind that the two persons who are illegally operating the Emerald Ridge Service Corporation Board are still continually posting false and inaccurate information, per the attached letter. As a means of these false accusations I am insuring that I keep them as documentation in support of my suit filed. These individuals are not only placing State Farm at a risk, but continue to place the Corporation at a risk, by posting inaccurate information.

Sincerely,


Cathy D. Brooks-McCollum
115 Emerald Ride Drive
Bear, DE 19701
(302) 832-2694

**ATTACHMENT**

February 16, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE  19808
(302) 995-0300

Dear Ms. Molster,

Ms. Molster after having received the entire policy it is clear that this policy does cover me as well.  In that you hired Mr. Kafader to defend the other persons, I feel it is in State Farm's best interest to have an independent counsel review the policy and the amended lawsuit on my behalf, as well as the Response to Motion For More Definitive statement, which will outline that my lawsuit was lodged in defense of accusations invalid board members made against me.  In defending myself I then had to show that these persons are the ones that violated the laws and not me.  Thus, I am a Director as stated that filed a complaint in defense of wrongful acts I was accused of.

As I stated in my letter dated February 14, 2004 I would like to have my claim processed so that I can pay to obtain my counsel.  After state farm having the policy reviewed by independent counsel and confirms that I too am covered if you do not want to pay for two separate counsels for the Plaintiff and Defendants we can negotiate payment amongst State Farm and myself, or we can negotiate settlement amongst the counsel I obtain and Mr. Kafader.

However, I believe it would be cheaper for State Farm to settle this dispute without their having to pay for two separate counsels.  The amount of my current costs and expenses paid to date are $1,120.16, plus the damages asked for in the lawsuit. The amount to retain my counsel would be $2,000 to negotiate settlement and $5,000 for entry of an appearance to argue my case in court.  The later would be more expensive for State Farm.  State Farm can have whichever counsel they elect to outline a fair settlement based on the slander and harassment I received, the damage to the community, as well for the costs and expenses incurred.  This settlement should also include costs incurred by these defendants through the Corporate Counsel having tried to settle this issue on behalf of the Corporation.

As part of any settlement by state farm it would have to include the removal of the slanderous and mis-information material from the website.  In addition to this there will have to be a document drawn up by independent counsel outlining the true meanings of the rules and regulations addressed by Plaintiff (myself) in the Complaint.

Should your response Ms. Molster not be to honor the policy on my behalf, can you please give me the procedure for filing an appeals process through State Farm, thus having the policy interpreted for yourself as to the terms you outlined in your letter, and which the policy outlines, to clarify that you do not only have to be a defendant in defending accusations of wrongful doings.

Thanking you in advance for your attention to this matter.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

February 14, 2004

Ms. Glenna Molster
State Farm Insurance Companies
3540 Old Capital Trail
P.O. Box 5070
Wilmington, DE 19808
(302) 995-0300

Dear Ms. Molster,

On Thursday, February 12, 2004 I had consultation with counsel. In having this consultation the letter you sent to my attention dated February 9, 2004 was reviewed by him. According to the third paragraph of your letter I was advised as I originally thought, I too am covered for these proceedings through the state farm policy. Because I did not have the entire policy for review I'm not sure if there were any other wording that would thus exclude me. In that there are time limits for responses to the court I would like to receive a full copy of the policy prior to the time expiring, for their review as well. The copy does not have to be certified as you state, this can come later.

Your letter states, "We will pay those sums if the insured becomes legally obligated to pay as damages because of the wrongful acts committed by an insured solely in the conduct of their management responsibilities for the Condominium Association." The option goes on to indicate which items are not covered, as well as defining the "directors and officers" and other pertinent language within the policy.

Wrongful acts do not have to be acts in which only defendants are defending. I lodged this lawsuit as a plaintiff, because some of these Plaintiffs who claimed they were valid directors informed me that they were not going to pay for the power-washing services that I contracted as a director. The other wrongful act I was accused of was that I was wrong for informing the community of the breaking of the laws and the risks it placed to them. As a result of these persons who were not and are not valid directors wrongfully removed me from the position of Secretary/Treasurer. Nevertheless, not being valid directors they were not a valid board that had the ability to remove me. Therefore, as Plaintiff and Director I was wrongfully removed from the positions I held on the board, as well as I was wrongfully told that services I acquired, as a Director would not be paid.

In light of this can you please have an independent counsel review the policy at which time I would like a claim began to pay for my counsel? As it stands now the counsel I would like to obtain would like $2,000 as a means to negotiate a settlement and $5,000 more just to enter his appearance in court.

I've sent this information to Mr. Kafader, asking that we enter into a briefing schedule. However, I thought Mr. Kafader would get back to me at work and when he did not I did send this information to the court, asking for the briefing schedule. When I came home later that evening Mr. Kafader had returned my call and I did inform the court that if we could come up with a briefing schedule without the courts intervention that I would contact them of this.

Thanking you in advance for your immediate attention to this matter, and I look forward to your processing my claim that I filed with your company earlier this month based on the aforementioned. I'm sure you will have this looked into and meet your obligations to all **directors** as the policy allows.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 5, 2004


Ms. Glenna Molster
State Farm Insurance Company
(302) 995-6330 (Fax)

Dear Ms. Molster,

On Friday, the 29th of January I telephoned into State Farm to make a claim as a valid stockholder, at which time I was told that a Complaint was being opened. On Monday, the 2nd of February you called me and informed me that the policy taken out by ERSC only protects Directors and Officers being sued, but does not protect Directors suing. At this time I did inform you that not only was Mr. Shareef not ever a Director of the Corporation, but acting as one, he was not a stockholder. I also informed you at this time that Mrs. Longhurst was also not a Director at that time, which is required by the ERSC Bylaws and Certificate Of Incorporation. I further informed you that neither of these two felt within any other category as being a valid Director/Officer of the Corporation.  However, it appears that State Farm has chosen to obtain coverage for Directors/Officers and non-Directors/non-Officers and non-stockholders of the ERSC, while at the same time refusing to open a claim for myself as a valid Director and stockholder.

During our conversation and through correspondence I further informed you of the laws and rules of ERSC and the General Corporation Laws. Although, we have the General Corporation Laws, if the Bylaws and Certificate Of Incorporation for ERSC provide for broader coverage this should then be used in place of using the General Corporation Laws and it is apparent that this is not and has not been done.

