# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

Cathy D. Brooks-McCollum
& On behalf of
Emerald Ridge Service Corporation Derivative Action
As a Director
PO Box 12166
Wilmington, DE 19850
(302) 521-1241
mccollumc1@comcast.net
**(PLAINTIFF)**

vs.

State Farm Insurance Company
**(DEFENDANTS)**

**CIVIL ACTION NO: 04-419 (JJF)**

**JURY TRIAL REQUESTED**



FILED

OCT 31 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

ⁿ Scanned

## PLAINTIFF'S OPENING BRIEF

/s/ Cathy D. Brooks-McCollum
PO Box 12166
Wilmington, DE 19850
(302) 521-1241
October 30, 2007

1

## TABLE OF CASES AND CITED AUTHORITIES

Pages

Title 8, Chapter 1, Subchapter IV, Section 145(d) of Delaware's General Corporation laws ....................5

Delaware Title 8, Subchapter IV, Section 141 of the General Corporation Law...........................................5

Delaware Title 8, Subchapter IV, (a) of the General Corporation Law. ......................................................5

Delaware Title 8, Chapter 1, Subchapter IV, Section 145(d)..........................................................................5

Delaware Rules Of Professional Conduct, Sections 1.2, 1.4, 1.7, 1.8, 1.9 and 1.10, 4.3, 5.2, 8.4

Delaware Criminal Codes, Title 11, Part II, Chapter 27, Subchapter II, §2738, Title 11, Part I, Chapter 5, Subchapter II, §621, Title 11, Part I, Chapter 5, §811, §861, §871, §872, §873, §876, §877, §913 §931 §932, §933, §934 §935, §936, §937, §938, §939 ..........................................................................................................12,20,30

Title 18 Insurance Of Delaware CODE

1.2 18 Del.C. Ch. ..............................................................................................................................................10,35,36

18 Del.C. §2304(16) ........................................................................................................................................10,35,36

18 Del.C. §2304(17) ........................................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1 ...............................................................................................................................10,35,36

18 Del.C. §2304(18)1.2.1.1 .............................................................................................................................10,35,36

18 Del.C. §2304(18)1.2.1.2 .............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.3 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.4 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.5 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.6 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.7 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.8 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.9 ............................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.10 ..........................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.11 ..........................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.12 ..........................................................................................................................10,35,36

18 Del.C. §2304(18) 1.2.1.13............................................................................................................................10,35,36

## STATUTES AND REGULATIONS

*Pages*

*Accord, Augat, Inc. v. Collier, 1996 WL 110076 (D. Mass. Feb. 8, 1996* ........................................................... 6

*Alkire v. First National Bank of Parsons, 197 W.Va. 122, 475 S.E.2d 122 (1996)* .......................................... 33

*Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig., MDL No. 834 (D.Ariz* ........................................................ 49

*Athey v. Farmers Ins. Exchange.* ...................................................................................................................... 17

*Atlantic Permanent Federal Savings & Loan Assoc. v. American Casualty Co., 839 F.2d 212 (4th Cir. 1988)*

.............................................................................................................................................................................. 60

*Auber v. Jellen and Auber v. Ins. Corp. of America, 196 W.Va. 168, 469 S.E.2d 104 (1996).* .......................... 56

*Augat, Inc. v. Collier, 1996 WL 110076 (D. Mass. Feb. 8, 1996).* ................................................................... 63

*Ayeni v. Mottola, 35 F.3d 680, 688 n.10 (2d Cir. 1994)* ................................................................................... 63

*Barry v. Barry, 824 F.Supp. 178 (D.Minn. 1973) aff'd., 28 F. 3d 848 (8th Cir. 1994)* ...................................... 5

*Berry v. Nationwide Mut. Fire Ins. Co., 181 W.Va. 168, 381 S.E.2d 367 (1989* ..................................... 31,33,35

*Bivens and §1983* ............................................................................................................................................... 63

*Bivens, 403 U.S. at 407-08 (Harlan, J., concurring)* ......................................................................................... 63

*Blake v. Dierdorff, 856 F.2d 1365 (9th Cir. 1988)* ............................................................................................ 49

*Brown v. Community Moving & Storage and Home Insurance Co., 186 W.Va. 691, 414 S.E.2d 452 (199224)*

.............................................................................................................................................................................. 24

*Caremark International Inc. Derivative Litigation, 698 A.2d 959 (Del.Ch.1996)* ............................................ 61

*Carlson v. Green, 446 U.S. 14, 18-20 (1980)* .................................................................................................... 63

*Carmody v. Toll Brothers Inc., Del. Ch., CA No. 15983 (July 24, 1998)* .......................................................... 60

*Cede & Co. v. Technicolor Inc., 634 A.2d 345 (Del.1993)* ................................................................................ 61

*Charles v. State Farm Mutual Auto. Ins. Co. and State Farm Mutual Auto Ins. Co. v. Muncy,*

*192 W.Va. 293, 452 S.E.2d 384 (1994), quoting W.Va. Code 17D-4-12(g) [1991]* ........................................... 25

*Citadel Holding Corporation v. Roven, 603 A.2d 911 (Del. 1992)* ................................................................... 62

*Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)* ......................................................... 51,55

*Commercial Credit Development Co. v. Scottish Inns, Inc., 69 F.R.D. 110, 117 (E.D. Tenn. 1975)* .............. 57

*Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958)* ..................................................................................... 51,55

*D'Annunzio v. Security-Connecticut Life Ins. Co., 186 W.Va. 39, 410 S.E.2d 275 (1991).* ......................... 22,23

*Dodrill v. Nationwide Mut. Ins. Co., 201 W.Va. 1, 491 S.E.2d 1 (1996)* .............................................28,30,31,35

*Ellis v. Blum, 643 F.2d 68, 84 (2d Cir. 1981)* ................................................................................................... 63

*Elmore v. State Farm Mut. Auto. Ins. Co., 202 W.Va. 430, 504 S.E.2d 893 (1998)* ......................................... 28

*Emery Waterhouse Co. v. Lea, 467 A.2d 986, 994 (Me. 1983) (emphasis added)* ............................................ 21

*Farmers' & Merchants' Bank v. Balboa Insurance Co., 171 W.Va. 390, 299 S.E.2d 1 (1982)* ....................... 22

*Gagne v. Carl Bauer Schraubenfabrick, GmbH, 595 F. Supp. 1081, 1086 n.5 (D. Me. 1984* .......................... 20

*Garnes v. Fleming Landfill, Inc., 186 W.Va. 656, 413 S.E.2d 897 (1991)* ................................................... 33,35

*Gilbert v. United States, 359 F.2d 285, 287 (9th Cir.1966)* ............................................................................ 1,62

*GlenFed Inc., Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1995)* ........................................................................ 50

*Grundy v. Manchester Ins. and Indem. Co.* .......................................................................................... 17,18

*Harter v. Plains Ins. Co., Inc.,* ............................................................................................................... 17

*Hayseeds, Inc. v. State Farm Fire & Casualty, 177 W.Va. 323, 352 S.E.2d 73 (1986).* .............................. 28,30

*Healthco Int'l Inc. 1997 Bankr. LEXIS 465 (Bankr.D.Mass.April 9, 1997)* .......................................... 61

*Heffernan v. Pacific Dunlop GNB Corp., 1992 U.S. App. LEXIS 12595 (7th Cir., June 5, 1992)* .................... 5

*Hensley, et al. v. Erie Ins. Co., 168 W.Va. 172, 283 S.E.2d 227 (1981).* ..................................................... 23,31

*Hibbert v. Hollywood Park, Inc., 457 A.2d 339 (Del. 1983)* .............................................................. 6

*Huggins v. Tri-County Bonding Co. and Nationwide Insurance Co., 175 W.Va. 643, 337 S.E.2d 12 (1985)*

.......................................................................................................................................................... 23,25

*Isaac v. State Farm Mut. Auto. Ins. Co.,522 N.W.2d 752 (S.D. 1994)* ........................................................ 15

*Jenkins v. J.C. Penney Casualty Insurance Company, 167 W.Va. 597, 280 S.E.2d 252 (1981)* ..................... 28

*Kapoor v. Fujisawa Pharmaceutical Co., 1994 Del. Super. LEXIS 233 (May 10, 1994)* ................................ 5

*Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960)* ................................................................. 52,56

*Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988)* ............................... 51,55

*Lipson v. Supercuts, Inc., Civil Action No. 15074 (Del. Ch. Ct., Dec. 10, 1996)* ........................................ 62

*Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994)* .......................................................................................... 52,55

*Livadas v. Bradshaw, 512 U.S. 107 (1994)* .............................................................................................. 54

*Lugar v. Edmonson Oil Co., 457 U.S. 922, 936-37 (1982)* ....................................................................... 63

*MacMillan, Inc. v. Federal Ins. Co., 741 F. Supp. 1079 (S.D.N.Y. 1990)* .................................................. 60

*Marksman Partners, L.P. v. Chantall Pharm., Corp., 927 F. Supp. 1297 (C.D. Cal. 1996* ............................ 49

*Marson Coal Co. v. Ins. Co. of State of Pa., 158 W.Va. 146, 210 S.E.2d 747 (1974)* ................................. 23

*Mayer v. Executive Telecard, Ltd., 705 A.2d 220 (Del. Ch. 1997)* .......................................................... 62

*McCain v. Florida Power Corp., 593 So.2d500 (Fla. 1992)* ................................................................... 45,64

*McClure v. Borne Chemical Co., 292 F.2d 824, 827 (3d Cir.), cert. denied, 368 U.S. 939* ............................ 58

*McCormick v. Allstate Ins. Co., 197 W.Va. 415, 475 S.E.2d 507 (1996)* .................................................. 30

*McCormick v. Allstate Ins. Co., 202 W.Va. 535, 505 S.E.2d 454 (1998)* .................................................. 33

*Megeath v. PLM International, Inc., Case No. 930369 (Cal. Sup. Ct. San Fran., Mar. 18, 1992)* ................. 62

*Messier v. Southbury Training School, 916 F. Supp. 133, 142-146 (D.Conn. 1999)* ..................................... 54

*Miller v. Fluharty and State Farm Mut. Auto. Ins. Co., 201 W.Va. 685, 500 S.E.2d 310 (1997)* ............... 25,30

*Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)* ......................... 23,24

*National Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)* .......... 23,24

*Nationwide Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)* ......... 23

*Neal v. Neumann Medical Center, 667 A.2d 479 (Pa. 1995)* ................................................................... 62

*Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057 (2d Cir. 1977)* ..................................................... 46,64

*Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954)* .............................................................. 52,56

*P.J. Keating Company, 180 B.R. 18 (Bankr. D.Mass. 1995)* ..................................................................... 60

*Paszamant v. Ret. Accounts, Inc. 776 So. 2d 1049 (Fla. 5th DCA 2001)* .................................................... 45,64

*Pereira v. Cogan, 2003 U.S. Dist. Lexis 7818 (S.D.N.Y. 2003)* ........................................................................ 61

*Petit-Clair v. Nelson, 782 A.2d 960 (N.J. Super. Ct. App.Div. 2001)* .................................................. 49,64

*Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972)* .................................................................................. 52,56

*Polan v. Travelers Insurance Company, 156 W.Va. 250, 192 S.E.2d 481 (1972)* ............................................ 23

*Poling v. Motorists Mut. Ins. Co., 192 W.Va. 46, 450 S.E.2d 635 (W.Va. 1994)* ..........................28,30,31,34,24

*Press v. Chemical Invest. Servs. Corp., 166 F.3d 529 (2d Cir. 1999)* ............................................................. 49

*Redyd v. Electronic Data Systems Corp., No. Civ. A. 19467, 2002 WL 1358761 at *3 (Del. Ch. June 18, 2002)* ...................................................................................................................................................................... 5

*Riffe v. Home Finders Associates, Inc., 205 W.Va. 216, 517 S.E.2d 313 (1999)* ............................................. 24

*Romano v. New England Mutual Life Ins. Co., 178 W.Va. 523, 362 S.E.2d 334 (1987)* ................................... 24

*Runner v. Calvert Fire Ins. Co., 138 W.Va. 369, 76 S.E.2d 244 (1953)* ......................................................... 21

*Sawyer, 124 U.S. 200 (1888)* ........................................................................................................................... 51,55

*Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)* ...................................................................... 50,54

*Shamblin v. Nationwide Mutual Insurance Co., 175 W.Va. 337, 332 S.E.2d 639 (1985)* ................................. 22

*Shamblin v. Nationwide Mutual Insurance Co., 183 W.Va. 585, 396 S.E.2d 766 (1990)* ............................. 32,22

*Shearin v. E.F. Hutton Group, Inc., 1994 Del. Ch. LEXIS 69 (Del. Ch. June 7, 1994)* ...................................... 6

*Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)* ............................................................ 50

*Smith v Van Gorkum 488 A. 2d 858 (Del. Supr. 1985)* ................................................................................... 61

*Stifel Financial Corporation v. Cochran* ........................................................................................................ 62

*Surbaugh v. Stonewall Casualty Co., 168 W.Va. 208, 283 S.E.2d 859 (1981)* ............................................ 22,23

*Suter v. Artist M., 503 U.S. 347, 355-356 (1992), and Blessing v. Freestone, 520 U.S. 329, 117 S. Ct. 1353 (1997)* ...................................................................................................................................................................... 54

*Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam)* ....................................................................... 63

*Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989).* ...................................................................................... 52,56

*Tew, 728 F. Supp at 1560; Thornwood, Inc. vs. Jenner & Block, 799 N.E. 2d 756 (Ill.App. 1st 2003)* ...... 45,64

*Third Nat'l Bank v. Celebrate Yourself Productions, Inc., 807 S.W.2d 704, 707-08 ( Tenn. Ct. App. 1990)* ...................................................................................................................................................................... 57

*Tynes v. Supreme Life Insurance Co., 158 W.Va. 188, 209 S.E.2d 567 (1974)* ............................................... 22

*U.S. v. Lowe, 29 F. 3d 1005 (5th Cir. 1994)* .................................................................................................... 5

*U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980)* ............................................ 51,55

*United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985)* .......................................................................... 51,55

*United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996)* .......................................................................... 53,57

*Vandevender v. Sheetz, Inc., 200 W.Va. 591, 490 S.E.2d 678 (1997)* ............................................................ 33

*Vtech Holdings, Ltd. V. Pricewaterhouse Coopers, LLP, 348 F.Supp.2d 255 (S.D.N.Y.2004)* .................... 45,64

*Waldoboro Bank v. American Casualty Co., 775 F. Supp. 432 (D. Main 1991)* .............................................. 60

*Walt Disney Derivative Litigation, 2003 Del.Ch.LEXIS 52 (May 28, 2003)* ..................................................... 60

*Weinberger V. UOP, Inc., Del.Supr., 459a.2d 701 (1983)* ............................................................................... 61

*Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir.2000)* ...................................................................... 45,64

*Wilder v. Virginia Hospital Association, 496 U.S. 498 (1990)* ......................................................................... 54

*Worldcom, Inc. Secs. Litigation, 382 F.Supp. 2d 549 (S.D.N.Y. 2005)* ....................................................... 45,64

*Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418 (1987)* ................................ 54

## NATURE OF CASE

This case is borne out of Plaintiff having been the only elected and only valid member of the Board of the Emerald Ridge Service Corporation. Out of Plaintiffs duties as the only valid board member of the Emerald Ridge Service Corporation she provided services to protect the Emerald Ridge Service Corporation. Mr. Kenneth Shareef who assumed the position of President without being a validly elected stockholder of the Corporation (as required by the Emerald Ridge Service Corporation Bylaws), elected to appoint Mr. Renford Brevett to the Board, and Ms. Maudy Melville. Upon Mr. Kenneth Shareef having appointed those parties to the Board they all conglomerated together to remove Plaintiff illegally from the board for performing her fiduciary responsibilities, in addition to placing their names illegally on bank records in order to obtain these documents. **(Exhibit AA)** Mr. Kenneth Shareef through Attorney Edward Kafader (Representing State Farm) first tried to argue against law his interpretation of the law concerning who can maintain a position on the Emerald Ridge Service Corporation, and when finally defeated conceded to that he was not a member of the Emerald Ridge Service Corporation, as noted in **(Exhibit J – Pg. No. 11)**. After Mr. Kenneth Shareef stepped down Mr. Renford Brevett and Ms. Maudy Melville who were appointed by Mr. Kenneth Shareef proceeded to illegally appoint others to the Board as a means to cover up the crimes they committed at the advice of Attorney Edward Kafader (State Farms Representative). **Exhibit K** supports all parties conceding through their counsel that none of them were elected to the Board legally, at which time Attorney Edward Kafader advised those persons to ratify their illegal actions **Exhibit T& J – Pg. No. 9** which goes against *See Gilbert v. United States, 359 F.2d 285, 287 (9th Cir.1966)*. These issues have been going on for years, where member after member continually tried to have a Board that would listen to them **(Exhibit AE)** At some point prior to the illegal appointments either Mr. Renford Brevett and/or Ms. Maudy Melville submitted a false insurance claim to State Farm Insurance Company asking for indemnification. After said claim was submitted Attorney Kafader advised these parties to commit illegal acts in order to protect his client State Farms Interest (with their approval), of which they all agreed to do. State Farm at know point validated the parties legality to make a claim against the Corporate policy. Plaintiff informed Defendant State Farm at every stage of the illegal activities occurring as to give Defendant the opportunity to correct their error.**(Exhibit X)** However, State Farm advised Attorney Kafader to continue what he was doing **(Exhibits D)**, even after such time the Corporate Attorney Mr. Donald Gouge submitted an independent opinion

(**Exhibit C**) informing all parties that their appointments to the Emerald Ridge Service Corporation Board were illegal and that all members should step down and present a new election.