During this correspondence I also asked that State Farm send me a full copy of the Insurance Policy via fax, of which I have not received to date. You implied that you would be sending me a copy of this policy via certified mail and I still have not received that either. As a paying member of this Corporation and as a valid Director I am asking that State Farm please ensure that I receive this by fax today, if this was not sent out certified on the 2nd of February.

As I stated to you via telephone conversation the Complaint lodged against the other parties to this suit in it's amended state has been adjusted to ask for damages sustained due to their slander.

Should the information requested not be received I could only believe that it is not State Farms intention to provide me with this information, based on the inaccurate and false information supplied to you. As a member of the Corporation and a valid member of the Board I am entitled to all the information I requested from you, including but not limited to. I further asked that you provide me with the claim filed with State Farm and have not received this.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

# EXHIBIT C

## Olson, Marvin C.

| | |
|---|---|
| **From:** | Don Gouge [dongouge@magpage.com] |
| **Sent:** | Wednesday, March 31, 2004 5:26 PM |
| **To:** | 'Olson, Marvin C.' |
| **Subject:** | RE: ERSC |

Mike, I had a fairly long discussion today with Ed Kafader, the State Farm attorney.

I am leaving soon for a short vacation, returning to the office next Wednesday.

I think that it is important for me to meet with the Board, such as it is, ASAP. You can certainly pass this email onto the Board members.

The short answer is that new elections for an entirely new Board must be held. In any event I will be available to discuss upon my return.


PLEASE NOTE MY NEW ADDRESS

Donald L. Gouge, Jr., Esq.
Heiman, Gouge & Kaufman, LLP
800 King Street
Suite 303
Wilmington, DE 19801
302-658-1800
302-658-1473 (Fax)


This e-mail message from Donald L. Gouge, Jr., Esquire is for the sole use of the intended recipient (s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, pleae contact the sender by reply e-mail and destroy all copies of the original message.

-----Original Message-----
From: Olson, Marvin C. [mailto:Marvin.Olson@pseg.com]
Sent: Tuesday, March 30, 2004 12:38 PM
To: 'dongouge@magpage.com'
Subject: ERSC

Don,

As promised, this is brief synopsis of the continuing sage of ERSC Board of
Directors:

Starting June 2003:

Board members J. Guarriello, T. McCormick, and T. Laughery ended their terms
on the
ERSC Board. Note: Still no evidence that they were, in fact, elected to this
term.
See previous E-Mail.

V. Longhurst, K. Shareef remained.
(K. Shareef not on ballot/ not elected to Board in June 2003 election)

General election held...

**EXHIBIT D**

# State Farm Insurance Companies®



March 11, 2004

Larry L. Wilson, CPCU, CLU
Division Claims Manager
1500 State Farm Boulevard
Charlottesville, Virginia 22909
Phone: (434) 872-2810

MS. CATHY BROOKS-MCCOLLUM
115 EMERALD RIDGE DR
BEAR DE 19701

RE:    Claim Number:    08-R337-251
       Insured:         Emerald Ridge Service Corporation

Dear Ms. Brooks-McCollum:

This will acknowledge your letter to our Corporate headquarters dated March 1, 2004.

It is my understanding you are a plaintiff in a lawsuit filed against our named insured, Emerald Ridge. We are providing a defense to the board members under the Director's and Officer's coverage of the corporation's policy. We have tendered this defense in response to your lawsuit filed in Chancery Court. Attorney Ed Kafader has been in contact with you regarding this lawsuit.

We have no contractual obligation to provide you with counsel since you are the plaintiff in this action. State Farm is honoring its contractual obligations under the contract and we have instructed Mr. Kafader to proceed with appropriate discovery. We will also defend any lawsuit filed against this Company as we believe there is no viable cause of action.

Should you have any questions, please contact Attorney Ed Kafader or Team Manager Ed Dillon at (302) 995-0399.

Sincerely,

Larry L. Wilson
State Farm Fire and Casualty Company

# EXHIBIT E

March 10, 2004

Mr. Edward Kafader
824 North Market Street
Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1714 (Fax)

Dear Mr. Kafader,

Sorry the first fax omitted one section.

Please accept this as notification to your clients not to post the minutes of March 2, 2004, stating that they ratify Mr. Kenneth Shareef. Accept this as formal notice that they have and were apprised with the rules governing partnership:

> Delaware Title 6, Commerce and Trade, Subtitle II, Subchapter II, §15-202(c)(1), states as follows: In determining whether a partnership is formed under Section 15-202(a)(i), the following rules apply:
>
> (1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.
>
> Title 6, Commerce and Trade, Subtitle II, Subchapter V, §15-501 also states:
>
> (2) Unless otherwise provided in a statement of partnership existence and in a partnership agreement, a partner is not a co-owner of partnership property and has no interest in specific partnership property. (72 Del. Laws, c. 151, § 1; 72 Del. Laws, c. 390, § 18.)

Perhaps they can limit their liability with Internet postings, and cannot heretoforth claim that they did not know this law.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

# EXHIBIT F

# FERRY, JOSEPH & PEARCE, P.A.

ATTORNEYS AT LAW
824 MARKET STREET
SUITE 904
P. O. BOX 1351

WILMINGTON, DELAWARE 19899

(302) 575-1555

DAVID J. FERRY, JR.*
MICHAEL B. JOSEPH +
ROBERT K. PEARCE
THEODORE J. TACCONELLI *
EDWARD F. KAFADER
JOHN D. MATTEY
RICK S. MILLER
JASON C. POWELL
LISA L. COGGINS **

(*ALSO PA BAR)
(+ALSO NJ BAR)
(**ALSO MA AND NY BARS)

TELEFAX
(302) 575-1714

www.ferryjoseph.com

ARTHUR F. DiSABATINO
(1938-2001)

March 5, 2004

Ms. Cathy Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701

Re: Brooks-McCollum v. Emerald Ridge Service Corporation et al

Dear Ms. Brooks-McCollum:

This letter is a follow up to our phone conversation of March 3, 2004. In that phone conversation, you and I discussed the deletions that you have requested from postings on the Corporation's website. I indicated to you that the Board was willing to delete a reference from the minutes of the January 15, 2004 general meeting in which it was indicated that the Power Wash was improperly bid. In particular, I informed you that the Board was willing to delete the words "that was improperly bided". I informed you that the Board was not willing to make other changes to the website. You informed me that you were not inclined to accept the offer to settle this matter for $1150.