## PARTIES TO THIS CASE

This case was brought by Plaintiff Cathy Brooks-McCollum and Emerald Ridge Service Corporate (Derivatively) against Defendant State Farm, as docketed before this court. This case and none of the cases related to this case were ever against the Emerald Ridge Service Corporation and that was confirmed by the US Court of Appeals in its' court (**Exhibit L**) and Chancery Court (**Exhibit I– Pg. No 28**). Therefore, Defendants claims that it was defending themselves, Emerald Ridge Service Corporation and parties not privy to the State Farm Policy is not only incorrect, but goes against the Rules Of Professional Conduct and the laws which govern this Corporation itself. Furthermore, as stated none of the parties State Farm sought to hide its' illegal activities were officially elected or appointed to the Board. State Farms policy is clear in that it insures persons who were properly elected to the Board. All parties agreed that they were not properly elected (**Exhibit K**)

## PLAINTIFF'S SUPPORT OF INDEMNIFICATION

The Delaware Supreme Court confirmed in Civil Action 396, 2004 (**Exhibit AI**) as noted in its, *"It appears that at all times relevant, McCollum herself was a member of the board." "Plaintiff herself was a Director at all times relevant"*. In light of this decision and no appeals regarding the States high courts decision, there is and can't be a dispute of Plaintiff's having been a Director, when at this point the issues of the other parties have not been ruled upon in any court in accordance to the law. Therefore the question before this court is not if Plaintiff was and is a Director, however Plaintiff would like this court to confirm this through these pleadings. The question is if as a Director defending actions against ones self operating as a Director and also defending a very hostile takeover of the Corporation warrant indemnification pursuant the State Farm Policy (**Exhibit M**) and the Emerald Ridge Certificate of Incorporation (**Exhibit N**), Emerald Ridge Service Corporation Bylaws (**Exhibit O**),

2

as well as case law , state law and federal law. The next question before this court is if these Defendants through their attorneys, funding, actions and their encouragement of illegal activities make these Defendants responsible as **JOINT TORTFEASORS**, and the answer must be **YES**, in accordance to what is being outlaid before this court in these pleadings. The next question is if the courts find there to be justifiable cause that these defendants should be tried before a jury for the crimes they committed, funded and encouraged, as a means not to pay out valid claims.

In putting to rest Plaintiffs reasoning for not indemnifying both Plaintiffs (although supported by law, where Plaintiffs provided no support to their reasoning), we begin by stating that both Plaintiff Emerald Ridge Service Corporation and Cathy Brooks-McCollum are indemnified pursuant state law, federal law, case law and is Indemnified (but not until the expiration of each case). The Delaware Supreme Court confirmed that Plaintiff was at all times relevant an acting member of the Emerald Ridge Service Corporation Board **(Exhibit AI)** However, State Farms initial defense was that the case **was not** Derivative and/or a class action **(Exhibit G)**, then when that was determined to be incorrect the next defense filed in this court was that Plaintiff Cathy Brooks-McCollum **was never** a valid Director **(D.I. 6)**, then when that was proved to be incorrect the Defendants are now arguing their **TORTFEASOR** position was that Plaintiffs are (Plaintiffs) in the proceeding, and the law disputes this to also be an invalid position. However, once Defendants realized that in trying to conceal the false statements and reasons as to their failure to properly protect a valid Director and the Corporation, they resorted to other false, illegal and inaccurate tactics. Plaintiffs lived at their resident for some 10 years without incident, however after Attorney Kafader began having meetings mis-informing the Corporation members, Plaintiffs received the noted threats, but not limited to. **(Exhibits A&F)**

Defendants merely state California law as their basis for having trying to deny Plaintiff Indemnification, where Delaware clearly has some of the strongest and stronger indemnification laws and rules surrounding

3

indemnification, including that a Plaintiff is entitled to Indemnification, as well as the US Courts support that Indemnification is available to all Directors in their official role as a Director. In that Plaintiff was the only official Director it is clear that she was and is the only person entitled to Indemnification, and attempted to protect the Corporation from the hostile takeover funded and executed by Defendants and their lawyers once they became part of the attacks against Plaintiff. When Defendants State Farm chose to ignore the Corporations wishes to pay out all costs **(Exhibit P)** expended by Plaintiff on behalf of Emerald Ridge Service Corporation, and advised others not to adhere to the Corporations wishes, they then became borderline Tortfeasors. Then when Edward Kafader informed the Corporation that their wishes to have the entire so-called board dissolved would not happen, Kafader acting on behalf of State Farm clearly made both of them Joint Tortfeasors **(Exhibit P)**. It is clear that the Corporations wishes have been ignored for years **(Exhibits P&AE)**, and these Joint Tortfeasors continued to ignore what the Corporation asked and wanted, and therefore placed the Corporation @ severe risk, with no one properly informing them. Attorney Kafader on behalf of State Farm asked the parties who Defendants illegally insured go before the Corporation and ask that their actions be ratified **(Exhibit AG & J)** Attorney Kafader also went before the Corporation asking that they CERTIFY all of his actions on behalf of State Farm, and their co-conspirators **(Exhibit T)** The other parties who were co-conspirators along with Defendant State Farm, were initially going to oblige by the Corporations wishes in early January, but then when Edward Kafader (State Farms Representative) and State Farm agreed to fund them, all parties blatantly stated they will not adhere to any wishes, and this is when the terrorist behavior and criminal activity began, as a means for all parties to continue actions, in which they knew were not the wishes of the Corporation, nor in the best interest of the Corporation.

**The following supports Plaintiff being a valid Director and also supports coverage as a Director and a party bringing suit:**

4

*In Heffernan v. Pacific Dunlop GNB Corp., 1992 U.S. App. LEXIS 12595 (7th Cir., June 5, 1992),* the court ruled that the Delaware indemnification statute applies to suits against directors and officers both in their official capacity or if the suit arises more tangentially from his role, position or status as a director. In that case, a former director and shareholder of a company were sued for failure to disclose material information when he sold his stock in the company to another corporation. Although he was sued in his capacity as a shareholder (which would not alone trigger indemnification), the court permitted an indemnification claim against the corporation to proceed since his status as a director put him in a position where, in performance of his duties as a director, he either learned or should have learned of the material information which he did not disclose to the purchaser when he sold his stock. *See also, Barry v. Barry, 824 F.Supp. 178 (D.Minn. 1973) aff'd., 28 F. 3d 848 (8th Cir. 1994); U.S. v. Lowe, 29 F. 3d 1005 (5th Cir. 1994), Kapoor v. Fujisawa Pharmaceutical Co., 1994 Del. Super. LEXIS 233 (May 10, 1994); Augat, Inc. v. Collier, 1996 WL 110076 (D. Mass. Feb. 8, 1996).*

Case law supports indemnification is to be decided upon prior to any parties indemnifying themselves, especially if all parties are party to the suit.

*In Redyd v. Electronic Data Systems Corp., No. Civ. A. 19467, 2002 WL 1358761 at \*3 (Del. Ch. June 18, 2002)* held that where the bylaws stated that an officer or director *"shall be entitled to"* indemnification and the advancement of expenses *"as, and to the fullest extent, permitted by"* "applicable state law, one court has held that a **corporation must advance expenses** even to a corporate vice president accused of criminal actions solely for his personal benefit.

Plaintiffs are the only parties who followed proper indemnification procedure in accordance to Title 8, Chapter 1, Subchapter IV, Section 145(d) of Delaware's General Corporation laws, which state as follows for indemnification: *"a majority vote of the directors who are not parties to such action, suit or proceeding.... "*. can decide if a person is a valid director to be indemnified"........(3) *"if there are no such directors, or if such*

5

directors so direct, by ***independent legal counsel in written opinion***, or (4) by the stockholders". Legal Counsel gave his opinion which was supplied to Plaintiffs **(Exhibit C)**.

    a.   Delaware Title 8, Subchapter IV, Section 141 of the General Corporation Law.

    b.   Delaware Title 8, Subchapter IV, (a) of the General Corporation Law.

    c.   Delaware Title 8, Chapter 1, Subchapter IV, Section 145(d).

    d.   **Indemnification is available regardless of the D&O's role in the litigation, including as a Petitioners, intervener or amicus curiae**. *Hibbert v. Hollywood Park, Inc., 457 A.2d 339 (Del, 1983).* However, in *Shearin v. E.F. Hutton Group, Inc., 1994 Del. Ch. LEXIS 69 (Del. Ch. June 7, 1994)*, an officer who **initiates** a lawsuit **is entitled** to indemnification **only if the lawsuit is brought as part of the officer's duties to the corporation or its shareholders**. (Petitioners is not suing the Corporation and was the only responsible party and only party who did not go before the Corporation with false information and was the only valid Director working for the benefit of the Corporation) *Accord, Augat, Inc. v. Collier, 1996 WL 110076 (D. Mass. Feb. 8, 1996).* Plaintiff's initial suit brought in Chancery Court was merely brought to have the courts outline and clarify which rules and regulations the Corporation were bound by as not to continue to cause the stockholders unnecessary burden, as demonstrated previously **(Exhibit AE)** in addition to recouping funds expended as a Director. However, as a result when Defendants State Farm and their **BULLY** lawyers became parties to the actions, Plaintiff was forced from her home for trying to protect many, in an attempt to protect her family from harm brought on by the actions of Defendants through their attorneys.

    e.   The Corporations Bylaws **(Exhibit O)** and Certificate Of Incorporation **(Exhibit N)** provide much broader coverage then that of the General Corporation Laws. The Certificate Of Incorporation **(Exhibit N)**, number 10 provides broader coverage then the Bylaws and General Corporation laws and would not require Plaintiffs to pay any fees.

f. Defendants have argued in filings that Mr. Shareef was provided coverage through the Corporations policy, although not a Director and/or Stockholder required per said policy **(Exhibit M)**, as well as required per the Corporations Bylaws **(Exhibit O)** and Certificate Of Service **(Exhibit N)**. Defendants insinuate that this coverage was only provided the coverage prior to their knowledge knowing that Shareef was not a valid Director. However **(Exhibits B)** dispute this claim and show that Defendants were informed of this since the earlier half of 2004, and ceased to stop their malicious and tortuous crimes. Instead these Defendants chose to take a ride on the State Courts error, where the State Court admitted in several courts that it merely erred, and if this error had been corrected by these Defendants all of these cases would have ceased, but they continue to believe that the Courts will protect them, because of an error made and admitted by one of their very own. Civil Action *Brooks-McCollum vs. State Of Delaware, 2005 WL 1949674 (D.Del) D.I.17,18,19,21 and Brooks-McCollum vs. State Of Delaware, No. 05-4219 (3d Cir., Jan. 2007) – Dates 11/22/05&11/29/05*

## DEFENDANTS JOINT TORT FEASORS

First the courts would have to ask the question are these Defendants deemed Joint Tort Feasors per Title 18 Insurance of Delaware CODE. The answer would have to be a resounding **YES** and is detailed throughout these proceedings why the conclusion supports an answer of **YES**. The second question the courts must ask is per Title 18 Insurance Of Delaware CODE when did these Defendants first become Joint Tort Feasors? The answer to this is quite simple and easy to determine at which stage these Defendants became Joint Tort Feasors and continued those actions. Through admissions of Defendants co-conspirators and counsel Edward Kafader filed with the courts and documents they themselves submitted Defendants concurred to becoming and continuing Joint Tort Feasor Actions. Defendants and their Attorney Edward Kafader admit that they knew Kenneth Shareef was not a valid Stockholder, nor a valid member of the Board **(Exhibit J)**. Defendants and their Attorney Edward Kafader admit that they were aware that Mr. Kenneth Shareef who assumed the position of President of his own free will

7

assumed said position on his own **(Exhibit K)**. Defendants admit and documents support that all of these proceedings began at the hands of an illegal Stockholder, and Board Member **(Exhibits – AA Ken's Letter to Bank, Ken's Letter To Me - Exhibit AD, Chancery Court Transcript (Exhibit J, Web Postings – Exhibit AD)**. Defendants admit and concur that Kenneth Shareef an invalid member of the Emerald Ridge Service Corporation Board and invalid Officer then appointed other members illegally. **(Exhibit K)**

Defendants admit and confirm at all stages that Attorney Edward Kafader was performing all of his actions on their behalf. The US Court Of Appeals already confirmed in Cathy Brooks-McCollum & Emerald Ridge Service Corporation vs. Kenneth Shareef et.al. that from the Briefs and Exhibits presented before it that it saw where there were violations of the Rules Of Professional Conduct, TORT and various other crimes. The only defense given by Attorney Edward Kafader (who was acting on behalf of State Farm) was that he was immune from prosecution for any crimes he committed. Attorney Kafader and his firm's role should have been to review the facts, present them to State Farm, and remain objective and fair pursuant the Insurance Policy, the Insurance Guidelines. Instead Attorney Kafader and Defendants State Farm made this a personal vendetta and resorted to unethical BULLY behavior and practices. This clearly shows that these Defendants acted, agreed and participated along with Attorney Edward Kafader in his illegal actions. It should be clear as to why Attorney Kafader and State Farm insurance insisted on having the release of the JOINT TORTFEASOR clause added to the settlement document, which was never part of any discussions in settlement. Based on the highlights throughout the briefs it is clear that all these parties acted as JOINT TORTFEASORS and continue today, hoping that the courts will protect them against these violations.

Because in Civil Action *Brooks-McCollum vs. State Of Delaware, 2005 WL 1949674 (D.Del) and Brooks-McCollum vs. State Of Delaware, No. 05-4219 (3d Cir., Jan. 2007)*, the State admitted and confirmed that it erred, these Defendants cannot hide behind the States error, and/or argue that they too are immune. The law

8

supports an error. The only parties who have not admitted that they erred was Defendants State Farm and their co-conspirators, in that they are trying to hide behind the States error, and trying to blame the crimes they committed as a result of said error remove them from their responsibility. Although all courts agreed that Plaintiff Brooks-McCollum was a valid Director and that she was indemnified, including in Civil Actions *Brooks-McCollum vs. State Of Delaware, 2005 WL 1949674 (D,Del)* and *Brooks-McCollum vs. State Of Delaware, No. 05-4219 (3d Cir., Jan. 2007)*, and merely stated that in the State Court stated that Plaintiffs were not entitled to Advancement in proceedings in its' court. (Again, of which the State Court admitted it erred), these Defendants new argument (after trying several) of which they continue to state their only reasoning for not following proper Insurance guidelines, is that Plaintiffs are not the Defendants in any proceedings, Plaintiffs have proved this argument to be incorrect, Chancery Court proved this argument to be incorrect, because it stated that Plaintiff was and is entitled to Indemnification, but would not rule on advancement. In *Brooks-McCollum vs. State Of Delaware, No. 05-4219 (3d Cir., Jan. 2007)* the 3rd Circuit confirmed that advancement was the issue, and not Indemnification. These defendants are going against all courts rulings, that Plaintiffs are entitled to Indemnification, and only advancement was ruled upon. These parties have and continue to argue that they will not pay Plaintiffs even after the advancement time has passed. All the US Court cases are complete, and these defendants should have fully satisfied all claims in those courts, where that would not be advancement of costs and should be ruled on by this Court, in that these Defendants are under this Courts jurisdiction. Furthermore, the State Courts ruling do not flow over into the US Court proceedings. In that the State Courts admitted their error, the US Courts, have an obligation to rule on all the proceedings which are currently before it's' courts and those which have completed in its courts. These Defendants are trying to cause all costs to be assessed the Corporation for persons who clearly are not valid Directors actions, and these Defendants for having conspired together.