Sincerely,

Edward F. Kafader

EFK/lma

cc: Glenna Molster
    State Farm Ins.

# EXHIBIT G

# FERRY. JOSEPH & PEARCE. P. A.

ATTORNEYS AT LAW
824 MARKET STREET
SUITE 904
P. O. BOX 1351

DAVID J. FERRY. JR.•
MICHAEL B. JOSEPH+
ROBERT K. PEARCE
THEODORE J. TACCONELLI •
EDWARD F. KAFADER
JOHN D. MATTEY
RICK S. MILLER
JASON C. POWELL
LISA L. COGGINS ••

WILMINGTON. DELAWARE 19899

(302) 575-1555

TELEFAX
(302) 575-1714
—
www.ferryjoseph.com
—
ARTHUR F. DiSABATINO
(1938-2001)

(•ALSO PA BAR)
(+ALSO NJ BAR)
(••ALSO MA AND NY BARS)

February 26, 2004

Ms. Cathy Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701

Re: Brooks-McCollum v. Emerald Ridge Service Corporation et al

Dear Ms.Brooks-McCollum:

This letter is a follow up to our phone conversation regarding the above captioned matter. I have tried to reach you by telephone, but have been unsuccessful. Last Tuesday you informed me that you might be willing to consider settling the above captioned matter in return for a payment of legal expenses and other expenses connected with this lawsuit which amounted to approximately $1150. I have spoken with State Farm in this matter and they are willing to make a payment of approximately $1150 to you in return for settlement of the above captioned matter. As I have explained to you, State Farm is willing to consider settlement of this matter in return for payment of $1150 strictly for the purposes of minimizing its exposure for legal expenses in this matter. In the event you are willing to settle this matter for the amount agreed upon, settlement documents will be prepared. Those settlement documents will indicate that none of the defendants is admitting liability in this matter to you, and in fact, continues to deny any liability to you. However, State Farm is willing to make a payment in the approximate amount of $1150 to you to settle this matter **at this juncture.**

You and I had some discussion about the possibility of holding off on settlement in this matter until you could meet with other stockholders of the corporation to discuss possible settlement. I informed you that this lawsuit is a lawsuit brought by you. It is not a class action lawsuit, nor is it a derivative lawsuit. Therefore, it is not necessary for you to obtain any agreement by fellow stockholders in the corporation regarding settlement. However, you are obviously entitled to speak to whomever you desire regarding settlement in this matter, whether it be a shareholder, third party or person with no relationship to this lawsuit at all.

Ms. Cathy Brooks-McCollum
Emerald Ridge
February 26, 2004
Page 2

As I have already indicated, State Farm is willing to consider settlement in this matter for the purpose of minimizing the amount of expense that it will be put to to defend this suit. This is the sole and determining factor for State Farm's willingness to extend an offer of settlement in this case. Unfortunately, if there is a lengthy delay between the time of extension of this offer of settlement and the time of actual settlement, it appears State Farm will continue to expend fairly substantial sums of money in my representation of the defendants. In particular, I receive almost daily correspondence from you regarding this case. It seems to me that it is quite likely that you will continue to send correspondence and pleadings to me between the time of the extension via this letter and time of final settlement. Therefore, I am indicating to you that this offer to settle this matter is open only for 10 days from the date of this letter. If I do not hear from you by the expiration of that time, the offer will be withdrawn and no other offer will be made to settle this case. Therefore, I would suggest that you seriously consider this matter and let me know in the next 10 days. State Farm will not be making another offer to settle this case at sometime in the future.

Personnel at State Farm have informed me that they have continued to receive correspondence from you regarding this case. I am not sure of the reason for your correspondence, but would request that you send any correspondence or pleadings in this matter directly to me and that you refrain from sending them to State Farm or my clients directly.

I know that you feel that State Farm is somehow obligated to defray your legal expenses or to pay for the cost of an attorney to represent you in this matter. State Farm is defraying the cost of legal expenses incurred by the defendants in this matter and is obligated to do so. However, it is not obligated to defray the cost of legal expenses or the cost of legal representation of the plaintiffs who have instituted suits against its insureds. State Farm is not obligated to do so under its contract with Emerald Ridge Service Corporation.

Please let me hear from you regarding this matter.

Sincerely,

Edward F. Kafader

EFK/lma
cc: Glenna Molster
     State Farm Ins.

# EXHIBIT H

March 7, 2004

Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 904
Wilmington, DE  19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Dear Mr. Kafader,

This is a follow-up to our conversation regarding payment for the power wash services. At the time the parties operating the
Board Of Directors for Emerald Ridge Service Corporation illegally send payment to me for the power-wash I will send a
receipt indicating payment was made for these services, notarized if needed. If notary is needed please include and amount
of $3.00 for this. In that this Board and none of the Boards after the first appointed by the Builder is valid I will not be
conducting any business with these persons, including but not limited to provided the with any personal records.
Furthermore, I will not be paying any dues until such time there is a valid board put in place per the court proceedings. As it
stands the consensus of many of the members is that they will not be paying any dues until these issues are cleared up and
they know a valid board is in place per a court order.

Thus, please accept this as confirmation that I will provide all the necessary documents upon payment. In that I was and am
a Director at this time (although not valid as the others are not) and these services were provided as a Director the records are
in my possession as a Director and will remain so until such time the court orders the status of the current Corporation.
Anyone wanting to review said records may do so at my resident.

As Maudy Melville rescinded her resignation, Plaintiff did as well, however she did so by informing all parties. Ms. Melville
did not. The attached, shows Plaintiffs rescinding of her resignation and by Ms. Melville being allowed to rescind her
resignation this sets precedent. Not that any of this matters since we have not had a valid Board in years.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

March 5, 2004


Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 904
Wilmington, DE  19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Just to inform you that your clients circulated through the federal mail system the invalid posting they
have on the website stating that the Chancery Court lawsuit was amended six times by me and still
counting.  I can hardly wait to see your defense for these person's actions.

I'm almost hoping that State Farm defends them on the Superior Court Case.  However, since it is
Internet Advertising liability if they follow the policy this time they will not have the policy to stand
behind.