9

The clear and simple beginning stages of these proceedings support Joint Tort Feasor Actions in violation of Title 18 Insurance Of Delaware CODES 1.2.1.1, Misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue, 1.2.1.2 Failing to acknowledge and respond within 15 working days, upon receipt by the insurer, to communications with respect to claims by insured's arising under insurance policies, 1.2.1.3 Failing to implement prompt investigation of claims arising under insurance policies within 10 working days upon receipt of the notice of loss by the insurer, 1.2.1.4 Refusing to pay claims without conducting an investigation based upon all available information when the notice of loss received by the insurer indicates that such an investigation is necessary to properly determine such a denial of payment, 1.2.1.5 Failing to affirm or deny coverage or a claim or advise the person presenting the claim, in writing, or other proper legal manner, of the reason for the inability to do so, within 30 days after proof of loss statements have been received by the insurer,1.2.1.6 Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become clear, 1.2.1.7 Compelling insured's to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts which they might be entitled to under normal fair claims evaluations, 1.2.1.8 Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application, 1.2.1.9 Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge of the insured, 1.2.1.10 Making claims payments to insured or beneficiaries not accompanied by a statement setting forth the coverage under which the payment has been made, 1.2.1.12 Failing to promptly settle claims, where liability has become clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage,1.2.1.13 Failing when requested to promptly provide an explanation of the basis in the insurance policy in relation to facts or applicable

10

law for denial of a claim or for the offer of a compromise settlement. Such explanation may be made verbally but when given, must be documented in the claims file.

Once Defendants were informed and made acknowledgement through their counsel that all claims began at the hands of an illegal party claiming to be a Stockholder, and admitted that he appointed others while maintaining such position, all payments and claims should have ceased to these individuals, and the proper guidelines of the Insurance Policy should have been adhered to. But instead these parties took it personally when Plaintiff refused to adhere to their Strong Arm Tactics, and had a sense of the law.

However, this did not occur, instead these Defendants advised their attorneys to cover up these issues and commit various crimes by any means necessary so that they would not have to pay out any valid claims, nor properly inform the Corporation members of their rights, and what a Derivative suit meant for them.

Therefore, based on the first Tort Feasor action many more Tortfeasor actions were derived and continued, and still continue to date, and the brief outlines full support by state courts, and US Courts, supporting that these Defendants did act as Joint Tort Feasor, and show that this is not their first instance in doing so.

Defendants are deemed **Joint Tort Feasors**, for the crimes committed and carried out by Attorney Edward Kafader **(who claimed Immunity)** on their behalf and the other parties who assisted in the criminal activity.

Defendant State Farm are guilty and can be joined as Joint Tort Feasors (in that they **are not** afforded immunity) for **NEGLIGENCE** hence that they failed to use such care as a reasonable, prudent, and any careful persons would use under similar circumstances; in that an ordinary persons of ordinary prudence would not have allowed their lawyers or support such acts themselves in such a circumstance.[1] This is supported by **Exhibits B**.

Defendant State Farm are guilty and can be joined as Joint Tort Feasors under **NEGLIGENCE PER SE** hence they risked the safety of Plaintiff and the Emerald Ridge Service Corporation and ignored the wishes of the

---

[1] Amoco Chem. Corp. v. Hill, 318 A.2d 614 (Del. Super.1974); State v. Baker, 679 A.2d 1002 (Del. Super 1996).

Corporation, which were placed in plain view for them to view, what the Corporations wishes were. Instead they took control of a Policy paid for by the Stockholders and placed the Corporation in a Financial Position in which they should not have been placed in. **(Delaware Rules Of Professional Conduct, Sections 1.2, 1.4, 1.7, 1.8, 1.9 and 1.10, 4.3, 5.2, 8.4 (not limited to these sections), Delaware Criminal Codes, Title 11, Part II, Chapter 27, Subchapter II, §2738, Title 11, Part I, Chapter 5, Subchapter II, §621, Title 11, Part I, Chapter 5, §811, §861, §871, §872, §873, §876, §877, §913 §931 §932, §933, §934 §935, §936, §937, §938, §939. The laws outlined by Plaintiff in all pleadings support that any persons who caused or performed acts against a person is guilty of those acts, and had it not been for these Defendants false and slanderous information placed on the Internet, and through the US Mail and through meetings, none of these acts would have occurred.).** The connection between these Defendants and the other parties is that all persons acted through Attorney Edward Kafader **(THE MIDDLE MAN)**, and State Farm who were given knowledge of the actions through written correspondence **(Exhibits B&D)** where they agreed and confirmed that they supported Attorney Kafader's actions (with Attorney Kafader & his firm now having claimed immunity as their defense), even Attorney Kafader's unwillingness to initially remove false information from the Internet which is one of the many Delaware Criminal Codes violations committed by these Defendants through their attorney on behalf of their co-conspirators, Title 11, Part II, Chapter 27, Subchapter II, §2738, Title 11, Part I, Chapter 5, Subchapter II, §621, Title 11, Part I, Chapter 5, §811, §861, §871, §872, §873, §876, §877, §913 §931 §932, §933, §934 §935, §936, §937, §938, §939 **(Exhibit F)** Thus more then a casual and formal connection is made between the statutory violations and alleged injuries.[2] The regulation do promulgated pursuant a legislative directive and enacted for a valid purpose.[3]

---

[2] Duphily v. Delaware Electric Co-Op., 662 A.2d 821, 828 (Del. Supr. 1995)

[3] Toll Bros., Inc. v. Considine, 706 A.2d (Del. Supr. 1998)

12

Defendant State Farm was Negligent and caused Negligent Infliction of Emotional Distress, upon Plaintiff Cathy Brooks-McCollum and her family[4]

State Farm has not demonstrated that it acted reasonably or within Good Faith when allowing an attorney representing them to commit crimes willingly even after being notified and being kept abreast of those crimes.[5] There clearly has been a showing of specific intent to create a relationship as to cause injury to Plaintiffs as a means for Defendants to cover up their crimes, as Plaintiffs have stated Plaintiff made sure and gave Defendant State Farm every opportunity to correct these Strong Arm Tactics. **(Exhibits B)** Thus, they are just as responsible as the parties who committed the crimes on their behalf.[6] The US District Court For The District Of Delaware has recognized an independent tort and bad faith. This court ruled *"that the insurer has a fiduciary obligation to the insured which requires the exercise of that degree of care which a reasonable, prudent insurer would exercise to ensure that the interests of the insured are protected".*[7] Plaintiff has proved and supported that the bad faith claim is based on a denial of coverage, and refusal as to provide first party benefits, therefore punitive damages are available. Plaintiff has established that: there is no reasonable basis for the denial to honor the contractual obligation (arbitrariness); and the egregiousness of the conduct does and has risen to the level of willful, malicious misconduct, ill-will, hatred, or intent to cause injury (where the only thing worse then being forced from ones home and having their children removed from their school is murder, and Plaintiff (Brooks-McCollum) sought not to stick around for such and protect her family, since murder has happened for far less).[8] With these persons continually going before the Corporation supplying false information it was and is clear that they sought not to stop at any cause to protect the interest of Defendants State Farm who was funding

---

[4] Brett v. Bekowitz 706 A.2d 509 (Del. Supr. 1998)

[5] Corrado Brothers v. Twin City Fire Insurance Co., 562 A.2d 1188 (Del. Supr. 1989)

[6] Hostetter v. Hartford Ins. Col, Del. Super., Gebelin, J. (July 13, 1992) citing, Delmar news, Inc. v. Jacobs Oil Co., 584 A.2d 531 (Del. Super. 1990), and lewis v. Home Ins. 1973).

[7] McNally v. nationwide, Ins. Co., 815 F. 2d 254 (3 Cir., 1987); Maguire v. Allstate, 341 F.Supp 866 (D. Del. 1972) and Chittick v. State Farm, 170 F. Supp. 276 (D. Del. 1958).

[8] Casson v. nationwide Ins. Co., 455 A.2d 361, 368 Del. Supr. 1982).

13

their actions, even after having been notified that they failed to take the proper precautions to ensure who were valid Directors and who were not. Instead defendants continued to commit wrong act after wrong act, and continued to fund **TERRORIST ACTIVITES**.

Plaintiff is entitled to recover personal injury damages as a result of the tortfeaser (Defendants) actions. The wrongful actions and omissions committed on behalf of Defendants State Farm and at their request are covered.[9] The acts are clearly in relationship to Defendants tortfeasor's conduct and were the proximate cause of the injuries which occurred.[10] The injuries suffered by the Corporation and Plaintiff would not have occurred had it not been from Defendant tortfeasor.[11] Had the Defendant tortfeasor been removed from the equation none of the funding or actions would have been carried out at the bequest of Attorney Kafader **(THE MIDDLE MAN)** they hired to carry out the crimes and their having funded the attorney and the illegal parties who submitted illegal claims before them.[12] Plaintiff highlights in this brief information filed and provided by Defendants Attorney that none of supposedly Board members were legal. Even after Plaintiff Cathy Brooks-McCollum (the only validly elected Director) informed these Defendants and supplied documentation of the illegal acts, and even after the parties these Defendants covered, admitted **(Exhibit K)** through court documents their illegality, Defendants State Farm still refused to correct its wrong and Attorney Edward Kafader claimed immunity for his crimes on behalf of Defendant **TORTFEASOR** State Farm.

Punitive damages are further recoverable for wanton or willful disregard for the safety of others.[13] Punitive damages are further recoverable for acts accompanied by malice.[14]

---

[9] Gill v. Celotex Corp., 565 A.2d 21, 23 (Del. Supr. 1989)

[10] General Motors Corp. v. Wolhar, 686 a2d. 170 (Del. Supr. 1996.

[11] Del. Electric Co-op v. Duphily, 702 A.2d 1202 (Del. Supr. 1997) re-hearing denied.

[12] Mazda Motor Corp. v. Lindahl, 706 A. 2d 525 (Del. Supr. 1998)

[13] Mansino v. Webb, 274 A.2d 711 (Del. Supr. 1971)

[14] Jardel Co., Inc. v. Hughes, 523 A.2d 518 (Del. Supr. 1987).

Delaware law has long recognized that *"when the negligent acts of two or more persons concur in producing a single indivisible injury, such persons are jointly and severally liable, even if there was no common duty, common design, or concerted action."*[15]

During this process Plaintiff incurred Loss of Consortium and is hereby entitled to recover for those losses as well.[16]

In *Isaac v. State Farm Mut. Auto. Ins. Co.,522 N.W.2d 752 (S.D. 1994).* [17] a first-party bad faith case, the South Dakota Supreme Court was faced with a situation where the insurance company conditioned its offer of $100,000 upon the plaintiff's release of her bad faith claim. In addressing the issue of punitive damages, the court remarked:

There is evidence supporting the trial court's position that State Farm acted in **reckless** disregard of the rights of Isaac. Included in the actions taken by State Farm evidencing this reckless disregard is the fact that when State Farm did offer their policy limits of $100,000, the offer was **conditioned** on a **release by Isaac of any bad faith claim that she may have with respect to State Farm's handling of the claim**. Clear and convincing evidence existed to form a reasonable basis to present the issue of punitive damages to the jury.[18]  (This is the case with the offer made by Defendant State Farm to Plaintiffs).  Defendant State Farm made an insult settlement offer of $185.00 to Plaintiff as a result of the damages in which began this case (which was caused and brought on due to Plaintiffs responsibility as an elected Director of Emerald Ridge Service Corporation – the only elected and valid Director) and the criminal activity, as supported in Admissions by Defendant State Farm.  Defendant State Farm then through Attorney Edward Kafader **(THE MIDDLE MAN)**, and while refusing to pay for the Attorney hired

---

[15] Leishaman v. Brady, 2 A.2d 188, 120 (Del. Super. Ct. 1938). See also Sears, Roebuck & Co. v. Huang, 652 A.2d 568, 573 (Del. 1995) ("Multiple defendants may be liable as joint tortfeasors if each defendant's negligence is found to be a proximate cause of a plaintiff's injury.")

[16] Finkbinker v. Mullins, 532 A.2d 609 (Del. Super. 1987)

[17] Isaac v. State Farm Mut. Auto. Ins. Co. , 522 N.W.2d 752 (S.D. 1994).

[18] ³Id. at 61.

15

to represent **both** Plaintiffs in the US Courts (mainly the Corporation which is supported by letter issued by the US Court Of Appeals **Exhibit L** that the proceedings were on behalf of the Corporation), made a settlement offer, which would not have covered the losses incurred by Plaintiffs to make them whole *(Brooks-McCollum, however Plaintiff (Brooks-McCollum) entertained the offer, only because of the substantial emotional stress she was incurring in defending the numerous litigation filed, and the financial burden being placed upon her family, and the court claiming immunity for their part in not adhering to the laws before it, as well as Attorney Kafader claiming immunity.* Because, a Tortfeasor may have immunity from their part in any actions, that still does not relieve another Tortfeasor from the responsibilities to try hiding behind that same immunity. Plaintiff began to lose faith in the legal system when even the system Plaintiff placed her faith in believed that it was alright for them to break the very laws they are placed to make judgment on each day, and saw that the courts had the power to commit crimes while another is defending them, and then claim immunity, resulting in a party being subjective to additional crimes. Even in *Brooks-McCollum vs. State Of Delaware, 2005 WL 1949674 (D.Del) and Brooks-McCollum vs. State Of Delaware, No. 05-4219 (3d Cir., Jan. 2007)* the courts concurred that there is no penalty for a court who commits a crime, and admitted that the because the State Court erred was not reason for them to be responsible for the results as a result of the courts error. The numerous pleadings at least had the high courts confirm some of the crimes and errors made by parties in this case, some of which would have been covered up by the State, had those numerous pleadings not been filed. Plaintiff would never have entertained said settlement had she been properly funded as being a Director of the Corporation (Where the laws were set up to protect one from actions such as these), and pursued to recover damages incurred from being chased from Plaintiff (Brooks-McCollum) home, and their children having to be removed from their Christian based school (something these **TORTFEASORS AND THEIR LAWYERS COULD BENEFIT FROM**). The settlement offer made by Defendants did not even cover all the court costs associated with Defendants refusal to pay the

16

$185.00 and initial court costs, in which the Corporation instructed be paid **(Exhibit Q)** Plaintiffs admission that these cases arose out of failure to pay Plaintiff $185.00 having paid for services provided as a Director support that this case and all cases and crimes were borne out of Plaintiffs role as a Director, and would never have occurred had the Corporations wishes been honored per **(Exhibit P)**. There was a Corporate meeting and the Corporation clearly informed the Corporate Attorney and all parties in attendance that they wanted Plaintiff to be reimbursed the funds she expended paid back, and for their non-refusal to cease (agreed to by Defendants in other case **(Exhibit T) & (Exhibit P)**, but ignored, once Defendant State Farm and their Attorneys came on board, and instructed these parties to ignore the Corporations wishes, instead they chose to create further costs and further burdens upon the Corporation) Instead Defendant State Farm chose to commit crimes as a means cover up their errors and crimes and as not to pay out valid claims. These Defendants should be ashamed of themselves that they took a case brought to recoup $185.00 and have the courts outline the rules to protect the Corporation to a **CRIMINAL** level, which supports that these Defendants are just vindictive, malicious, and hateful, as well as distasteful.