I believe that the members of the Corporation who normally would not come to meetings (being most of
them) will show up at this meeting.  When this happens and the members sign the petitions to boot the
inactive board out, and possibly keep me as an active member, if I choose to stay on, I will be sure to
provide this information to Chancery Court and the Superior Court.

Given that State Farm did not follow the General Corporation Laws this will also aide me in the case
against them.

You can be assured that on the liability case for Internet false and misleading advertisement I will not be
dropping this under any circumstances, until I receive money damages for these actions.  The behavior
of your clients is reckless, vindictive and malicious and I will prove this to the support I have to the jury.

If needed I will have these cases transferred to District Court up to the U.S. Supreme Court to show that
I was working in the best interest of myself as a stockholder and the Corporation.

Sincerely,


Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

March 2, 2004


Mr. Edward Kafader
(302) 575-1714

RE:     Emerald Ridge Service Corporation and Telephone Conversation Of Today

Dear Mr. Kafader,

This will confirm our conversation today regarding your proposal of settling the case in Chancery Court in that inaccurate information referencing me remains on a public website. Please accept this letter as further confirmation that I will not be willing to accept any type of settlement where information is displayed on a Corporate Website causing damage to me and my family. As stated the March 25, 2004 meeting will determine if the Corporation is in agreement with the actions of these individuals or not, and if it is determined that they are there will be a separate lawsuit lodged against the Corporation. However, I only feel it fair prior to filing suit against the Corporation that I give them the choice to address this situation. In that some members of the Corporation sent a representative to my home to get clarification on the issues outlined I could only believe that they are not in agreement with the actions of these individuals. After such time the Corporation will have to vote on the removal of the items, or the closing down of the Website, which will then leave no reason for my settling with your clients or the insurance Company.

During the conversation with the member of the Community that came by he stressed to me that the members thought this was had been taken care of per their wishes at the last meeting. Most members evidently are shocked to know that these events were and are still going on against their wishes, which began over $185.00 an now have escalated in the area of thousands by invalid board members.

What is more shocking is that State Farm actually processed a claim against a Corporate Policy, prior to verifying or making sure that, Title 8, Chapter 1, Subchapter IV, Section 145(d) of the General Corporation laws were not followed to determine indemnification or if they wanted this, which states, "a majority vote of the directors who are not parties to such action, suit or proceeding….". can decide if a person is a valid director to be indemnified"……..(3) "if there are no such directors, or if such directors so direct, by independent legal counsel in written opinion, or (4) by the stockholders".

Corporate Counsel (who serves as independent counsel) gave his independent opinion and State Farm and defendants ignored it and did as they felt against corporate counsels advise. The way all of this has been handled by State Farm has placed them at a legal liability and our Corporation. As it stands a stranger off the street can process a claim with State Farm against our policy claiming to be a Director and State Farm will process the claim.

As I said this entire procedure was not handled properly and I am the only valid Director at this point with the Corporation being run by persons illegally, of which the Corporation was not informed. It is apparent that these illegal persons appointed someone else since this time without notifying the Corporation of this, and the fact that a valid election needed to be had.

Therefore, please take this letter as denial of the proposal as placed to me. There was a letter sent to your attention outlining the dollar amounts that must be paid to settle this claim. The letter sent to your attention the items that must be removed from the Website. One particular item posted this past weekend by Mr. Renford is clearly a lie, where it states the case in Chancery Court has been amended six times (you and I know that this is clearly a lie). If all legal letters from Don Gouge are not going to be posted then the ones posted need to be removed. The letter and minutes stating my removal and the illegal meeting they had with the illegal board must be removed. However, in that you stated that this information would not be removed by these individuals I'm confident after my meeting last evening that the Corporation will see to the removal of the letters, and the possible shutting down of the website.

In that Mr. Brevett stated the Chancery Court Complaint has been amended six times, he can however state two times if he so desires, because this will be amended next week removing the charges of slander, at which time I will re-file those charges in Superior Court in that this is not for violations of the Corporate and State laws, as well as my wanting a jury trial for these charges.

In the meantime, there is no need for you to send confirmation to the discussion we had earlier. In that I contacted State Farms Chairman as I was directed should I not hear from a representative of theirs by Friday, the early part of next week I will be filing a Complaint in Superior Court regarding the violations they have committed and the liability they have placed our Corporation and it's members in.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

March 1, 2004


Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 1351
Wilmington, DE  19899
(302) 575-1555
(302) 575-1714


Dear Mr. Kafader,

I've sent the attached to State Farms Corporate Office to the Chairman, as I was advised this is where all appeals should go.  This is an attempt for Corporate to decide on this appeal, or to settle this claim, as outlined in the two letters with the issues raised being part of the appeal process.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

February 29, 2004

Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 904
Wilmington, DE  19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Dear Mr. Kafader,

Mr. Kafader the issues I brought to your attention in the earlier e-mail should be addressed to your clients.  Mr. Brevett and Mr. Martell need to step down from the board, in that they were not properly elected.  Mr. Shareef did the right thing after Corporate Counsel made him aware that only valid officers can make decisions.  With Mr. Brevett and Mr. Martell actually making decisions and writing checks after it being brought to their attention by Corporate Counsel and me is clearly acting reckless.  If Ms. Melville claims that she did not resign at the last meeting she and I should be the only members that remain.  However, if determined that she did resign without conditions as I did then she too is acting recklessly.

Your clients can do as they please and choose, but as Don Gouge stated how can he be effective if they would not listen to him. If you have a copy of the Bylaws and ask them how they arrived at their position you will come to the same conclusion as Corporate Counsel there is no valid Board and these persons are not valid members of the Board.

Originally, I was not going to bring this up until the court hearing, but the Corporation is now in danger to be sued because of persons acting recklessly as Officers whom are not.  As I said at least Mr. Shareef did the right thing and resigned at the advise of Mr. Gouge, but Mr. Brevett and Mrs. Melville chose not to do the right thing, which would have been to do what I've done have a community meeting and inform them of all the violations and let them correct them.

Good Luck,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE  19701
(302) 832-2694

February 29, 2004

Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 904
Wilmington, DE 19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Dear Mr. Kafader,

Mr. Kafader I'm going to point out a few things for you and State Farm to help show you how reckless your clients have acted and are acting.

You have Mr. Renford Brevett who is not a valid Board member you have Mr. Mark Martell who is not a valid board member. The community elected neither of these persons as the Bylaws require. You have Maudy Melville being the only valid board member, without having a valid board.