The South Dakota Supreme Court reaffirmed the position of the carrier having acted recklessly in *Harter v. Plains Ins. Co., Inc.,*[19] and the **Eighth Circuit Court of Appeals** recognized and followed both decisions in *Athey v. Farmers Ins. Exchange*.[20]

While these cases all specifically involve traditional first-party bad faith situations, their reasoning holds up when applied to other bad faith scenarios under Kentucky law. For example, by conditioning settlement of a claim against its insured upon release of any claims against it, an insurance company could find itself in breach of the implied covenant to exercise good faith in protecting its insured from an excess judgment, as set forth in *Grundy*

---

[19] Harter v. Plains Ins. Co., Inc. , 579 N.W.2d 625, 634 (S.D. 1998).

[20] Athey v. Farmers Ins. Exchange , 234 F.3d 357, 362 (8th Cir. 2000).

17

*v. Manchester Ins. and Indem. Co. (Grundy I)*.[21] In essence, the company would be gambling with the policyholder's money by demanding a release that more likely than not the insured has no idea is being sought. (The Corporation itself was never informed of the release the Insurance Company was asking of it, and Plaintiff clearly outlined that she failed to accept the release, because it could keep the Corporation open for costs and claims brought on by the insurer, even though the decision placed Plaintiffs family in harms way, and placed a burden on Plaintiffs financial position. – **Exhibit AJ**) (These defendants insured that the Plaintiffs Emerald Ridge Service Corporation did not know the basis or fact of the claims being sought and the position Defendant State Farm, Attorney Kafader, and the other illegal parties had placed them in.) This emphasis on self-interest at the possible risk of exposing the insured to an excess verdict creates an inherent conflict of interest that should be disclosed to a policyholder, and it **exposes the company to a potential common law bad faith suit where none had existed before**. There would not have been a bad faith suit had Defendants first insured that they were covering the correct individuals, that they were adhering to the Corporations wishes, and that their lawyers did not commit crimes on their behalf to cover up their errors and continued to go before the Corporation itself giving false information in attempts to cover up their crimes.

Furthermore, conditioning settlement upon insurer release *"particularly where no bad faith case has been asserted previously"* almost certainly constitutes a violation of the UCSPA, opening the insurer up to a potential bad faith suit by the third-party claimant (and Plaintiff stressed this to Attorney Kafader when he tried issuing a settlement forcing Plaintiff into such terms – **(Exhibit Q & Exhibit R & Exhibit S)**. Most notably, such action would appear to violate KRS 304.12-230[22], which states that an insurer has committed an unfair claims settlement practice by [n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which

---

[21] Grundy v. Manchester Ins. and Indem. Co. , Ky., 425 S.W.2d 735 (1968).

[22] National Insurance Association v. Sockwell , No. 1001627, 2002 WL 399041 (Ala. Mar. 15, 2002).
7Id. at *24.

18

liability has become reasonably clear. (This is also in relationship to Title 18 Insurance Of Delaware) CODE States Using settlement of an underlying claim as leverage to dispose of an actual or potential bad faith claim could not be a clearer example of this type of inappropriate behavior.

As a practical matter, an insurance company has **no right** to condition settlement upon release of a bad faith claim because this issue undoubtedly did not come up during settlement negotiations. **(Exhibit Q)** Why should it? This was again was the case when Attorney Kafader presented a settlement **(Exhibit Q&R&S)**, there was not any condition to have Plaintiffs release a bad faith claim **(Exhibit Q)**, where Attorney Kafader clearly lists and states that these are the only issues of settlement. Settlement of a liability insurance tort case involves a claimant reaching a resolution with a tortfeasor who happens to be a beneficiary of an insurance contract with an insurance carrier. The focus on any settlement discussions would necessarily be on the underlying merits of the tort claim, with the insurer only aiding in its policyholder's defense and indemnifying him for any damages. The insurer's own conduct in handling the claim is a matter that is distinct and separate from whether its policyholder is tortuously at fault for the incident in question. Accordingly, considerations about the insurance company's behavior and any liability for that behavior should never enter into that company's mindset when it comes to settling or evaluating an underlying claim. Why, then, should an insurance carrier be allowed to obtain a release of bad faith claims whenever it settles a liability claim on behalf of its insured when it wasn't bargained for and rightfully wasn't an issue in the first place?

However, consistently and firmly refusing to release third-party insurers in these cases fulfills a broader purpose by reinforcing their duty to act promptly and in good faith. If every claimant could be leveraged, via settlement, into releasing the third-party insurance company, there never would be any third-party bad faith causes of action brought against insurance companies, no matter how egregious their conduct. This would render the legal duty of good faith as to third-party carriers virtually meaningless. However, refusing to release bad faith

19

claims encourages good faith behavior throughout the entire claims process *"up to and including settlement"*. This is the behavior demonstrated by Attorney Edward Kafader on behalf of State Farm, which occurred after a supposedly settlement had been reached. Attorney Kafader on behalf of State Farm and others incorporated terms to release third party tortfeasor claims against all parties, for actions they themselves created and encouraged.

These Defendants encouraged, advised and funded the violation of breaking the following laws: Delaware Rules Of Professional Conduct, Sections 1.2, 1.4, 1.7, 1.8, 1.9 and 1.10, 4.3, 5.2, 8.4 (not limited to these sections), Delaware Criminal Codes, Title 11, Part II, Chapter 27, Subchapter II, §2738, Title 11, Part I, Chapter 5, Subchapter II, §621, Title 11, Part I, Chapter 5, §811, §861, §871, §872, §873, §876, §877, §913 §931 §932, §933, §934 §935, §936, §937, §938, §939. The laws outlined by Plaintiff in all pleadings support that any persons who causes or performs acts against a person is guilty of those acts, and had it not been for these Defendants false and slanderous information placed on the Internet, and through the US Mail and through meetings at the advisement and under the guise of Defendants State Farm and their attorneys, none of these acts would have occurred.

[¶7] The first line of defense in compensating a victim for damages is the tortfeasor(s)' liability insurer(s). *"In a case involving multiparty defendants, each defendant is jointly and severally liable to the plaintiff for the full amount of the plaintiff's damages."* 14 M.R.S.A. § 156 (2003). *"When liability is joint and several, the plaintiff may recover all of her damages from any of the tortfeasors. . . . A tortfeasor who has paid all of the claimant's damages may seek contribution from other tortfeasors."* Arlyn H. Weeks, The Unsettling Effect of Maine Law on Settlement in Cases Involving Multiple Tortfeasors, 48 Me. L. Rev. 77, 82 (1996) (emphasis added). Interpreting section 156 similarly, the First Circuit held that *"each defendant has the right to obtain contribution from any other parties at fault." Gagne v. Carl Bauer Schraubenfabrick, GmbH, 595 F. Supp. 1081, 1086 n.5 (D. Me. 1984)* **(emphasis added).** *"Whether or not an insurance policy expressly reserves subrogation*

20

*rights, it is the universal rule that upon payment of a loss the insurer is entitled to pursue those rights against a third party whose negligence or wrongful act caused the loss." **Emery Waterhouse Co. v. Lea, 467 A.2d 986, 994 (Me. 1983) (emphasis added)**.*

*"[T]he dispositive principle is that of joint and several liability, under which an injured party without fault may collect the entire amount of damages from a joint tort feasor who was only 25% at fault."* While the twenty-five-percent-responsible tortfeasor may seek contribution from the seventy-five-percent-responsible tortfeasor for anything over its share of the damages, that twenty-five-percent-responsible tortfeasor bears the risk that the joint tortfeasor will be judgment proof.

In some circumstances, the court is required to allow a jury to decide whether the insurance policy was breached. For example, in the case of *Runner v. Calvert Fire Ins. Co., 138 W.Va. 369, 76 S.E.2d 244 (1953)*, the West Virginia Supreme Court stated:

Where, under the facts and circumstances of a particular case, the court cannot, as a matter of law, hold that the specific provisions of an insurance contract have been breached, the question is one for jury determination.

With the many possibilities for a combination of court rulings, partial summary judgments and jury issues in the same case, the approach to model instructions also was to outline Supreme Court holdings along with suggested instructions to aid in drafting.

Therefore, the following subject areas and quotations came from West Virginia cases which may assist in drafting instructions and in some situations may be used as instructions.

For the above reasons, there was a particular emphasis on only addressing matters which had been decided by the West Virginia Supreme Court. Therefore, there was not an attempt to fill in all areas of interest where no West Virginia decision had already addressed the matter.

21

The Insurance Contract

1. Terms *"Plain"* and *"Unambiguous"*

"'Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.'"

Syl. Pt. 2, *Shamblin v. Nationwide Mutual Insurance Co., 175 W.Va. 337, 332 S.E.2d 639 (1985)*, quoting *Syllabus, Farmers' & Merchants' Bank v. Balboa Insurance Co., 171 W.Va. 390, 299 S.E.2d 1 (1982)*, quoting *Syllabus, Tynes v. Supreme Life Insurance Co., 158 W.Va. 188, 209 S.E.2d 567 (1974)*.

When reasonable people can differ about the meaning of an insurance contract, the contract is ambiguous, and all ambiguities will be construed in favor of the insured.

*Syl. Pt. 1, D'Annunzio v. Security-Connecticut Life Ins. Co., 186 W.Va. 39, 410 S.E.2d 275 (1991)*.

2. Subject to More Than One Meaning

*"'Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous."*

*Syl. Pt. 1, Shamblin v. Nationwide Mutual Insurance Co., 175 W.Va. 337, 332 S.E.2d 639 (1985)*, quoting *Syllabus, Point 1, Surbaugh v. Stonewall Casualty Co., 168 W.Va. 208, 283 S.E.2d 859 (1981)*, quoting Syllabus *Point 1, Prete v. Merchants Property Ins. Co. of Ind., 159 W.Va. 508, 223 S.E.2d 441 (1976)*.

* * * * *

An insurance policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties.

*Syl. Pt. 2, D'Annunzio v. Security-Connecticut Life Ins. Co., 186 W.Va. 39, 410 S.E.2d 275 (1991)*.

22

*Syl. Pt. 1, D'Annunzio v. Security-Connecticut Life Ins. Co., 186 W.Va. 39, 410 S.E.2d 275 (1991).*

a. *"Ambiguous and irreconcilable provisions of an insurance policy should be construed strictly against the insurer and liberally in favor of the insured, although such construction should not be unreasonably applied to contravene the object and plain intent of the parties."*

*Syl. Pt. 2, Surbaugh v. Stonewall Casualty Co., 168 W.Va. 208, 283 S.E.2d 859 (1981)*, quoting Syllabus Point 2, *Marson Coal Co. v. Ins. Co. of State of Pa., 158 W.Va. 146, 210 S.E.2d 747 (1974)*, Syl. Pt. 4, *Nationwide Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)*, *Auber v. Jellen and Auber v. Ins. Corp. of America, 196 W.Va. 168, 469 S.E.2d 104 (1996)*.

3.  Interpretation of Insurance Contract Which Requires Construction

"An insurance policy which requires construction must be construed liberally in favor of the insured."

*Syl. Pt. 1, Hensley, et al. v. Erie Ins. Co., 168 W.Va. 172, 283 S.E.2d 227 (1981)*, quoting Syllabus Point 3, *Polan v. Travelers Insurance Company, 156 W.Va. 250, 192 S.E.2d 481 (1972)*. *Huggins v. Tri-County Bonding Co. and Nationwide Insurance Co., 175 W.Va. 643, 337 S.E.2d 12 (1985)*.

4.  Interpretation of Exclusionary Terms of Insurance Contract

Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated, and an insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion.

Syl. Pt. 5, *National Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)*.

Syl. Pt. 7, *National Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)*.

5.  Interpretation of Terms Nullifying Coverage

23

Where ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted.

Syl. Pt. 9, National *Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987)*.

6.   Interpretation When Insurer Provides Promotional Materials

Where an insurer provides sales or promotional materials to an insured under a group insurance policy, which the insurer knows or should know will be relied upon by the insured, any conflict between such materials and the master policy will be resolved in favor of the insured.

Syl. Pt. 3, Romano *v. New England Mutual Life Ins. Co., 178 W.Va. 523, 362 S.E.2d 334 (1987)*, Syl. Pt. 7, *Riffe v. Home Finders Associates, Inc., 205 W.Va. 216, 517 S.E.2d 313 (1999)*.

6.   Void Insurance Contracts Fraud

Because an insurance policy obtained fraudulently after the occurrence of an "insured event" can bee deemed void *void ab initio* Defendant State Farm leave the Corporation @ a high risk of now arguing any policies obtained after said period are void, based on their knowledge and encouragement to have invalid parties obtain new policies after said period.. *Syl., Brown v. Community Moving & Storage and Home Insurance Co., 186 W.Va. 691, 414 S.E.2d 452 (1992)*.

7.   Attempts to Cancel After Damage Occurs

*"The liability of the insurance carrier with respect to the insurance required by this chapter [W.Va. Code 17D-4-2 [1979], et seq.] shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy."*

24

*Syl. Pt. 1, Charles v. State Farm Mutual Auto. Ins. Co. and State Farm Mutual Auto Ins. Co. v. Muncy, 192 W.Va. 293, 452 S.E.2d 384 (1994), quoting W.Va. Code 17D-4-12(g) [1991].*

The general rule is that a homeowner's liability insurance policy that covers loss from damages for negligent personal acts includes coverage for negligent entrustment absent any express exclusion to the contrary.

Syl. Pt. 1, *Huggins v. Tri-County Bonding Co. and Nationwide Ins. Co., 175 W.Va. 643, 337 S.E.2d 12 (1985).*

An insurance carrier has a duty, once a first-party policyholder has submitted proof of a loss, to promptly conduct a reasonable investigation of the policyholder's loss based upon all available information. On the basis of that investigation, if liability to the policyholder has become reasonably clear, the insurance carrier must make a prompt, fair and equitable settlement offer. If the circuit court finds evidence that the insurance carrier has failed to properly or promptly investigate the policyholder's claim, then the circuit court may consider that evidence in determining whether the policyholder has substantially prevailed in an action to enforce the insurance contract.

Syl. Pt. 3, *Miller v. Fluharty and State Farm Mut. Auto. Ins. Co., 201 W.Va. 685, 500 S.E.2d 310 (1997).*

These defendants performed no form or type of investigation, prior to and after insuring the incorrect persons, and once they realized that errors were created by the courts, and incorrect persons submitted claims against the insurance policy, who were not privy to the policy and against the guidelines of their policy, these parties did nothing but try covering up their crimes.

Attorney Casarino states during a Deposition of which he asked to be had that, "Attorney Kafader" was not and is not an Attorney for State Farm, however State Farm states differently, and all documents state differently, including State Farm through Admissions, state that Attorney Kafader was their Attorney. **(Exhibit AK)**

## UNFAIR SETTLEMENT PRACTICES

25

**Title 18 of Delaware Law** is consistent with W.VA Law and based on the actions of these defendants the courts should follow the instructions given to parties in W.VA case laws.

The court instructed the jury that plaintiff claims that defendant insurance company is liable to plaintiff for violating West Virginia's Unfair Settlement Practices Act (W.Va. Code § 33-11-4(9)). You are instructed that the applicable portions of that statute are as follows (which are consistent with Delaware law):

W.Va. Code § 33-11-4(9) (1985) states:

(9) Unfair claim settlement practices. _ No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a)  Misrepresenting pertinent facts or insurance policy provisions relating to coverage's at issue;

(b)  Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(c)  Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d)  Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e)  Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f)  Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g)  Compelling insured's to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured's, when such insured's have made claims for amounts reasonably similar to the amounts ultimately recovered;

26

(h)   Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i)   Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j)   Making claims payments to insured's or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k)   Making known to insured's or claimants a policy of appealing from arbitration awards in favor of insured's or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(l)   Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m)   Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n)   Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

The court further instructed that if it is found by a preponderance of the evidence that the defendant insurance company's conduct in question constituted more than a single violation of W.Va. Code § 33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, you are able to

27

conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company, then, that the conduct can be considered a *"general business practice"* and can be distinguished by fair minds from an isolated event. (This is a general business practice of these Defendants)

The court further instructed that more than a single isolated violation of W.Va. Code 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of a general business practice, which requirement must be shown in order to maintain the statutory implied cause of action.

However, evidence of the defendant's violations may be proven by proving by a preponderance of the evidence that the violations occurred in a single claim.