You have me who remains a valid board member and who Renford Brevett has taken the liberty to remove me for the list of officers. In that Renford Brevett who is acting on his could not officially remove me from any position in that we did not have a valid Board this will make another error.

You may want to ask Renford did he ever receive an official letter of resignation from me. The answer would have to me no. If you see by the attached Website posting attached to the letter dated January 11, 2004 from Don Gouge underlined, this states what conditions I will resign under from the Board. In that none of those conditions were met and I clearly state my official resignation will be sent upon those conditions being met your client has continued and continues to behave recklessly. So I am still a member of the Board, and I just sit back while Mr. Renford Brevett continues to dig his hole further.

Don concurs that he believes that I have elected to resign, but Don was also under the impression that the persons acting as a Board were willing to put these events behind them.

You may also want to review the underlined text in Don's e-mail dated January 11th, where he states he was not give full fact. Matter of fact you may want to review all the underlined text. You also should note on each e-mail it clearly states that the documents cannot be distributed, but Ken and Renford chose to ignore this in addition to posting lies to an open website.

You may be wise to advise your clients to add my name back to the board to the position of Treasurer/Secretary, as a means for them to do some type of damage control. You also may want to advise them not to utilize the Corporations Website as a means to display partial and distorted information. You will see that they did not post any of the following letters from Don Gouge. He clearly says in his January 11, 2004 letter that only valid members can remove an officer, and further states where the laws and rules can be found.

I'm trying to be fair to you and State Farm, because State Farm will be wasting their monies with these individuals who are a Board or valid Board. In that these persons were informed of their illegal activity and violations of the law sometime ago, I do believe the policy does not cover them. The policy is clear in this section and I will be asking the court to award any costs the insurance pay for these individuals be reimbursed to State Farm. Also, should a claim have to be filed against State Farm all of this will come up before the jury when asking determination of coverage for which persons.

My family and I brought in a development because of the Deed Restrictions and Rules and Regulations and if trying to follow the laws make me a bad person then I can't do anything about that. Your clients need to remove the material from the website, they need to add me back to Secretary/Treasurer and all the other payments need to be made in order for this to go away, and their not further risk the Corporation.

Good Luck,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

To: Mr. Kafader

From: Cathy Brooks-McCollum

Date: 2/28/04

Subject: Illegal members

Mr. Kafader this is further inaccurate postings to the corporations website.

First the lawsuit was not amended how Mr. Brevett states. At this point you need to control your clients, what they have now done is placed the Corporation at Risk, I will be filing a separate suit against the Corportion thanks to your client for false advertising and slander.

you need to control them.

Here is my reply. This is what Corporate Counsel had to deal with

February 28, 2004


Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 1351
Wilmington, DE  19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Dear Mr. Kafader,

First, I would like to ask if you speak to your clients at all.  I will only assume in that they are continuing to act recklessly that they could not be taking your advice as they ignored Corporate Counsels Advice.

The questions presented to Ms. Molster and now being presented to you and will be presented to Chancery Court and the Supreme Court if needed is as follows:

- On Page 22 of the policy number 16 it sates that the coverage will not protect any parties if "personal injury or advertising injury, (a) arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity" (b) "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured:

- The policy states in 2(a) of the protection for Directors and Officers – any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts; and 2(g) violation of any federal or state civil rights law or local ordinance, including but not limited to discriminate on account of race, religion, or sex or age.

These parties are claiming that they are valid Directors, knowing that they are violating the laws making decisions as invalid Directors and continuing to slander me and my knowing that I can prove all facts stated in the Complaint, will show they violated the terms of the insurance policy, the community laws and the State and some Federal laws.

In State Farms refusal to settle this complaint in accordance to the damage suffered and pay for my legal fees and costs in accordance to the policy, and my having followed their policy in trying to have them answer the questions raised and honor said policy, and give me an appeals process, I can only believe that State Farm is also in agreement with these actions by these individuals.

In that the meeting being held on the 25th of March is to determine if the Corporation agrees with the misinformation, slanderous postings on the Corporate Website and violation of the laws this will enable me to determine if a separate liable claim will be filed against the Corporation for their allowing false advertising.

Therefore, I will be instituting a claim in the Court Of Common Pleas, asking for a Jury Trial as a means to have them determine what the Courts interpretation of wrongful acts of Directors of, which do not state Plaintiffs or Defendants.

Based on the Corporations view and opinion I will then either file a separate Complaint of slander against them, or they will have to decide their view based on information supplied by their attorney (Corporate Counsel who acts on their behalf), who agreed that we have an invalid board, that they knew about this and chose not to inform the Corporation, or step down, as Ken Shareef did.  This knowing violation of the law, and dishonesty generated by these persons will be dealt with in court.

The cost of the Complaint as you stated will and has ended up being higher.  This weekend alone the legal fees generated on this end as a result of your client's reckless actions are approximately $300.00 and $8.40 for mailings.  So if State Farm would like to limit their liability they need to have the parties they are representing cease their actions.  State Farm now has an option to have these persons remove the information from the website, pay the previous prices quoted, plus the $308.40 listed here which will end their costs now.  This will leave the violations and the removal of the invalid officers up to the Corporation.  Therefore, the only proposal I'm willing to accept is $1,559.92 for my costs, $1,697.50 for the Corporations Counsel, and the removal of all items from the website.  If this is not acceptable we have nothing else to discuss until the court date.  State Farm and you need to decide this ASAP, because your clients are acting recklessly making costs rise.

I must say that right now I'm angry, because one thing I do not do is lie on anyone, or place information on any open space without support. There stands to be three separate lawsuits based on ones actions, State Farm needs to determine immediately if this is worth it. I also no that settlements can't be used as evidence in any court proceedings. Therefore, it is not I who needs to make a decision quickly, it is State Farm. If they are in agreement with this I will sign the document releasing this suit against these individuals, with it only saying that they do not admit to any liability. I will not sign anything saying that they are not and were not liable. The Corporations Counsel would have to advise the community on his response to this entire proceedings. If all the documentation is removed prior to the meeting and this is implemented in the agreement that it will not be reposted at anytime as stated this will also release the risk of there being a suit against the Corporation. The Corporation will not have to risk being liable for one persons actions. This will then release the liability and the claim of a lawsuit against State Farm to pay for any further legal fees of mine surrounding this issue.