The court further instructed that if you find that defendant violated the statute as you have been instructed above, then you may find your verdict for plaintiff. *Jenkins v. J.C. Penney Casualty Insurance Company, 167 W.Va. 597, 280 S.E.2d 252 (1981). Dodrill v. Nationwide Mut. Ins. Co., 201 W.Va. 1, 491 S.E.2d 1 (1996). Elmore v. State Farm Mut. Auto. Ins. Co., 202 W.Va. 430, 504 S.E.2d 893 (1998). Poling v. Motorists Mut. Ins. Co., 192 W.Va. 46, 450 S.E.2d 635 (1994)*.

N. Damages

1. Compensatory Damages for First Party Suits Where Insured Substantially Prevails

Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorney's fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

Syl. Pt. 1, *Hayseeds, Inc. v. State Farm Fire & Casualty, 177 W.Va, 323, 352 S.E.2d 73 (1986)*.

DAMAGES IN FIRST PARTY CASE

The court further instructed that in a case such as this where an insured (policyholder) substantially prevails in a property damage suit against its insurer, the insured plaintiff is entitled to damages. (This Court has

28

ruled that the insured plaintiff has substantially prevailed in this case and that the plaintiff is entitled to recover damages as a result of the insurance company's failure to pay the claim according to the insurance policy and the laws of the State of West Virginia.)

Therefore, if found by a preponderance of the evidence in this case that plaintiff has sustained net economic loss or aggravation and inconvenience as a proximate result of the insurer's conduct, then you are to award plaintiff the full amount of those damages.

Net economic damages is the loss of money which plaintiff sustained as a proximate result of the defendant's failure to pay plaintiff the appropriate insurance proceeds when they were due to be paid. (In this case, you are instructed that the Court has already ruled that the insurance company had a duty to offer plaintiff the insurance proceeds on or before a certain date.) Therefore, the net economic damages, if any, which plaintiff is entitled to recover is the loss, if any, sustained after that date by the insured as a consequence of defendant's conduct. [(In this case the Delaware Supreme Court ruled on Plaintiff having been a valid Director (which was Defendants first argument for denial of coverage). The Delaware Court ruled that Plaintiffs Case was Derivative (which was the defendant's second argument for denial of coverage). The Delaware Court ruled that Plaintiffs are entitled to Indemnification for proceedings, but not until after hearings for the proceedings in its' court. The Delaware Courts does not govern the proceedings had in the United States Court. The US Courts ruled and the State argued and agreed in the Delaware Courts Cathy D. Brooks-McCollum & Emerald Ridge Corporation vs. The State of Delaware, US District Court of DE & US Court Of Appeals That the State **erred**. Defendants Attorney Edward Kafader & Ferry, Joseph & Pearce argued that they were immune from prosecution from their actions in the crimes they committed on behalf of Defendant State Farm in state proceedings.

You are instructed that annoyance, aggravation and inconvenience includes compensation for the feelings and senses of the plaintiff, when confronted with an insurer's failure to pay a claim at the appropriate time and in

29

accordance with its duties and responsibilities under the policy and law of the State of West Virginia. (Where West Virginia Guidelines does not differ from those of Delaware and many of these cases were confirmed in the US Courts governing West Virginia)

You are instructed that the law recognizes that a person who purchases an insurance policy does so for peace of mind and security, not financial gain and not to be embroiled in litigation. Compensation for annoyance and inconvenience includes the aggravation and inconvenience shown in the entire claims collection process, not simply due to the loss of use of personal property.

*Miller v. Fluharty and State Farm Mut. Auto. Inc. Co., 201 W.Va. 685, 500 S.E.2d 310, 319, Syl. 1 (1997), McCormick v. Allstate Ins. Co., 197 W.Va. 415, 475 S.E.2d 507 (1996). Hayseeds, Inc. v. State Farm Fire & Cas., 177 W.Va. 323, 352 S.E.2d 73 (1986).*

2. Compensatory Damages for Third Party Statutory Cases (Unfair Trade Practices Act)

The Court held that annoyance and inconvenience often accompanies the sense that one is being treated unfairly and that a jury could reasonably infer that a policyholder suffered annoyance and inconvenience as a result of the insurer's violation of W.Va. Code, § 33-11-4(9).

Violation of W.Va. Code, 33-11-4(9) [1985] is tortuous conduct that may give rise to a cause of action by a spouse for loss of consortium.

*Dodrill v. Nationwide Mut. Ins. Co., 201 W.Va. 1, 491 S.E.2d 1, 13 (1996), Syl. Pt. 4, Poling v. Motorists Mut. Ins. Co., 192 W.Va. 46, 450 S.E.2d 635 (W.Va. 1994).*

DAMAGES IN THIRD PARTY STATUTORY CLAIM AGAINST TORTFEASOR'S INSURANCE COMPANY

You are instructed that if you find your verdict for plaintiff against the defendant insurance company for violation of W.Va. Code, § 33-4-9(11), you are to award plaintiff a sum of money sufficient to fully compensate

plaintiff for the plaintiffs (net economic losses, annoyance and inconvenience or physical injury, pain or suffering), if any, which you find was proximately caused by the insurance company's failure to follow the statute.

Further, if you find by a preponderance of the evidence that the injured plaintiff's spouse lost the performance of plaintiff of the duties and obligations assumed by the marital relationship, including the right to society, companionship and services, and you further find by a preponderance of the evidence that the loss of consortium flows from the insurer's delay and not from the original injury suffered by the spouse, then you are to compensate the spouse of the injured plaintiff for said loss of consortium. *Poling v. Motorists Mut. Ins. Co., 192 W.Va. 46, 450 S.E.2d 635 (W.Va. 1994). Dodrill v. Nationwide Mut. Ins. Co., 201 W.Va. 1, 491 S.E.2d 1 (1996). Berry v. Nationwide Mut. Fire Ins. Co., 181 W.Va. 168, 381 S.E.2d 367 (1989)*.

O.  Punitive Damages

1.  Liability for Punitive Damages Where Intentional Injury is Excluded

Where the liability policy of an insurance company provides that it will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury and the policy only excludes damages caused intentionally by or at the direction of the insured, such policy will be deemed to cover punitive damages arising from bodily injury occasioned by gross, reckless or wanton negligence on the part of the insured. Syl. Pt. 2, *Hensley, et al. v. Erie Ins. Co., 168 W.Va. 172, 283 S.E.2d 227 (1981)*.

2.  Public Policy Does Not Exclude Punitive Damage Coverage

The public policy of this State does not preclude insurance coverage for punitive damages arising from gross, reckless or wanton negligence. Syl. Pt. 3, *Hensley, et al. v. Erie Ins. Co., 168 W.Va. 172, 283 S.E.2d 227 (1981)*.

3.  When Punitive Damages are Recoverable by Insured Against Their Insurer

31

Punitive damages may be awarded in favor of an insured against its insurer for failure to settle a claim within policy limits, but the policyholder must establish a high threshold of actual malice in the settlement process. Actual malice means that the insurer actually knew that the claim was proper, but the insurer nonetheless acted willfully, maliciously and intentionally in failing to settle the claim on behalf of its insured. Syl. Pt. 1, Shamblin *v. Nationwide Mutual Insurance Co., 183 W.Va. 585, 396 S.E.2d 766 (1990)*.

PUNITIVE DAMAGES (FIRST PARTY CLAIM UNDER W.VA. CODE § 33-11-4(9) AND EXCESS VERDICT LIABILITY)

You are instructed that plaintiff claims entitlement to punitive damages against defendant insurance company. You are instructed that if you find by a preponderance of the evidence that the defendant insurance company acted with a high threshold of actual malice towards plaintiff in the settlement process, then you may award punitive damages against defendant. You are instructed that actual malice means that the insurance company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally utilized an unfair business practice in the manner it dealt with plaintiff, its insured, in handling the plaintiff's claim in this case.

You are further instructed that punitive damages are damages assessed against a party to punish the defendant for willful misconduct affecting the rights of others. Punitive damages are allowed over and above full compensation for all injuries directly or indirectly received from such wrong.

You are instructed that in determining whether punitive damages are to be awarded and what the amount should be you must consider the following:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would

32

likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

(2)    The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3)    If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4)    As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5)    The financial position of the defendant is relevant.    *McCormick v. Allstate Ins. Co., 202 W.Va. 535, 505 S.E.2d 454 (1998).    Shamblin v. Nationwide Mut. Ins. Co., 183 W.Va. 585, 396 S.E.2d 766, Syl. 1 (1990).    Garnes v. Fleming Landfill, Inc., 186 W.Va. 656, 413 S.E.2d 897 (1991).    Alkire v. First National Bank of Parsons, 197 W.Va. 122, 475 S.E.2d 122 (1996).    Vandevender v. Sheetz, Inc., 200 W.Va. 591, 490 S.E.2d 678 (1997).*

4.    Punitive Damages _ Third Party Statutory Liability of Insurance Company

In Berry v. Nationwide Mutual Fire Insurance Company, supra, the case cited in Poling, the Court specifically stated, in syllabus point 5:

33

Punitive damages may be awarded to an insured if the insurer actually knew that the claim was proper and the insured can prove that it was willfully, maliciously and intentionally denied. Therefore, in such case it is not error for a trial court to give an instruction stating that punitive damages may be awarded.

Punitive damage awards in insurance bad faith cases are not prohibited under W.Va. Code, 33-11-4(9) [1985].

Syl. Pt. 3, Poling v. Motorists Mut. Ins. Co., 192 W.Va. 46, 450 S.E.2d 635 (1994).

PUNITIVE DAMAGES IN THIRD PARTY STATUTORYCLAIM AGAINST TORTFEASOR'S INSURANCE COMPANY

You are instructed that if you find by a preponderance of the evidence in this case that the plaintiff's claim was proper, and further that defendant insurer knew it was proper but willfully, maliciously and intentionally delayed payment in order to attempt to obtain a less than just settlement, then you should award plaintiff punitive damages in this case.

You are further instructed that punitive damages are damages assessed against a party to punish the defendant for willful misconduct affecting the rights of others. Punitive damages are allowed over and above full compensation for all injuries directly or indirectly received from such wrong.

You are instructed that in determining whether punitive damages are to be awarded and what the amount should be you must consider the following:

(1)   Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

34

(2)   The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3)   If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4)   As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5)   The financial position of the defendant is relevant. *Poling v. Motorists Mut. Ins. Co., 192 W.Va. 46, 450 S.E.2d 635 (1994). Dodrill v. Nationwide Mut. Ins. Co., 201 W.Va, 1, 491 S.E.2d 1 (1996). Berry v. Nationwide Mut. Fire Ins. Co., 181 W.Va. 168, 381 S.E.2d 367 (1989). Garnes v. Fleming Landfill, Inc., 186 W.Va. 656, 413 S.E.2d 897 (1991).*

**Title 18 Insurance Of Delaware CODE States** and is consistent with that the issues argued in West Virginia:

900 Consumer Rights - 902 Prohibited Unfair Claim Settlement Practices [Formerly Regulation 26] Claim Settlement Practices Which, When Committed Or Performed with Such Frequency as to Indicate a General Business Practice, Are Prohibited

1.0 Authority for Regulation; Basis for Regulation

35

1.2 18 Del.C. Ch. 23 entitled "Unfair Business Practices in the Insurance Business," 18 Del.C. §2304(16) Unfair Claim Settlement Practices; 18 Del.C. §2304(17) Failure to Maintain Complaint Handling Procedures; and 18 Del.C. §2304(18) Misrepresentation in Insurance Applications, provide the basis for this regulation.

1.2.1 The Following Claim Settlement Practices When Committed or Performed with such Frequency as to Indicate a General Practice are Prohibited:

1.2.1.1 Misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue.

1.2.1.2 Failing to acknowledge and respond within 15 working days, upon receipt by the insurer, to communications with respect to claims by insured's arising under insurance policies.

1.2.1.3 Failing to implement prompt investigation of claims arising under insurance policies within 10 working days upon receipt of the notice of loss by the insurer.

1.2.1.4 Refusing to pay claims without conducting an investigation based upon all available information when the notice of loss received by the insurer indicates that such an investigation is necessary to properly determine such a denial of payment.

1.2.1.5 Failing to affirm or deny coverage or a claim or advise the person presenting the claim, in writing, or other proper legal manner, of the reason for the inability to do so, within 30 days after proof of loss statements have been received by the insurer.

1.2.1.6 Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become clear.

1.2.1.7 Compelling insured's to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts which they might be entitled to under normal fair claims evaluations.

36

1.2.1.8 Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

1.2.1.9 Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge of the insured.

1.2.1.10 Making claims payments to insured or beneficiaries not accompanied by a statement setting forth the coverage under which the payment has been made.

1.2.1.11 Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of a formal proof of loss form, both of which submissions contain substantially the same information, unless the formal proof of loss is required by law, prevailing rules, or the policy.

1.2.1.12 Failing to promptly settle claims, where liability has become clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

1.2.1.13 Failing when requested to promptly provide an explanation of the basis in the insurance policy in relation to facts or applicable law for denial of a claim or for the offer of a compromise settlement. Such explanation may be made verbally but when given, must be documented in the claims file.

## DEFENDANTS STATE FARM PRACTICE OF UNETHICAL PERFORMANCE

THE STATE FARM POLICY & COVERAGE - CONDOMINUM ASSOCIATION POLICY - STATE FARM INSURANCE -STATE FARM FIRE AND CASUALITY COMPANY - STATE FARM GENERAL INSURANCE COMPANY - HOME OFFICE: BLOOMINGTON, ILLINOIS - DECLARATONS PAGE - STATE FARM FIRE AND CASUALTY COMPANY - ONE STATE FARM DRIVE - FREDERICK, MD 21709-1000 - A STOCK COMPANY WITH HOME OFFICES

37

IN BLOOMINGTON, ILLINOIS - EMERALD RIDGE SERVICE CORP. - P.O. BOX 281 - BEAR,
DE 19701-0281

### SECTION II COMPREHENSIVE BUSINESS LIABILITY

We will pay those sums that the insured becomes legally obligated to pay as **damages** because of **bodily injury**, **property damage** (Attorney Casarino argues that Plaintiff argues that State Farm specifically damaged Plaintiffs automobile **(D.I. 85&86),** however this limited damage was as a result of the actions caused and continued by Attorney Kafader on behalf of State Farm, which has been confirmed that Attorney Kafader was acting on behalf of State Farm, **personal injury** (Plaintiff and her family having to move due to the actions which took place from the false internet advertising & false information supplied to the Corporation caused substantial personal injury) or **advertising injury**….. (the false advertising placed on the Internet caused substantial damage to Plaintiff, where Attorney Edward Kafader acting on behalf of Defendants (State Farm), agreed that he would not have the items removed from the Internet via written Correspondence **(Exhibit F)** As a result of this the damage was done, and the false information was not removed until at such time it became apparent that all charges were going to proceed against all parties. State Farm and its' officers were informed regarding Mr. Kafader's response and actions, and they informed Plaintiff that Attorney Kafader had the support of State Farm.

1. to advertising injury caused by an occurrence committed in coverage territory during the policy period. The occurrence must be committed in the course of advertising your goods, products or services.
SUPPLEMENTARY PAYMENTS

In addition to the Limit of insurance, we will pay, with respect to any claims or suit we defend:

4. **all** reasonable **expenses** incurred by the **insured** at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings, up to $100 a day because of time off from work.
5. all costs taxed against the insured in the suit;
**BUSINESS LIABILITY EXCLUSIONS**

Under Coverage L, this insurance does not apply:

16. to personal injury or advertising injury: **(This was done by the insurer through its' attorney)**

38

a. rising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity:

b. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

c. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or…..**(This was done by the insurer through its' attorney) – Code violations are hereby noted:) – Delaware Criminal Codes, Title 11, Part II, Chapter 27, Subchapter II, §2738, Title 11, Part I, Chapter 5, Subchapter II, §621, Title 11, Part I, Chapter 5, §811, §861, §871, §872, §873, §876, §877, §913 §931 §932, §933, §934 §935, §936, §937, §938, §939**

### SECTION II OPTIONAL COVERAGE

### Optional Coverage

The following Optional Coverage is subject to all terms and conditions applicable to Section II of this policy,

except as otherwise provided for herein.

This Optional Coverage applies only as indicated in the Declarations.