Once again, State Farm is the only person at risk to lose an abundance of money to defend persons that have no defense.

Sincerely,

Cathy Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 22, 2004

Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555 (Telephone)
(302) 575-1714 (Fax)

Dear Mr. Kafader,

First, I'd like to state that in that you were hired to represent the Defendants in the case I filed it is a conflict for State Farm to expect me to address questions that are not in relationship to the lawsuit through you. The questions posed to state farm ask for clarification on sections of the policy of which I pay for and am an insured. Furthermore, I asked them of their appeals process.

Second, State Farm should review the policy further. Page 26, Section II Designation Of Insured 1(c) If you are designated in the Declarations as: "an organization other than a partnership or joint venture, you are an insured. Your executive officers, directors and trustees are insured's but only with respect to their duties as your officers, directors or trustees. Your stockholders are also insured's but only with respect to their liability as stockholders." In that the actions of your clients does bring liability against me as a stockholder, and may result in my dues being raised for their actions, this would be in respect to the liability placed on me and the other stockholders. In that there are persons running the Corporation as an unofficial board, and persons were running the Corporation that was not a stockholder and acting as President, this has placed a broad liability on the Corporation and me as stockholders. As I said this is why it would be best that an independent person handle the questions posed to State Farm.

As stated, Emerald Ridge Service Corporation is a stockholder Corporation. My husband and I are stockholders, in addition to my filing the claim as a valid Director. Also, as I stated wrongful acts do not state wrongful acts by Defendant Directors, it states by Directors.

In that state farm is evidently stating that I am not insured, and page 29, Section 4 Legal Action would not and could not apply to me in that I have met all the terms of the policy and have complied with them, trying to have clarification on sections of the policy by an independent person (not working for the defendants) and by asking State Farm and their representative for the appeals process they will leave me no other choice but to bring suit against them for their not following the policy. Emerald Ridge Service Corporation exists of 141 homes/stockholders and their owners, and I am one of those. Therefore, in that I am a person under the policy I do and should expect to have my questions answered. State Farm cannot expect that Plaintiffs, Defendants and stockholders all be represented by the same counsel for any lawsuit, and hopefully I will not have to result in suing them in order for them to follow their own policy.

This letter is only being written to you at this time, however if this case is not settled I do expect that State Farm will supply me with another contact regarding clarification on what they feel certain clauses mean, and answer my questions as a policyholder. If it is determined that this case will not be settled I will not be corresponding with you any further regarding any issues I have with State Farm, as this is a separate issue.

Please forward this on to the appropriate persons at State Farm and have them give me the appeals process for disputes against the policy, so that this can be handled in this manner prior to going to court if they would like.

Sincerely,

Cathy D. Brooks-McCollum

| TO: | Edward Kafader |
|---|---|
| FAX: | (302) 575-1714 |
| FROM: | Cathy D. Brooks-McCollum |
| DATE: | February 27, 2004 |
| SUBJECT: | Emerald Ridge Service Corporation |

Mr. Kafader I'm writing this letter for clarification just in case we miss one another in that I will be leaving the office relatively early today.

I'm not exactly sure as what there would be to discuss concerning the advertising of false material by members of the Corporation claiming to be board members. However, it is clear by the supporting documentation that I have in my possession that Corporate Counsels opinion is much different then that of the first letter sent by him, where he was supplied inaccurate information and no support on the questions presented before him. Furthermore, Corporate Counsel sent further documents supporting that he was not supplied all information and where he changed his opinion on many things after having been given full supporting documentation and none of those documents were posted to the website. These parties selectively posted information to the Corporations website as a means to deceive the members and so they would not know the true facts.

Nevertheless, as I stated I am willing to forgo many things, but I will not tolerate lies being placed on a website for all to view and if this is not removed I will not be willing to relinquish my rights to sue against these individuals for false advertisement and supplying inaccurate information. These acts were dishonest, fraudulent, and malicious and have resulted in advertising injury, out of oral and written publication of material, which was and is false and their knowing of it being false. Furthermore, these actions are not covered under the policy according to page 22, number 16, and my willingness to drop the suit at all does not remove the damage these persons caused as a result of their actions. These actions are also the actions, which further generated the bill supplied by the corporate counsel, where they gave him false and inaccurate information of which the Corporation should not have to bear the burden. It is bad enough our dues will more or less increase as a result of these actions, however the monies collected for maintenance should not have to be used for reckless behavior for persons not willing or wanting to follow the laws.

The insurance company can accept this gesture of good faith and meet me half way as well as these parties who know they supplied false information or we can have the judge in Chancery Court and the Supreme Court of needed determine the case based on evidence. In the end I still am the one that comes out at the bottom in that as I've stated there was damage done to my family and myself based on these lies, and that can't be repaired, but as a means not to hurt the Corporation any further I'm willing to drop the costs for damages I've suffered, and the Corporation as a result of this false and dishonest behavior.

Mr. Kafader please do not feel that none of this information is not and has not been reviewed by counsel. My ex-husband is a Senator and attorney, my father-in-law and two brother-in-laws. It is they who further advised me to have the attorney in Delaware review the information and get his suggestion based on Delaware law, after I pointed out each and everything. So I do know that I'm being very fair to the insurance company and these parties that intentionally tried to be vindictive and malicious because I was informing the Corporation of behavior not deemed in its' best interest.

Therefore, as I stated the release would have to state in return for my giving up my rights to sue these individuals, that all these postings will be removed from the website and not be replaced, that my costs will be paid and that of the Corporations Counsels bill, which is stated in the lawsuit. However, the minutes can be re-posted with accurate information, and not placing blame for any of these proceedings on any one person, as the current one does. The other issues will be those of which the Corporation will have to address and decide what they will do. I will not be the only one giving up anything in these proceedings, because I was the only person doing what was right.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 27, 2004


Mr. Edward Kafader
824 Market Street
Suite 904
P.O. Box 1351
Wilmington, DE  19899
(302) 575-1555
(302) 575-1714


Dear Mr. Kafader,

Before I run back out I wanted to reply to your letter of February 26, 2004 received today. As I fully understand that this is not a class action lawsuit this does not prevent me as a Director in working on behalf of the stockholders of Emerald Ridge Service Corporation and in their best interest. The parties you represent are not valid Directors and in that Ms. Melville and I are the only persons who were and are valid Directors of the Corporation it is an obligation to do what is right for the corporation. Therefore, although the lawsuit was filed by me, as a Director I am not prevented from asking for damages on behalf of all the members of the Corporation for the acts committed by parties claiming and continuing to claim that they are a valid board or valid Directors for that matter.