**OPTION DO** – Directors and Officers Liability

1. We will pay those sums that the insured becomes legally obligated to pay as damages, because of "wrongful acts" committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association.
2. This optional covers <u>does not</u> apply to:
   a. any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts;
   g. violation of any federal or state civil rights law or local ordinance, including but not limited to discrimination on account of race, religion, sex or age; or….
3. When used in the provisions of this Option DO, the unqualified word insured means only the following:
   a. any of your directors or officers, collectively and individually, which form your administrative body provided that each individual:
      (1) is **duly elected** by the unit-owners to serve on the managing body of the Condominium/Association; and (none of the parties were duly elected except Plaintiff when these actions took place, where the mock elections did not take place until said time after pleadings had been filed in several courts) – **Exhibit V**
      (2) acts within the scope of their duties on your behalf;
   b. any of your members, but only with respect to ther liability for your activities or activities they perform on your behalf as a member of a committee appointed by the administrative or managing body of the Condominium/Association;
4. When used in the provisions of this Option DO:

39

a. "wrongful acts" means any negligent acts, errors, omissions or breach of duty directly related to the operations of the Condominium/Association;

b. "occurrence" means a "wrongful act", including any conduct related to any of these, during the policy period, which results in a claim made in writing or suit filed no later than one year from the end of the policy period.

## SECTION II DESIGNATION OF INSURED

### WHO IS AN INSURED

1. If you are designated in the Declarations as:

c. an organization other than a partnership or joint venture, you are an insured. Your **executive officers,**

**directors** and **trustees** are insureds but **only with respect to their duties as your officers, directors** or **trustees**.

Your **stockholders** are also insureds but only with respect to their liability as stockholders. (Thus, Plaintiff was ad

Director and performing duties on behalf of the Corporation.) Plaintiffs was also a stockholder. Neither the

policy nor the Bylaws **(Exhibit O)** and Certificate of Insurance states that one must be the defense in a lawsuit,

and to have such incorporated in a policy would be going against the law, and the Emerald Ridge Service

Corporation Bylaws **(Exhibit O)** and Certificate Of Service.

## DEFENDANTS ADMISSIONS – THAT THEY WERE NOT LEGAL – FILED BY

## ATTORNEY KAFADER ON BEHALF OF ILLEGAL BOARD MEMBERS (EXB. K)

IN THE COURT OF CHANCERY O FTHE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

### CATHY D. BROOKS-MCCOLLUM

No. 147-N

Petitioners Below,
 Petitioners,
 v.

ERSC
Board Of Directors,
Kenneth Shareef,
Renford Brevett,
Maudy Melville,
Valerie Longhurst

Court Below-Court Of Chancery
of the State of Delaware,
in and for New Castle County
C.A. No. 147-N

40

Respondents,

### REPLY TO PETITIONERS'S RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT AND FOR JUDGMENT ON THE PLEADINGS (EXHIBIT K)

The Respondent hereby makes the following reply to Petitioner's response to Respondent's motion for a more definite statement, or alternatively, motion for judgment on pleadings. In Petitioner's response to Respondents' motion, Petitioners asserted that the March 2, 2004 Board of Directors meeting was not a validly constituted board of directors of the Corporation. In order to try to clarify the current membership of the board of directors, the Respondents submit the following:

In May of 2003, the Board consisted of the following individuals: Valerie Longhurst, Kenneth Shareef, Terry McCormick, John Garurrello and Thomas Laughery. In June of 2003 elections were held. The board believed that there were three open slots, which needed to be filled at the time. Kenneth Shareef and Valerie Longhurst were believed to be holdovers. Therefore, an election to three open slots was held in June of 2003.

Four nominees were obtained for the three open slots. Those nominees were Patricia McClurg, Ruth Visvardis, Cathy Brooks-McCollum and Maudy Melville. The three slots were to be filled by the top three vote getters. Those top three vote getters were Patricia McClurg, Ruth Visvardis, and Cathy Brooks-McCollum.

At the initial meeting in the newly constituted board, Ms. Brooks-McCollum indicated that she had been in touch with the attorney for the Corporation. She indicated she had been informed by the attorney for the Corporation that the maximum number of years to which an individual could be elected to the board of directors was two years. Ms. Brooks-McCollum pointed out that Ms. Longhurst had already served a two-year term. The by-laws provided for a three-year term only for the selection of the original board members. Upon further discussion of the positions as members of the board. This left only Kenneth Shareef **(inserted by Plaintiff - Who was confirmed to be illegal)** and Cathy Brooks-McCollum as members of the Board of directors. Maudy

41

Melville was then contacted by the board **(inserted by Plaintiff - contacted by Shareef)** and requested to serve as a third member of the Board.

Section 4 of the Corporate by-laws provides that in the event a vacancy on the board is created by reason of death, resignation or otherwise, such vacancies shall be filled for the unexpired term by a majority vote of the remaining directors, even though less than a quorum. Therefore, Cathy Brooks-McCollum and Mr. Shareef **(inserted by Plaintiff – Shareef was not a valid Board member and Plaintiff did not appoint anyone)** were empowered to appoint Ms. Melville as a member of the Board. Even without counting Mr. Shareef as a member of the board, Ms. Brooks-McCollum would have the authority to appoint a new director to the Board. **(inserted by Plaintiff – Plaintiff did not partake in any appointments)**

Renford Brevett was next contacted by the Board **(inserted by Plaintiff - contacted by Shareef)** (now consisting of Mr. Shareef – **(inserted by Plaintiff – who was illegal)**, Ms. Brooks-McCollum and Ms. Melville **(inserted by Plaintiff – who was illegal and appointed by Shareef)** and requested to serve as a Board member. He agreed to do so and his membership on the Board was approved by those Board members . **(inserted by Plaintiff – approved by Shareef)**

At the December 29, 2003 Board meeting, Ms. Brooks-McCollum was relieved of Petitioners duties as secretary treasurer of the Board, but remained a Board member. **(inserted by Plaintiff – after the illegal appointments by Shareef to take over the board – so why would Plaintiff agree to appointments)**

Mr. Shareef tendered his resignation from the Board at a general meeting of the members of the community held on January 15, 2004, on the same date, Ms. Brooks-McCollum submitted Petitioners resignation from the Board, and rescinded **(inserted by Plaintiff according to the Bylaws)**.

At the meeting of the board of directors held on January 15, 2004 **(illegal board – inserted by Plaintiff)**, which was held immediately after the general membership meeting, Mark Martell was **appointed (not elected as**

42

the State Farm policy (Exhibit M) so states (not elected and nobody who made the appointment was legal as outlined – inserted by Plaintiff)a member of the board of directors, in place of Kenneth Shareef.

At the March 2, 2004 meeting of the board of directors, Ruth Visvardis was **appointed (not elected as the State Farm policy (Exhibit M) so states and nobody who made the appointment was legal as outlined – inserted by Plaintiff)** to the Board. Ms. Visvardis was also **selected** to serve as secretary of the Board. At the same meeting, Mr. Martell was **appointed** treasurer of the Board.

Attached hereto as Appendix A is a revised copy of the minutes of the March 2, 2004 board meeting. An earlier copy of the minutes of that meeting was submitted as Appendix E to Respondents' exhibits to Respondent's motion for judgment on the pleadings, and renewal of motion for more definite statement. The only change in these minutes is that Mr. Martell was incorrectly identified as Ken Martell. He is correctly identified as Mark Martell in the revised minutes.

…………..

…….It is **conceded** that Mr. Shareef was **not validly** a member of the Board because he was not a titled landowner in the community. ………(**inserted by Plaintiff – the appointments – not elections took place with Mr. Shareef at the helm of all appointments and no party was covered per the State Farm Policy, and agreed and confirmed never to be elected, although being represented per the Corporations policy and by Attorney Kafader**)

Date:                              /s/Edward F. Kafader ID#246

                                   Edward F. Kafader, Esquire

                                   824 Market Street, Suite 904

                                   Wilmington, DE  19801

                                   (302) 575-1555

Attorney

## COURTS IMMUNITY ARGUMENT

*Civil Action Brooks-McCollum vs. State Of Delaware, 2005 WL 1949674 (D.Del) and Brooks-McCollum vs.*

*State Of Delaware, No. 05-4219 (3d Cir., Jan. 2007)*

## ATTORNEY KAFADERS & FERRY, JOSEPH & PEARCE ARGUMENT OF

### IMMUNITY

*Civil Action Brooks-McCollum vs. Shareef, et.al,No. 05C-12-198 (MMJ) (Del Superior)* Kafader & Ferry,

Joseph and Pearce argued Immunity from the crimes they committed.

# ATTORNEY KAFADER, GOUGE, FERRY, JOSEPH & PEARCE VIOLATIONS OF RULES OF

# PROFESSIONAL CONDUCT

Virtually all courts that have acknowledged the existence of aiding and abetting a fraud state that the following are the elements that must be established by the plaintiff:

    a.  There existed an underlying fraud;

    b.  The defendant had knowledge of the fraud;

    c.  The defendant provided substantial assistance to advance the commission of the fraud.

*See Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir.2000); In re Worldcom, Inc. Secs. Litigation, 382 F.Supp. 2d 549 (S.D.N.Y. 2005); Vtech Holdings, Ltd. V. Pricewaterhouse Coopers, LLP, 348 F.Supp.2d 255 (S.D.N.Y.2004); Tew, 728 F. Supp at 1560; Thornwood, Inc. vs. Jenner & Block, 799 N.E. 2d 756 (Ill.App. 1st 2003).*

2.  To determine whether a duty sufficient to support a negligence claim exists, one begins by determining whether the defendant by its conduct created a foreseeable zone of risk. *See McCain v. Florida Power Corp., 593 So.2d500 (Fla. 1992); Paszamant v. Ret. Accounts, Inc. 776 So. 2d 1049 (Fla. 5th DCA 2001).* "Kafader" acting on behalf of Defendants State Farm, knew that there was a foreseeable risk, when he went before the Corporation on numerous occasions, informing the Corporation (while being videotaped) that he was the Corporations Attorney, other Defendants Attorney and State Farms attorney (Defendants client and financier), when at all times the claims against all other parties were on behalf of the Corporation, and Plaintiff personally for the damages caused. The US Court Of Appeals clearly outlined the correct caption in the case before it as Cathy Brooks-McCollum and on Behalf Of Emerald Ridge Service Corporation (Appellants) vs. Shareef et. al, as docketed in the United States District Court, as well as the case in the United States District Court is captioned as Cathy Brooks-McCollum and on Behalf Of Emerald Ridge Service Corporation (Appellants) vs. Shareef et. al.

45

Still Kafader, as well as Corporate Counsel Donald Gouge informed the Corporation that they were being sued, and not the parties suing. Plaintiffs clearly outlined the crimes and gave supporting documentation in their Complaint, and Appendices filed in this court, which also show "Kafader" informing the Corporation they can countersue **(Exhibit V)** (when this would have been a suit against themselves). Mr. "Kafader" gave his blessings (supported through court documents), advising his clients to commit and **ratify ((Exhibit T& J – Pg. No 9))** crimes they committed, in a further attempt to help his client State Farm Insurance Company. "Kafader" tried invoking a settlement with terms untrue and false, in another attempt to defraud the Corporation, trying to lead them to believe the court cases were against them, on behalf of Defendant State Farm. **Exhibit Q** outlines the only terms of any settlement discussions. **Exhibits R & S** outlines additional items incorporated by Attorney Kafader on behalf of Defendant State Farm, also adding the Tortfeasor section never discussed, and that was outlined earlier in Plaintiffs brief.

3. In *Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057 (2d Cir, 1977)*, this case is borne out of the same crimes committed in this case by Defendants and their attorneys, however the exception here is that the Attorney's and the Insurance Company who they represented stood to gain substantially by becoming involved in the *"squeeze out"* and participated from beginning to the end. Defendant, "Kafader" masterminded the effort and was instrumental in the implementation from beginning to end, where he also solicited the aid and help of the Corporations counsel, "Donald Gouge" to carry out his fraud and scheme to insure that his clients State Farm Insurance Company would not be responsible for the fraud and deceit he was hired to bring upon the Corporation and Plaintiffs, which resulted in threats against Plaintiffs, and vandalism to Plaintiffs property. Corporate Counsel gave to the Corporation a written statement that he could not help either party, since they all were Directors, and he was the Corporations attorney and stated, "that any assistance would be a conflict of interest", however when his friend *"Kafader"* decided to break the law, he willingly and knowingly assisted him and aided

46

him in the fraud created and continued by all Defendants, therefore since written statements and video tapes are available showing and confirming that these parties knew they were breaking the law and continued their actions knowing so, they can't now claim they should be excused from prosecution. As a result of these persons actions State Farm is now in control of the Emerald Ridge Corporations finances, and their faith regarding escalating costs against the Corporations Insurance policy and bank accounts, with the Corporation never having been fully advised of the damage and consequences, by parties who would not benefit from the deceit. Numerous residents have elected to move from a Corporation, which invokes their own laws, where people take over without penalty.

4. **The Model Rules of Professional Conduct** clearly mandates that a lawyer cannot represent a client whose business interest's conflict with a lawyer's own interests in the absence of client consent after full disclosure. The burden of proof in such situation is heavily weighted against the attorney. *"[A] lawyer must refrain from entering into the transaction unless his client has consented after full disclosure by the lawyer."* Id. *"Full disclosure"* not only means disclosure of the nature of the transaction, but it also means explaining to the client why he or she would benefit from independent counsel and insisting independent counsel be secured. Plaintiffs cannot believe that Defendant "Kafader" or "Ferry, Joseph and Pearce informed other defendants of their right and need to obtain counsel independent from State Farm who was also being sued by the Corporation and of whom he had a vested interest to protect from liability, and surely the Corporation itself was never given full disclosure by either party. Not only did Defendant "Kafader", Ferry, Joseph and Pearce neglect to inform other Defendants in this case that they should seek independent counsel, they also joined forces with Corporate counsel to cover up all defendants acts from the Corporation, never giving full disclosure and explaining it to the Corporation as the law requires. Instead all Defendants and Corporate Counsel informed the Corporation that a win for the Defendants would be a win for them, while exhausting the Corporations Insurance Policy, using the

47

Corporations banking funds for crimes being covered up, all to aide and help State Farm Insurance Company and themselves.

These Defendant lawyers advised their clients (on behalf of Defendants State Farm) to revise all of the corporations laws, which now allows these defendants if not challenged the opportunity to assess Defendant legal fees against the Corporation (since State Farm could now invoke not paying them-knowing they were never valid Directors – and even still Plaintiff Brooks-McCollum refused to leave the Corporation in the hands of persons who would go through such lengths to protect their illegal activities), as well as only have Defendants vote on corporate issues and to incorporate these laws as part of the Corporations Bylaws and Articles of Incorporation **(Exhibits O&N)**, where neither the Defendants nor Corporate Counsel fully advised the Corporation of the damage of such a vote and they now have advised the Corporation that they have incorporated their new laws into the Bylaws. When the Defendants could not afford their legal fees the defendant attorneys provided the defendants (who admitted via court records that they were not validly elected Directors), access to the Corporations Insurance policy in order to cover up their other clients State Farms errors, as well as advised other defendants not to pay the Corporations counsel unless he went along with their scheme of fraud. (Corporate Counsel wrote documented letters himself as to the invalidity of these Defendants stating that they all should step down, and he himself had the opportunity to side with law or his friend, where he chose the latter and stated so by way of written correspondence, *"that he was helping his friend Kafader"*) Prior to Corporate Counsel or Defendant Counsels advising the other defendants to seek independent counsel, other then counsel hired by State Farm who had a vested interest in hiring and paying for defendant Kafader and his firm, these parties failed to do so, thus violating further the Rules Of Professional Conduct, which led to further crimes as outlined. All of these Defendants submitted documentation to the Corporation, which are before this court stating that they were State Farms Attorney, (they never presented to the Corporation that Defendant Kafader, Ferry, Joseph and Pearce

48

claiming also to represent them was against the law, but claimed Kafader was acting on their behalf, with

Corporate counsel by his side not advising the Corporation of anything, however Gouge continued to collect and

extort from the Corporations funds for ill advising or better yet lack of advising). Defendants' submissions to the

Corporation clearly show a scheme to defraud, because a Corporation suing a party (whether Derivatively or not)

cannot be represented by a party admitting and claiming to be the attorney for a Corporation being sued by the

Corporation itself. *Petit-Clair v. Nelson, 782 A.2d 960 (N.J. Super. Ct. App.Div. 2001)* clearly supports this to be

a violation of the Rules of Conduct and other claims setforth within the Complaint filed as well as providing a

claim of **TORT** and **FRAUD**. None of the crimes committed by Attorney Kafader and/or Ferry, Joseph & Pearce

are protected by Attorney/Client Privilege, per *United States v. Reeder, 70F.3d 93.106 (1ˢᵗ Cir. 1999)* (citations

and internal quotation marks omitted), petition for cert. Filed, 68 U.S.L.W. 3079 (U.S. July 9, 1999) (no. 999-79),

they continued to give advice in addition to aiding and abetting for the commission of continuing fraud. One can

put on a defense for their clients, but must do so without breaking the law themselves, and advising and

commissioning one to break the law as an attempt to protect another client (State Farm Insurance Company).