Secondly, the other correspondence sent to State Farm was sent to them as a policyholder. In that I pay monies toward this policy I'm not prevented from asking State Farm to clarify clauses in the policy. If it is their intention not to answer the questions posed to them as a policyholder I will handle this in another format. In all insurance policies there is an appeal process, and in that you represent the invalid parties acting as board members, questions I have regarding the policy should not be answered by you, but as I have stressed should be presented before an independent person.

As it stands now I have sent you a letter earlier today and if you, your clients and State Farm are not willing to agree to the terms I have outlined then there is no settlement. I don't see a settlement in sight and I would have to concur that State Farm should not extend any further offers, because I will not be willing to accept any further offers. (Furthermore, State Farm did not make an offer to settle I did, as it has been only me from the onset trying to do what is best for the Corporation -- who pays for the policy in question)

However, I will be instituting a separate complaint in the Court Of Common Please against State Farm for their not honoring the insurance policy for all parties if this case does have to continue. This policy does not state anywhere within it that it protects only Defendants who have been wrongfully accused, and the persons I had review the policy have concurred with me and this is another whole matter. It appears that your clients and State Farm would have me be the only party to make any type of concessions for their behavior and this is not going to happen. I'm sure this is an issue, which has never come up in the courts where one Director who was falsely accused, sued the other parties that falsely accused her. So it would be State Farms position that they only have had to pay for Defendants, but the wording of the policy is clear, and can't be misinterpreted.

So as you state there is no further need to correspond if all parties are not willing to give some concessions. As I stated State Farm will have to be willing to reimburse the Corporation for the fees incurred at the negligence of the persons acting as Directors, in addition to the costs I've incurred. The persons acting as Board of Directors will have to remove the false advertising placed on the website by them and may repost the minutes only after they have removed the inaccurate items placed in them. If they do not have votes that

state 71 homes voted then this would not be unanimous, (and I know there were not votes taken at the meeting held), in addition to the other items outlined. If the persons in question are not willing to remove the legal postings, or post all the letters from Don Gouge to the Website, then as I said I'm not willing to settle this claim anyway.

Thus, if we can't come to a middle ground with all parties trying to take responsibility, there is no need to wait 10 days to withdraw the offer, you may do so now, and if I do not hear from you soon or State Farm regarding the questions posed to them to clarify certain policy related issues, where I'm a policy holder, I will then be instituting a second claim in 10 days and take the non-response to mean that State Farm has no intention of answering the questions posed to them.

However, I do believe that the parties acting as invalid Directors will be voted out at the meeting to be held, as well as the Corporation will concur that they were mislead. I also believe that in order for the stockholders to limit their liability they will agree that the postings should come down after reviewing the other documents from Corporate Counsel not posted. In the end the only parties that will be left defending themselves are the persons acting as Board members and who are not.

Hopefully, we will be able to do what is best for State Farm, the Corporation and all parties, not just the invalid Board members, who have made decisions that have and will continue to hurt the Corporation.

Have a nice weekend and perhaps State Farm will make these parties who are acting fraudulently settle this claim and limit their liability, as well as the Corporation in which I live. Also, if State Farm is willing to meet half way, let's try to do this without trying to threaten one another or intimidate one another. I found this letter quite threatening, especially since I made the offer to reduce State Farms costs.

The costs as outlined are $1,251.52, and $1,697.50 for the legal costs accrued as a result of your clients who were not valid Directors. If you review the bill you will note that Ken Shareef was one party who incurred these fees and not only is or was he not a Director, he is not a stockholder, and did not have a right to incur costs on behalf of the Corporation. Furthermore, Mr. Shareef who was acting as President illegally also asked that Don Gouge attend the community meeting, of which he and none of the parties were willing to listen to his advice stressed at the meeting and after. This and the removal of the items from the website is all it takes to settle this lawsuit and the Corporation can then do what they want to enforce the rules. I'm sure the courts will concur that Mr. Shareef should not have been President, nevertheless acting as a Director, trying to remove a valid Director and stockholder, because he did not like her enforcing the rules and regulations of the Corporation and the State.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302)832-2694

TO:　　　　　Edward Kafader

FAX:　　　　(302) 575-1714

FROM:　　　Cathy D. Brooks-McCollum

DATE:　　　February 26, 2004

SUBJECT:　Emerald Ridge Service Corporation

Attached, please find the postings to the Corporations website, which consist of inaccurate information being supplied to the Corporation and before any settlement is considered must be removed and not re-posted. The minutes can be re-posted without stating the information circled as fact in that this to is inaccurate information and omits several things.

The total amount owed to Cathy D. Brooks-McCollum is $1,251.52 to settle this lawsuit. Also, please find the attached bill which was incurred as a result of these inaccurate postings which the Corporation forwarded to my attention which should also be settled as part of this lawsuit and paid to the Corporation, so that it will not have to come out of the General fund. The total amount charged by the Corporation attorney is $1,697.50 for trying to rectify this situation, which should have been presented before the corporation. This check should be paid to Donald Gouge on behalf of Emerald Ridge Service Corporation. This would make the total outlay for State Farm to be $2,949.02.

I feel that this is an amicable solution, where the Corporation is not hurt and that no slander remains on the website. If it is not agreed for all parties to give a little and concede to the small price outlined above, especially the slander and the counsels costs for having to be dragged into this, then we will not have a settlement. As I have always demonstrated that I was willing to resolve this for the smallest amount possible and this is very small considering these persons placed advertising on an open website which caused harm to me and my family, which is false and not accurate.

If we can come to a resolution for these two items we can dissolve this lawsuit and allow the Corporation to decide how to handle the other issues raised before it.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

February 12, 2004

Ferry, Joseph and Pearce
Mr. Edward Kafader
824 North Market Street
Suite 904
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555
(302) 575-1714 (Fax)

Dear Mr. Kafader,

Can your offices please supply me with the letter sent to the courts ex-parte and the Motion For Definitive Statement also sent ex-parte.