    *In Blake v. Dierdorff, 856 F.2d 1365 (9ᵗʰ Cir. 1988)* the ninth circuit reversed a district court's dismissal

of claims for fraud brought against a corporation's directors and its' lawyers. In this case one court already stated

that there was enough evidence to allow the charges outlined. *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec.*

*Litig., MDL No. 834 (D.Ariz.)* a jury rendered verdicts of more then $1 billion against Keating and others. Other

courts have found that, under the Reform Act, plaintiffs can still create a strong inference of fraud by pleading

motive and opportunity. *See, e.g., Press v. Chemical Invest. Servs. Corp., 166 F.3d 529 (2d Cir. 1999)*. Press

appears to resolve the issue for the Second Circuit on the side of sufficiency of motive and opportunity pleading.

*See also Marksman Partners, L.P. v. Chantall Pharm., Corp., 927 F. Supp. 1297 (C.D. Cal. 1996*) It is clear that

these Defendants had the greatest motive and opportunity of all, and that was to insure they not have to pay valid

claims to the Corporation, and a validly elected Director, after they realized they made a gross error and mistake. The Second Circuit held that *"strong inference of fraudulent intent"* can be established by alleging facts to show either that the defendant had the motive and opportunity to commit fraud or which constituted strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Citytrust Bancorp, Inc,, 25 F.3d 1124, 1128 (2d Cir. 1994)*. The Ninth Circuit interpreted FRCP 9(b) only to require that plaintiffs allege scienter generally. *In re GlenFed Inc., Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1995)*.

The US Court Of Appeals for the Third Circuit has already established that there are valid claims for a trial to proceed based on the evidence presented before it, which is also part of the items being presented here.

## INVALIDITY OF ORDERS MADE IN CHANCERY COURT – WHERE THESE
## DEFENDANTS ARE NOT PROTECTED BY IMMUNITY

When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judge's orders are void, of no legal force or effect. Which would mean that any order this court established as a basis for its' not ruling on Indemnification, would be null and void. The State clearly admitted and stated that it erred in its' decision, and still has failed to correct said error, when all the law is before it. These Defendants failed to correct its' error and hides behind the States protection. *(Brooks-McCollum vs. State Of Delaware, 2005 WL 1949674 (D.Del) and Brooks-McCollum vs. State Of Delaware, No, 05-4219 (3d Cir., Jan. 2007)*

The U.S. Supreme Court, in *Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)* stated that *"when a state officer acts under a state law in a manner volatile of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." " The*

50

*State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."*

The judge then acts not as a judge, but as a private individual (in his person).

The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958)*.

Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason.

If a judge does not fully comply with the Constitution, then his orders are void, *In re Sawyer, 124 U.S. 200 (1888)*, he/she is without jurisdiction, and he/she has engaged in an act or acts of treason.

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. *U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)*)

In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." *Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994)*.

Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. *Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988)* (what matters is not the reality of bias or prejudice but its appearance); *United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985)* (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is

51

actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

That Court also stated that Section 455(a) "requires a judge to recuse himself in any proceeding in which her impartiality might reasonably be questioned." *Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989)*. *In Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972)*, the Court stated that "It is important that the litigant not only actually receive justice, but that he believes that he has received justice."

Our Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", *Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960)*, citing *Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954)*. A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice.

"Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself/himself sua sponte under the stated circumstances." *Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989)*.

Further, the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language [455(a)] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed." Balistrieri, at 1202.

Should a judge not disqualify himself as required by law, then the judge has given another example of his "appearance of partiality" which further disqualifies the judge. Should another judge not accept the disqualification of the judge, then the second judge has evidenced an "appearance of partiality" and has disqualified himself/herself. None of the orders issued any judge who has been disqualified by law are valid, they are void as a matter of law, and are of no legal force or effect.

52

Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996)* ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").

Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his/her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity.

Courts have repeatedly ruled that judges have no immunity for their criminal acts. Since both treason and the interference with interstate commerce are criminal acts, no judge has immunity to engage in such acts.

While a judge may claim immunity and while the State may protect its' attorney claiming they too are entitled to immunity for their bad faith actions, and for their violations of the Rules Of Professional Conduct, Defendants State Farm is not afforded the same claims.

## CRIMES

US Court of Appeals eloquently stated in its' Order before this court, that it saw based on the evidence that it saw that there were [who also committed and validated their crimes before via video coverage and confirmed that they were acting on behalf of State Farm and for State Farm] *" quintessential state law causes of action; slander, violations of provisions of Delaware criminal code, questions of corporate governance, and violations of Delaware Code Of Professional Conduct"*.

The Delaware Supreme Court confirmed in Civil Action 396, 2004 as noted in its, *"It appears that at all times relevant, McCollum herself was a member of the board." "Plaintiff herself was a Director at all times relevant"*. In light of this decision and no appeals regarding the States high courts decision, there is and can't be a dispute of Plaintiff's having been a Director, when at this point the issues of the other parties have not been ruled upon in any court in accordance to the law.

53

## STATEMENT OF THE CASE

A. **State Courts Violation of Respondents Constitutional Rights, which went against Federal Law and the Constitution.** The Supreme Court discussed the standards for determining which federal statutes are enforceable under § 1983 in *Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418 (1987), Wilder v. Virginia Hospital Association, 496 U.S. 498 (1990), Suter v. Artist M., 503 U.S. 347, 355-356 (1992), and Blessing v. Freestone, 520 U.S. 329, 117 S. Ct. 1353 (1997). See Messier v. Southbury Training School, 916 F. Supp. 133, 142-146 (D.Conn. 1999)*.

B. The resulting Wright/Wilder/Blessing test, set out in Blessing, supra, 520 U.S. at 340-341, states:

(1) There is a rebuttal presumption that a statute is enforceable under §1983 if the Petitioners can show that:

(a) Congress intended the provision to benefit the Petitioners;

(b) The right is not too vague and amorphous to enforce;

(c) The provision unambiguously imposes a binding obligation on the states.

(2) The statute is enforceable unless the Respondent can prove that Congress has foreclosed a §1983 remedy. (This has not been proven by Respondents)

Congress may clarify that a particular statute is not actionable under §1983, either by express words, or by providing a comprehensive alternative enforcement scheme. *Livadas v. Bradshaw, 512 U.S. 107 (1994)*.

**B. Respondents became State Actors, when the State allowed them to benefit from their ruling, which went against the Constitution and Respondents carried out crimes, as a result of the violation.** When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judge's orders are void, of no legal force or effect.

The U.S. Supreme Court, in *Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974)* stated that "when a state officer acts under a state law in a manner volatile of the Federal Constitution, he "comes into

54

conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

The judge then acts not as a judge, but as a private individual (in his person).

The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958)*.

Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason.

If a judge does not fully comply with the Constitution, then his orders are void, *In re Sawyer, 124 U.S. 200 (1888)*, he/she is without jurisdiction, and he/she has engaged in an act or acts of treason.

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. *U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)*

In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." *Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994)*.

Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. *Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988)* (what matters is not the reality of bias or prejudice but its appearance); *United States v. Balistrieri, 779 F.2d 1191*

55

*(7th Cir. 1985)* (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

That Court also stated that Section 455(a) "requires a judge to recuse himself in any proceeding in which her impartiality might reasonably be questioned." *Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). In Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972),* the Court stated that *"It is important that the litigant not only actually receive justice, but that he believes that he has received justice."*

Our Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", *Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954).* A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice.

"Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself/himself sua sponte under the stated circumstances." *Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989).*

Further, the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that *"We think that this language [455(a)] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed."* Balistrieri, at 1202.

Should a judge not disqualify himself as required by law, then the judge has given another example of his "appearance of partiality" which further disqualifies the judge. Should another judge not accept the disqualification of the judge, then the second judge has evidenced an "appearance of partiality" and has

56

disqualified himself/herself. None of the orders issued any judge who has been disqualified by law are valid, they are void as a matter of law, and are of no legal force or effect.

Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996)* ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").

Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his/her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity.

Courts have repeatedly ruled that judges have no immunity for their criminal acts. Since both treason and the interference with interstate commerce are criminal acts, no judge has immunity to engage in such acts.

**C. Violation of Petitioner's Constitutional Rights and Federal Law.** Although an individual shareholder may bring a derivative suit to redress injuries to a corporation, the claims asserted in the suit belong to the corporation, not the individual shareholder, whose rights are merely derivative and may be asserted only through the corporation. Chancery Courts opinion **[Exhibit I&J]** clearly goes against this, committing further violations against Petitioners. *See Third Nat'l Bank v. Celebrate Yourself Productions, Inc., 807 S.W.2d 704, 707-08 (Tenn. Ct. App. 1990) (citing Commercial Credit Development Co. v. Scottish Inns, Inc., 69 F.R.D. 110, 117 (E.D. Tenn. 1975)).* Consequently, a derivative suit cannot be maintained by a shareholder in Petitioners own name but must be brought in the name of the corporation. However, the State Court disallowed this, by stating, *"that it would not rule upon Indemnification, until proceedings are over, thus allowing access to counsel"*.

US Court of Appeals for the 3rd Circuit, commenting on the importance of derivative suits, stated:

Historically, the derivative suit has been the principal defense of the minority shareholder against abuses by the majority. Such suits protect the stockholders of a corporation against management, which is sometimes

57

unrepresentative and on occasion insufficiently concerned with the minority's interests. Often where the wrongdoing is on the part of corporate officers and director's management has refused to act and where the wrongdoers control the corporation there is but small chance that the corporation itself will bring suit or vigorously prosecute the litigation. Equity, therefore, provided shareholders with the device of a derivative suit by means of which they could assert the interests of their corporation against management and third parties when those in control of the corporation were acting in breach of trust. *McClure v. Borne Chemical Co., 292 F.2d 824, 827 (3d Cir.), cert. denied, 368 U.S. 939 (1961)*. However, Delaware State penalized Petitioners for invoking said right and stated, *"that the right was not that of the Corporation or Petitioner"* in **[Exhibit I]** [Pg 9 of Transcript]. When Chancery Court 147-N ruled that Kafader of Ferry, Joseph and Pearce could represent Respondents in its' Court, State Farm and the Corporation, knowing that the case was a Derivative Action that Court violated the Corporations Constitutional and Civil Rights and violated the Ninth Amendment Right by trying to disparage the Corporation from bringing suit. (Again showing this to be a §1983 action) This Court knew at this time that this was a conflict of interest and ignored all the evidence and laws before it. State Farm was being sued on behalf of the Corporation, Respondents were being sued on behalf of the Corporation, Respondent Kafader, Ferry, Joseph and Pearce were being sued on behalf of the Corporation. Respondents believed that they would succeed in coercing and threatening Petitioners in giving up their Constitutional and Civil Rights. Only after presenting the State cause of action did Chancery Court and the State admit it erred, without correction.

The State Court indicated that these six (6) people were the company, by stating, *"Right. But as a legal matter, your understanding is incorrect. You are a shareholder. You have certain rights, important rights as a shareholder of a company, one of which is to file a derivative action, which is something that you've done. But the company itself is separate from the shareholders. And when you sue somebody, that's you personally as a shareholder suing. It's not the company."* **[Exhibit I]**-[Pg. 28 of Transcript]) This court acknowledges Petitioner's

58

suit was derivative, and brought as a Director of the Corporation, at the same time going against the higher courts ruling that the derivative suit belongs to the Corporation. Petitioner's indemnification was denied stating that the derivative right was Petitioners personally and not that of the company, which is inaccurate.

Chancery Court further stated in **[Exhibit I]**-[Page 9 of Transcript], *"And it will continue to operate that way until some court – if it ever does…."* Chancery Court is clearly stating that he may never entertain the current Complaint or any Complaint filed by Petitioners, thus violating Petitioners Constitutional and Civil Rights. Even after the US Court Of Appeals stated in its' Opinion based on the evidence presented before it that it saw *"there were quintessential state law causes of action; slander, violations of provisions of Delaware criminal code, questions of corporate governance, and violations of Delaware Code Of Professional Conduct"*, the State has failed to allow indemnification, the state has failed to supply or process Petitioner's Complaint for the felony charges outlined in the US Court Of Appeals briefs, the state has failed to rule upon and begin the judicial process. Even after the US Court Of Appeals decision these Respondents are now claiming that they too are entitled to immunity for the crimes they committed, of which the State has failed to respond to said Motion.

**Indemnification ruled on and denied for Petitioner, but not ruled on regarding Respondents, who were never validly elected, where Respondents further acted in State, and continued to toll costs against the Corporation, based on States Violation.** The Delaware Supreme Court confirmed in Civil Action 396, 2004 as noted in its' Order **[Exhibit AI]** Footnote 2 that, *"It appears that at all times relevant, McCollum herself was a member of the board," "Petitioner herself was a Director at all times relevant"*. The State Chancery Court, and Respondents jointly, both have continually denied Petitioner access to the Corporations insurance policy. The Delaware Supreme's Court Opinion should have served as an undertaking and support of Petitioner having been the only party confirmed to be a validly elected Director.

59

The Chancery's court opinion decided on July 24, 2004 **[Exhibit J]** clearly states that it did not and has not

allowed Petitioners Indemnification to be invoked, because the issues were too premature to decide such.

However, the Chancery Court never ruled upon the validity of Indemnification of Respondents, of which none of

them are legal, and confirmed by their counsel **[Exhibit K]**. This goes against. In *re P.J. Keating Company, 180*

*B.R. 18 (Bankr. D.Mass, 1995). See, e.g., MacMillan, Inc. v. Federal Ins. Co., 741 F. Supp. 1079 (S.D.N.Y.*

*1990); Atlantic Permanent Federal Savings & Loan Assoc. v. American Casualty Co., 839 F.2d 212 (4th Cir.*

*1988); Waldoboro Bank v. American Casualty Co., 775 F. Supp. 432 (D. Main 1991)*. This is clearly a substantial

violation of State and federal laws and Petitioners First, Ninth and Fourteenth Amendment Rights, Civil Rights.

(§1983 applies to all) If it is premature to allow Petitioners to be indemnified, it would also be premature to have

and allow Respondents to utilize the Corporations policy or Corporations funds, prior to their following the proper

indemnification procedure and believe this is not a violation of ones First, Seventh, Ninth and Fourteenth

Amendment. Chancery Court has made a ruling to allow Petitioners advancement of fees and indemnification

would be premature **[Exhibit I&J]**, but has allowed Respondents to continue raising costs against the

Corporations policy and the Corporation, without ruling on their validity, in that none of the persons acting as

Directors are valid and all were appointed by one another as the court documents show

   *Walt Disney Derivative Litigation, 2003 Del.Ch.LEXIS 52 (May 28, 2003)* supports the reckless acts of these

parties.

   *Carmody v. Toll Brothers Inc., Del. Ch., CA No. 15983 (July 24, 1998)* "Continuing director" provisions are

designed to prevent a hostile suitor from engaging in a proxy contest or consent solicitation to remove an

incumbent board of directors and then have the new board amend or redeem the poison pill (Respondents

Vivardis). Vivardis resigned after she wanted to commit crimes before the Corporation and Plaintiff refused

**(Exhibit AB)** These provisions prevent the redemption or amendment of poison pills where there are no

60

continuing directors, and if valid, provide a powerful weapon for a company to fend off a hostile takeover. *Smith v Van Gorkum 488 A. 2d 858 (Del. Supr. 1985)* Supreme court reversed and directed that judgment be entered in favor of the Petitioners and against the Respondents directors for the fair value of the Petitioners' stockholdings in Trans Union, in accordance with *Weinberger V. UOP, Inc., Del.Supr., 459a.2d 701 (1983)*.