Also, I would like to set a briefing statement in order to have my motion to compel answered by the court. Therefore, can we please set a briefing schedule so that this can be done? If it is not your desire to enter into a briefing schedule can you please inform me of this so that I can petition the court to schedule a briefing schedule? I ask this so that the Corporation can go on with its business and I can inform the Corporation of the current status of the community. In that we do not have a board or valid persons making decisions on behalf of the Corporation someone needs to schedule a meeting to have the Corporation first vote on new members, then vote on their view of indemnification and the other members making financial decisions without informing the Corporation and receiving a valid vote by the Corporation as to how they would like to proceed with these proceedings.

As a stockholder I feel that I have a duty to set up a Community meeting and inform the Corporation of this, and the laws provide for us to do this.

In that you work on behalf of State Farm Insurance Corporation I also ask that if it is not your recommendation that we enter into briefing schedules and that we try to resolve these issues, to please inform me of this as well. Currently, with the additional legal services and advice given my costs aside from the hours taken from family members are $1,120.16 and as a means for me to cost the Corporation to exhaust the funds in the general account to pay for my defense I am open to working out a settlement with State Farm. As it stands for counsel to work out a settlement the retainer would be $2,000, and to enter an appearance would be in excess of $5,000. In that my goal and the Corporations counsel was to protect the Corporation I really do not want to have to ask the court to compel these defendants to abide by the Bylaws and Certificate Of Corporation. I informed counsel that I would get back to him mid next week as to how I would like to proceed with this. If is your desire to work for the best settlement for State Farm I am open to dialogue with you as not to increase the legal fees to be incurred.

Should I not hear from you prior to mid next week I could only believe that it is not your desire to schedule a briefing schedule or discuss a settlement for this case and will petition the court to proceed with the briefing schedule.

Also, from the February 9, 2004 letter that I read and had counsel read today sent from Ms. Molster it would appear that by the brief outline she supplied to be concerning Directors coverage this would

entitle me to coverage with the insurance policy, in that the suit was originally brought by me as a Director defending the accusations of which the defendants stated I had wrongfully committed in the management of the Emerald Ridge Service Corporation. I will have the entire policy reviewed once received from the corporate office.

Thanking you in advance for your attention to this matter.

Sincerely,

Cathy D. Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701
(302) 832-2694

# FERRY, JOSEPH & PEARCE, P.A.

ATTORNEYS AT LAW
824 MARKET STREET
SUITE 904
P. O. BOX 1351

WILMINGTON, DELAWARE 19899

(302) 575-1555

DAVID J. FERRY, JR.•
MICHAEL B. JOSEPH +
ROBERT K. PEARCE
THEODORE J. TACCONELLI •
EDWARD F. KAFADER
JOHN D. MATTEY
RICK S. MILLER
JASON C. POWELL
LISA L. COGGINS • •

(•ALSO PA BAR)
(+ALSO NJ BAR)
(••ALSO MA AND NY BARS)

TELEFAX
(302) 575-1714

www.ferryjoseph.com

ARTHUR F. DiSABATINO
(1936-2001)

February 26, 2004

Ms. Cathy Brooks-McCollum
115 Emerald Ridge Drive
Bear, DE 19701

Re: Brooks-McCollum v. Emerald Ridge Service Corporation et al

Dear Ms.Brooks-McCollum:

This letter is a follow up to our phone conversation regarding the above captioned matter. I have tried to reach you by telephone, but have been unsuccessful. Last Tuesday you informed me that you might be willing to consider settling the above captioned matter in return for a payment of legal expenses and other expenses connected with this lawsuit which amounted to approximately $1150. I have spoken with State Farm in this matter and they are willing to make a payment of approximately $1150 to you in return for settlement of the above captioned matter. As I have explained to you, State Farm is willing to consider settlement of this matter in return for payment of $1150 strictly for the purposes of minimizing its exposure for legal expenses in this matter. In the event you are willing to settle this matter for the amount agreed upon, settlement documents will be prepared. Those settlement documents will indicate that none of the defendants is admitting liability in this matter to you, and in fact, continues to deny any liability to you. However, State Farm is willing to make a payment in the approximate amount of $1150 to you to settle this matter **at this juncture.**

You and I had some discussion about the possibility of holding off on settlement in this matter until you could meet with other stockholders of the corporation to discuss possible settlement. I informed you that this lawsuit is a lawsuit brought by you. It is not a class action lawsuit, nor is it a derivative lawsuit. Therefore, it is not necessary for you to obtain any agreement by fellow stockholders in the corporation regarding settlement. However, you are obviously entitled to speak to whomever you desire regarding settlement in this matter, whether it be a shareholder, third party or person with no relationship to this lawsuit at all.

Ms. Cathy Brooks-McCollum
Emerald Ridge
February 26, 2004
Page 2

As I have already indicated, State Farm is willing to consider settlement in this matter for the purpose of minimizing the amount of expense that it will be put to to defend this suit. This is the sole and determining factor for State Farm's willingness to extend an offer of settlement in this case. Unfortunately, if there is a lengthy delay between the time of extension of this offer of settlement and the time of actual settlement, it appears State Farm will continue to expend fairly substantial sums of money in my representation of the defendants. In particular, I receive almost daily correspondence from you regarding this case. It seems to me that it is quite likely that you will continue to send correspondence and pleadings to me between the time of the extension via this letter and time of final settlement. Therefore, I am indicating to you that this offer to settle this matter is open only for 10 days from the date of this letter. If I do not hear from you by the expiration of that time, the offer will be withdrawn and no other offer will be made to settle this case. Therefore, I would suggest that you seriously consider this matter and let me know in the next 10 days. State Farm will not be making another offer to settle this case at sometime in the future.

Personnel at State Farm have informed me that they have continued to receive correspondence from you regarding this case. I am not sure of the reason for your correspondence, but would request that you send any correspondence or pleadings in this matter directly to me and that you refrain from sending them to State Farm or my clients directly.

I know that you feel that State Farm is somehow obligated to defray your legal expenses or to pay for the cost of an attorney to represent you in this matter. State Farm is defraying the cost of legal expenses incurred by the defendants in this matter and is obligated to do so. However, it is not obligated to defray the cost of legal expenses or the cost of legal representation of the plaintiffs who have instituted suits against its insureds. State Farm is not obligated to do so under its contract with Emerald Ridge Service Corporation.

Please let me hear from you regarding this matter.

Sincerely,

Edward F. Kafader

EFK/lma
cc: Glenna Molster
    State Farm Ins.