In *Pereira v. Cogan, 2003 U.S. Dist. Lexis 7818 (S.D.N.Y. 2003)*, the influential District Court for the Southern District of N.Y. held that a firms directors and officers had breached their fiduciary duties by failing to monitor and prevent the self dealing transactions of the chief executive officer.

The court analyzed which officers and directors had knowledge of these transactions and could have monitored or prevented them. (quoting *In re Healthco Int'l Inc. 1997 Bankr. LEXIS 465 (Bankr.D.Mass.April 9, 1997)*. In addition the court held that the officers and directors owed a fiduciary duty of due care, loyalty and good faith to Trace. These parties are not valid directors, who are continuing a fraud as a means to deceive the Corporation.

Of nine specific transactions that were challenged, two involved board action; ratifying Cogan's compensation and declaring Trace's dividends. In both instances the court found that the Directors breached their duties of loyalty and due care as established in the seminal case of *Cede & Co. v. Technicolor Inc., 634 A.2d 345 (Del.1993)*.

The court relied on the standards est. in *In re Caremark International Inc. Derivative Litigation, 698 A.2d 959 (Del.Ch.1996)*, stating directors legal obligation "to include duty to attempt in good faith to assure that corporate information and reporting system...exists, and the failure to do so under some circumstances may...render a director liable for losses caused by non-compliance with applicable legal standards.

Respondents tried concealing their acts by voting to ratify their illegal actions (under the Direction of their counsel Edward Kafader). **[(Exhibit T& J – Pg. No 9]** Ratification or condonation is not a defense for past

61

criminal behavior. *See Gilbert v. United States, 359 F.2d 285, 287 (9th Cir.1966)* **[Exhibit T & J]**, -[Pg 9 of Transcript] supports Kafader giving his blessings and encouragement of these violations. These persons chose to further appoint persons to a board established illegally, in an attempt to cover up their actions. Then in **[Exhibit AC & T Agenda dated 8/11/2004]** under the direction and advice of Kafader, the board went before the Corp. attempting to have them certify their illegal acts. Kafader knew this was a violation of the Rules Of Professional Conduct.

In *Stifel Financial Corporation v. Cochran*, the court determined that officers and directors were entitled to attorney fees and other expenses incurred in bringing such a suit under a bylaw that provided for mandatory indemnification "to the full extent authorized by law." In so ruling, the court noted that allowing such "fees on fees" awards would prevent a corporation from wearing down a former director or officer with a valid claim for indemnification through extensive litigation. Stifel reversed an earlier line of cases establishing that "fees on fees" are not available unless expressly provided for *See, e.g., Mayer v. Executive Telecard, Ltd., 705 A.2d 220 (Del. Ch. 1997)*.

The right to advance of expenses can be much broader than the right to indemnification. *In Citadel Holding Corporation v. Roven, 603 A.2d 911 (Del. 1992)*, the Delaware Supreme Court interpreted an indemnification agreement as requiring the corporation to advance expenses incurred by a director who was sued by his corporation for violations... The Court considered this counterclaim as an affirmative defense, which triggers the advancement obligation. *See also, Megeath v. PLM International, Inc., Case No. 930369 (Cal. Sup. Ct. San Fran., Mar. 18, 1992); Lipson v. Supercuts, Inc., Civil Action No. 15074 (Del. Ch. Ct., Dec. 10, 1996); Neal v. Neumann Medical Center, 667 A.2d 479 (Pa. 1995)*. The Corporation Bylaws are clear in stating that advancement of fees is a contract right, and all issues before Chancery Court were brought on due to Petitioner's role as a Director. Respondents have attempted to wear down Petitioners (Ninth Amendment violation) while

62

continuing criminal activity. If it were not for Petitioners being a Director these acts would not have been committed. However, Chancery Court argues that Petitioners defending these acts of persons committed while they were utilizing corporate property are personal and has penalized Petitioners. It is clear that these Respondents were and continue to act in State.

Bivens and §1983 actions as analogous for most purposes, and "have typically incorporated §1983 law into Bivens actions." *Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam) (citing Carlson v. Green, 446 U.S. 14, 18-20 (1980)); see also Ayeni v. Mottola, 35 F.3d 680, 688 n.10 (2d Cir. 1994); Ellis v. Blum, 643 F.2d 68, 84 (2d Cir. 1981)*. The Supreme Court has made it clear that private corporations engaging in state action may be sued under § 1983. *See Lugar v. Edmonson Oil Co., 457 U.S. 922, 936-37 (1982). See Bivens, 403 U.S. at 407-08 (Harlan, J., concurring)*

**Respondents Continuing to Solicit States Help, Against Federal Law, after US Court Of Appeals For Third Circuit's Opinion.** After being protected by the State, and acting in accordance to the states actions, Respondents, now argue before the State that claims against them should be dismissed, due to immunity, and that the State should ignore the US Court Of Appeals For The Third Circuit's Opinion, when this courts opinion supports the basis for bringing a claim against all Respondents.

Virtually all courts that have acknowledged the existence of aiding and abetting a fraud state that the following are the elements that must be established by the Petitioner:

a. There existed an underlying fraud;

b. The Respondent had knowledge of the fraud; (The State had knowledge of the fraud, and continued to protect Respondents.)

63

c. The Respondent provided substantial assistance to advance the commission of the fraud. (The State assisted with the Respondents in their commissioning of a fraud, by going against Federal law, which makes these parties State actors.)

*See Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir.2000); In re Worldcom, Inc. Secs. Litigation, 382 F.Supp. 2d 549 (S.D.N.Y. 2005); Vtech Holdings, Ltd. V. Pricewaterhouse Coopers, LLP, 348 F.Supp.2d 255 (S.D.N.Y.2004); Tew, 728 F. Supp at 1560; Thornwood, Inc. vs. Jenner & Block, 799 N.E. 2d 756 (Ill.App. 1st 2003).*

9. To determine whether a duty sufficient to support a negligence claim exists, one begins by determining whether the Respondent by its conduct created a foreseeable zone of risk. *See McCain v. Florida Power Corp., 593 So.2d500 (Fla. 1992); Paszamant v. Ret. Accounts, Inc. 776 So. 2d 1049 (Fla. 5th DCA 2001).* Respondents, knew that their was a foreseeable risk, when he going before the Corporation on numerous occasions, informing the Corporation (while being videotaped) that Respondent "Kafader" was the Corporations Attorney, other Respondents Attorney and State Farms attorney (Respondents client and financier). Respondent "Kafader" gave his blessings (supported through court documents), advising others to commit and ratify crimes they committed, in a further attempt to help his client State Farm Insurance Company, with support of the State.

10. *In Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057 (2d Cir. 1977.*

11. The Model Rules Of Professional Conduct clearly mandates that a lawyer cannot represent a client whose business interests' conflict with a lawyer's own interests in the absence of client consent after full disclosure. The burden of proof in such situation is heavily weighted against the attorney. "[A] lawyer must refrain from entering into the transaction unless his client has consented after full disclosure by the lawyer." Id. "Full disclosure" not only means disclosure of the nature of the transaction, but it also means explaining to the client why he or she would benefit from independent counsel and insisting independent counsel be secured. *Petit-Clair v. Nelson, 782*

64

*A.2d 960 (N.J. Super. Ct. App.Div. 2001)* clearly supports this to be a violation of the Rules of Conduct. The Appellee attorneys who commissioned the fraud in these courts submitted any proof supporting that they are immune from the acts they committed.

After being protected by the State, and acting in accordance to the states actions, Respondents, now argue before the State that claims against them should be dismissed, due to immunity, and that the State should ignore the US Court Of Appeals For The Third Circuit's Opinion, when this courts opinion supports the basis for bringing a claim against all Respondents.

## SUMMARY OF ARGUMENT

In closing Plaintiffs state that in the Delaware State Courts the Court ruled that Advancement would be denied, until at such time full Discovery was had, and that all the issues surrounding Discovery was before **a or (some)** Court, and further stated that the decision may have to go before some other court when it stated, in **[Exhibit I]**-[Page 9 of Transcript], *"And it will continue to operate that way until some court – if it ever does…."*. This courts opinion clearly supports that it has not make a proper ruling on these issues in its' court, regarding any of the issues before it and clearly relinquished its' role to some other court who is willing to make a ruling based on law, where Defendants believed that no court will allow a non-lawyer to have valid issues answered before it, where that non-party was not represented by legal counsel, and knew that their lawyers would and could argue immunity, as they have done. Plaintiffs are unsure if the courts opinion was because it knew that it did not have jurisdiction of Defendants in this court, and saw that these defendants were the larger % of the Joint Tortfeasor actions, and/or if its' decision was purely in error as it argued in the US Courts. It is clear that had it not been from these Defendants and parties hired to act on their behalf the other Joint Tortfeasors would not have been able to carry out their Joint Tortfeasor actions. While Plaintiffs know that the courts have the authority to ignore the laws and claim immunity, one can only believe that there will be some parties who still believe in the judicial oath

65

they took, to work for all citizens. Therefore, the State Court never ruled upon Indemnification, which leaves that issue now before this court, since it is clear that Indemnification would have to occur under the guise of a party who is governed by the Decisions of this court. The Court merely stated that it could not rule upon advancement, because it was too premature to do so. In light of that this court would not be ruling upon anything ever ruled in any court.**(Exhibits I&J).** Plaintiff does now believe that after numerous litigation regarding the issues first brought in the state Court that it is now not too pre-mature to rule upon indemnification and Advancement, and the Joint Tortfeasor/criminal actions brought out of these proceedings by these Defendants in order not to meet its financial responsibility.

All issues regarding indemnification and evidence is before this court, and therefore this court can now make a decision regarding Indemnification and should advancement happen, and should all completed cases be paid, in that they would no longer bee deemed advancement of funds. Unfortunately, the State Court left this decision for the US Courts to answer, and rightfully so, in that the parties who hold the Insurance contract, has jurisdiction under the Federal Courts. In light of this plaintiffs respectfully present the following questions before the court to answer and rule upon.

These defendant Joint Tortfeasor clearly ignored the Corporations wishes, and gambled with the Corporations insurance policy **(Exhibits P&AE)** These defendants misinformed the Corporation by informing them that the proceedings in the Courts were against them, in an attempt not to pay a valid claim. There never should have been any Tortfeasor clause added to any form of payment made pursuant the Corporations Insurance Policy, in that it is a right guaranteed pursuant the Policy itself. **Exhibit V** supports Defendants Attorney Edward Kafader going before the Corporation with false information, in an attempt to gain the Corporations support, after the Corporation clearly asked that all persons step down **(Exhibit P)**

66

1) Hold that Defendants did act as Joint Tortfeasors and did so through its' attorney Edward Kafader, who acted along with other parties, and through its' own knowledge and support of criminal behavior and terrorist acts.

2) Hold that Defendants must immediately pay all costs expended thus far by Plaintiff associated with all the US Court Cases for these issues, which fall under this courts jurisdiction, in that these are not costs deemed Advancement of Funds. It is clear that the US Court Of Appeals agreed that the cases were also on behalf of the Corporation **(Exhibit AH)**, and these Defendants still refused to protect the Corporation and ensure that they had representation, where Plaintiff chose to ensure that the Corporations interest were not lost, and retained Counsel on the Corporations behalf. It is clear even through the numerous settlement revisions presented by Attorney Kafader on behalf of Defendant State Farm that Plaintiff had the Corporations best interest in mind, where these Defendants and their Attorney tried incorporating a Joint Tortfeasor clause to the settlement talks when the original settlement letter clearly stated that the letter represented the full extent of the settlement **(Exhibit Q)**

3) Rule On Indemnification of Plaintiffs in all courts, since no courts ever did so, as well as of this particular proceeding before the US Courts, in that the State Court does not have jurisdiction over this court, and/or outline at which point in the trial expenses should be distributed. In that the other parties are not before this court, Plaintiffs ask that should the State court allow them Indemnification in that court, that this court rule, if it should be pursuant the State Farm policy, as not to leave the Corporation open for financial risk.

4) Hold that these Defendants did violate Title 18 Insurance Of Delaware CODE.

5) Hold that Defendants must indemnify Plaintiffs and all other parties who are under the State Courts jurisdiction for those pleadings when that court rules which items before it should be paid and what other parties are validly elected Directors and entitled to Indemnification, as not to allow these Defendants access the Corporations for costs they incurred.

6) Hold that these Defendants did act as JOINT TORTFEASORS.

67

7) Award Plaintiffs costs expended thus far for trying to protect the rights of the Corporation and her family, as well as award the Corporation itself costs and protection for any costs expended from the Corporation funds as means to cover any persons in this case, where all funds should have come from Defendants State Farm. (The costs should be costs for Plaintiff having moved from her home, for having taken Plaintiff children out of their school, for additional costs incurred in purchasing comparable property, costs for the emotional, TORT, and other actions outlined in this case). Costs to date including the crimes against Plaintiff are in excess of $600,000, which detail can be presented to the court for review, with all addresses blacked out for protection from these Defendants and their co-conspirators. However, the costs listed does not include the Emotional and Tort actions, because it is hard to place a price on someone willingly causing such harm to a person, especially when none of this needed to occur, had these persons adhered to the Corporations outcry. **(Exhibits P&AE)** Based on this Plaintiff asks the court to award Plaintiff Brooks-McCollum 3 times the amount loss, and the Corporation 3 times and monies expended from the Corporations funds, as well as for any costs expended to fund the other parties through the Corporations funds, knowing that per **(Exhibits P&AE)** that those were not the Corporations wishes, and that the Corporation was being ill advised through the Defendants counsel on their behalf.

8) Award the Corporation costs for the crimes committed against it by these Defendants and their co-conspirators, so that they would not have to abide by Title 18 Insurance Of Delaware CODE and pay out valid claims, as the Corporation so instructed.

9) Confirm that Plaintiff is and was a Valid Stockholder & Director, and that she is Indemnified for proceedings held in the US Courts, and by whom.

These Defendants and their attorneys acted jointly in order to deny a right guaranteed by the US Constitution. Even in all Federal Courts a party cannot come before it representing a Corporation, without having counsel, and not to rule upon Indemnification and continue to allow Defendants to block this right, would be a

68

further violation of Plaintiffs rights to received due process of the laws, when Plaintiff clearly was a Director, and there clearly is an insurance policy in place to protect Directors for preventing such crimes as committed by Defendants. Defendants in this case, and the insurance company all acted based on the States error and crimes committed on their behalf through their lawyers and profited and gained from the States violations, and all should be held accountable for the violations committed. Not ensuring that all costs are covered pursuant the State Farm Policy of which all the Stockholders pay for, would leave the Corporation open to pay for costs they were unaware of could be assessed them, since they believed that State Farm, through Attorney Kafader was correctly informing them, while really protecting Defendant State Farm, so that they would not have to pay out any valid claims associated with this case.

These defendants failed to provide all State Farm Policies issued after their violations, which further could and would support Plaintiffs Tortfeasor claims. These defendants failed to provide Plaintiffs with a Deposition requested by them with Corporations funds. These defendants failed to comply willingly with any form of discovery.

Respectfully submitted,

/s/Cathy D. Brooks-McCollum
PO BOX 12166
Wilmington, DE  19850
(302) 521-1241
mccollumc1@comcast.net

69

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

Cathy D. Brooks-McCollum
& On behalf of
Emerald Ridge Service Corporation Derivative Action
As a Director
PO Box 12166
Wilmington, DE 19850
(302) 521-1241
mccollumc1@comcast.net
**(PLAINTIFF)**

**CIVIL ACTION NO: 04-419 (JJF)**

**JURY TRIAL REQUESTED**

vs.

State Farm Insurance Company
**(DEFENDANTS)**

### PROOF OF SERVICE

I Cathy D. Brooks-McCollum hereby certify that on the 30th day of October 2007, I will and have caused

to be served a true and correct copy of the foregoing Discovery Issues electronically upon defendants:

Casarino, Christman & Shalk
Stephen P. Casarino
800 North King St, Suite 200
P.O. Box 1276
Wilmington, DE 19899
(302) 594-4500
(302) 594-4509 Fax

/s/ Cathy D. Brooks-McCollum (Pro Se)
PO Box 12166
Wilmington, DE 19850
(302) 521-1241